Joel Moss (SBN 241853) (admission pending)
Daniel H.R. Laguardia (SBN 314654)
**SHEARMAN & STERLING LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:    (415) 616-1100
Facsimile:    (415) 616-1199
Email:    joel.moss@shearman.com
    daniel.laguardia@shearman.com

Jason D. Strabo (SBN 246426)
Kristin K. Going (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3218
Telephone:    (310) 788-4125
Facsimile:    (310) 277-4730
Email:    jstrabo@mwe.com
    kgoing@mwe.com

*Counsel for Plaintiff Barclays Bank PLC*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>WESTERN COMMUNITY ENERGY,<br><br>Debtor. | Case No. 6:21-bk-12821-SY<br><br>Chapter 9 |
| BARCLAYS BANK PLC,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN COMMUNITY ENERGY, SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation,<br><br>Defendants. | Adv. Pr. No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Barclays Bank PLC ("Barclays" or "Plaintiff") hereby files this Complaint for Declaratory Relief against Debtor Western Community Energy ("WCE") and Southern California Edison Company ("SCE" and together with WCE, "Defendants"), and alleges the following:

**STATEMENT OF JURISDICTION AND VENUE**

1. This adversary proceeding arises out of and relates to the Chapter 9 case entitled *In re Western Community Energy*, Case No. 6:21-bk-12821-SY, filed on May 24, 2021 (the "Bankruptcy Case"). The Bankruptcy Case is currently pending in the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Court"). The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).

2. The Bankruptcy Court has constitutional jurisdiction to enter a final judgment in this adversary proceeding. Barclays consents to entry of final orders or judgment by the Bankruptcy Court in the event that it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue properly lies in this judicial district where the civil proceeding arises under title 11 of the United States Code as provided in 28 U.S.C. § 1409.

4. This is an adversary proceeding for declaratory relief.

**PARTIES**

5. Plaintiff is a public limited company organized under the laws of England and Wales with its principal place of business in New York, New York.

6. Defendant WCE is the debtor in the Bankruptcy Case and a joint power authority formed on or about August 12, 2018, pursuant to Section 366.2 of the California Public Utilities Code, for the purpose of implementing a community choice aggregation program to procure

electricity for customers in seven cities within Riverside County. WCE's principal place of business is in Riverside, California.

7. Defendant SCE is a California corporation with its principal place of business in Rosemead, California.

## GENERAL ALLEGATIONS

8. Barclays incorporates each and every allegation contained in paragraphs 1 through 7 as though fully set forth herein.

9. On May 24, 2021 (the "Petition Date"), WCE commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code").

10. Prior to the Petition Date, Barclays made loans to WCE and issued letters of credit for the benefit of WCE pursuant to a Revolving Credit Agreement, dated March 12, 2020, between WCE and Barclays (the "Credit Agreement").[1] The Credit Agreement functions in tandem with a Security Agreement, dated February 12, 2020, between WCE and River City Bank ("RCB") as collateral agent (the "Security Agreement").[2]

11. The Debtor and Barclays are also parties to that certain Promissory Note (Principal Amount not to exceed $16,000,000) dated March 12, 2020 (the "Promissory Note") issued in connection with the Credit Agreement pursuant to which WCE promised to pay the unpaid principal amount of each Loan and Unreimbursed Amount from the date of such Loan.[3]

12. As of the Petition Date, WCE owed Barclays more than $11 million, comprised of approximately $4 million of outstanding principal balance of loans extended to WCE, approximately $6.87 million in letters of credit issued by Barclays for the benefit of WCE that are fully drawn, and unpaid interest and other fees which continues to accrue and as of

---

[1] A true and correct copy of the Credit Agreement is attached hereto as **Exhibit A**.

[2] A true and correct copy of the Security Agreement is attached hereto as **Exhibit B**.

[3] A true and correct copy of the Promissory Note is attached hereto as **Exhibit C**.

November 24, 2021, totaled $600,429.85 (excluding attorneys' fees, which also continue to accrue).[4]

13. WCE's obligations to Barclays, including with respect to obligations under the Credit Agreement and Promissory Note, are secured by a valid first-priority lien on substantially all of WCE's assets. Such lien was granted by WCE, attached, and was perfected prior to the Petition Date.

14. Section 2.20(a) of the Credit Agreement states that WCE "hereby conveys, grants, pledges, and assigns to [Barclays] and its successors and assigns a first priority security interest in (i) the Pledged Revenues, (ii) the Operating Reserve Fund, and (iii) the Operating Fund Account to secure all of [WCE's] Obligations" (the foregoing property, together with any other property in which WCE conveyed, granted, assigned and/or pledged a first priority lien to Barclays under or in connection with the Credit Agreement, is hereinafter referred to as the "Pledged Collateral").

15. The Credit Agreement defines "Pledged Revenues" as "the Receivables and other Collateral (each as defined in the Security Agreement) and all proceeds thereof…."

16. The Security Agreement expansively defines the term "Collateral" as "the following, whether now existing or hereafter arising: (a) the Receivables; (b) the Lockbox Account; (c) all cash, cash equivalents, securities, Investment Property (as such term is defined in the [Uniform Commercial Code ("UCC")], Security Entitlements (as such term is defined in the UCC), checks, money orders and other items of value now *or hereafter that are required to be, or that are, paid, deposited, credited or held* (whether for collection, provisionally or otherwise) in or with respect to the Lockbox Account or otherwise in the possession or under the control of, or in transit to, the Collateral Agent or the Depositary Bank for credit or with respect

---

[4] As of the Petition Date, the Debtor remained (and still remains) indebted to Barclays for all accrued and thereafter accruing unpaid interest, fees, expenses, and charges and other out-of-pocket expenses (including the fees, charges, and disbursements of Barclays' counsel) owed or owing from time to time under the Credit Agreement any other documents prepared in connection therewith, as further provided in and pursuant to Section 7.04 of the Credit Agreement.

to the Lockbox Account and all interest accumulated thereon; and (d) all Proceeds (as such term is defined in the UCC) of any or all of the foregoing."

17. The term "Receivables" is likewise broadly defined under the Security Agreement as "an Account evidencing WCE's rights to payment for Product, billed in an invoice sent to a Customer[5] by SCE, together with all late fees and other fees which SCE and WCE agree are to be charged in such invoice to the Customer by SCE on behalf of WCE."

18. The term "Product"—as used in the Security Agreement's definition of "Receivables"—is defined as "one or more of the following: energy, renewable energy attributes, capacity attributes, resource adequacy benefits, or any other similar or related products contemplated in the Master Agreements."

19. Because the term "Master Agreements" is defined in the Security Agreement as "the Master Power Purchase Agreements entered into beteween WCE and PPA Providers," any amounts owed to WCE arising under power purchase agreements ("PPAs") constitute a right of payment for "Product" and thus fall within the Security Agreement's definitions of "Receivables" and "Collateral" and, in turn, the Credit Agreement's definition of "Pledged Revenues."

20. Concurrently with the prepetition execution of the Credit Agreement, WCE, Barclays, and RCB, as depository bank, executed two Deposit Account Control Agreements, pursuant to which WCE granted Barclays first priority liens in WCE's Operating Funds Account and in its Operating Reserve Account (referred to as the "Operating Reserve Fund" in the Credit Agreement), respectively.[6]

21. The parties' entry in the Credit Agreement gave Barclays an immediately enforceable and automatically binding statutory lien in the Pledged Collateral California Government Code Section 5451—a proposition set forth in the legal opinion provided by WCE's

---

[5] The Security Agreement's definition of "Customer" essentially turns on whether the person or entity in question owes WCE any amount that could be defined as a "Receivable."

[6] True and correct copies of these Deposit Account Control Agreements ("DACAs") are attached hereto as **Exhibits D and E**, respectively.

4

counsel to Barclays in connection with the parties' execution of the Credit Agreement.[7] *See* Ex. A (Credit Agreement) at § 3.01(a)(vi) (legal opinion of WCE's special counsel set forth as a condition precedent to Barclays' obligation to advance borrowings or issue letters of credit).

22. Section 5451 of the California Government Code provides:

> (a) A pledge of collateral by any public body to secure, directly or indirectly, the payment of the principal or redemption price of, or interest on, any bonds, or any reimbursement or similar agreement with any provider of credit enhancement for bonds, which is issued by or entered into by a public body, shall be valid and binding in accordance with the terms of the pledge document from the time the pledge is made for the benefit of pledgees and successors thereto.
>
> (b) The collateral shall immediately be subject to the pledge, and the pledge shall constitute a lien and security interest which shall immediately attach to the collateral and be effective, binding, and enforceable against the pledgor, its successors, purchasers of the collateral, creditors, and all others asserting the rights therein, to the extent set forth, and in accordance with, the pledge document irrespective of whether those parties have notice of the pledge and without the need for any physical delivery, recordation, filing, or further act.

23. WCE has asserted (and the Bankruptcy Court accepted) that it is an eligible debtor under Chapter 9 of the Bankruptcy Code. In doing so, it has conceded that it is a "public body" as that term is defined in Section 5450 of the California Government Code.

24. The Credit Agreement constitutes a "pledge document" as defined in Section 5450 because it constituted a "loan agreement" in which Barclays was granted a pledge on the Pledged Collateral.

25. WCE's outstanding indebtedness under the Credit Agreement and Promissory Note also constitutes a "bond" as defined in Section 5450 of the California Government Code the Credit Agreement and Promissory Note constitute "evidence of indebtedness" (and the latter is plainly a "note").

26. Therefore, Barclays has possessed since before the Petition Date, and continues to maintain, a statutory lien in the Pledged Collateral pursuant to Section 5451 of the California

---

[7] A true and correct copy of the legal opinion of Best, Best & Krieger LLP is attached hereto as **Exhibit F**.

Government Code.  Pursuant to Section 5451 of the California Government Code, such statutory lien of Barclays "immediately attach[ed] to the [Pledged Collateral] and [became] effective, binding, and enforceable against [WCE], its successors, purchasers of the [Pledged Collateral], creditors, and all others asserting the rights therein, to the extent set forth, and in accordance with, the pledge document.

27.     Moreover, Barclays' lien extends to Pledged Collateral or other funds acquired *post-petition* by WCE notwithstanding Section 552(a) of the Bankruptcy Code.  This is because Section 552 by its terms only applies to consensual security interests and not statutory liens of the type referenced above.

28.     Additionally, to the extent that the liens granted to Barclays are not deemed to be valid statutory liens under California law, such liens in the Pledged Collateral were nevertheless fully enforceable against WCE (and therefore had attached) pursuant to the UCC.  Barclays provided WCE with value (*i.e.*, loans and letters of credit) in exchange for the liens WCE lawfully granted to Barclays in the Pledged Collateral as described above and as set forth in the Credit Agreement (and in the relevant provisions of the Security Agreement incorporated therein by reference).  Therefore, Barclays' liens were enforceable against WCE concurrently with the execution of the Credit Agreement and DACAs and attached prepetition pursuant to UCC §§ 9-203 and 9-104.

29.     Barclays' lien on the Pledged Revenues was perfected prepetition pursuant to UCC § 9-310(a) because a UCC-1 financing statement was filed prior to the Petition Date (and recorded on April 6, 2020).

30.     Barclays' liens on WCE's Operating Funds Account and Operating Reserve Account were perfected prepetition pursuant to UCC §§ 9-104(b)(8), 9-104, and 9-314 as a result of entry into the DACAs.

31.     Further, any such property acquired or received post-petition constitutes the *proceeds* of Pledged Collateral in which Barclays had a valid security interest prior to the Petition Date (which proceeds themselves are expressly included in the Security Agreement's

definition of "Collateral") and is properly subject to Barclays' prepetition security interest pursuant to Section 552(b)(1) of the Bankruptcy Code.

32. Furthermore, even if Barclays' liens were not statutory in nature, all Pledged Revenues—regardless of whether WCE receives them pre- or post-petition or whether such revenues are the proceeds of prepetition collateral—are subject to Barclays' prepetition liens pursuant to Sections 922(d) and 928 of the Bankruptcy Code, notwithstanding the automatic stay or Section 552(a) of the Bankruptcy Code, because they constitute "special revenues."

33. The Pledged Revenues are "special revenues," as such term is defined in Section 902(2) of the Bankruptcy Code, because they are "receipts derived from the ownership, operation, or disposition of projects or systems of the debtor that are primarily used or intended to be used primarily to provide . . . utility, or other services" and/or "other revenues or receipts derived from particular functions of the debtor." *See* 11 U.S.C. § 902(2)(A), (D). Here, the Pledged Revenues are directly attributable to WCEs operations.

34. Barclays has consistently asserted its rights as a secured creditor of WCE, including, *inter alia*, by demanding adequate protection for the use of its cash collateral in the early stages of this Bankruptcy Case and by filing its secured proof of claim on October 1, 2021, which was subsequently amended on November 26, 2021.

35. WCE has openly taken the position that Barclays is merely an unsecured creditor of WCE and has no valid and enforceable security interest in any of its property. In addition, on information and belief, any plan of adjustment filed by WCE will treat Barclays' claim for more than $11 million as entirely unsecured.

36. Specifically, WCE has contended, among other things, that Barclays lacked a fully enforceable lien on the Pledged Collateral because it has been, and continues to be, liquidated or otherwise converted to proceeds, which were in turn transferred into accounts that were not subject to Barclays' DACAs and/or remained subject to prepetition liens of the Secured Creditors (defined in the Security Agreement as the PPA Providers and WCE). *See Reply in Support of Motion for Relief from the Automatic Stay* [ECF No. 159]. WCE has contended that

Barclays' lien cannot attach to such assets until they are released from the pledge and lien of the Security Agreement, and that such attachment can no longer occur due to the automatic stay. *See Reply in Support of Motion for Relief from the Automatic Stay* [ECF No. 159].

37. As alleged above, Barclays disputes WCE's position, which is fundamentally flawed for various reasons including:

   a. The Credit Agreement provided for an immediately enforceable present security interest in the Pledged Revenues, which attached and was perfected prepetition under California law as a statutory lien or, alternatively, under the UCC.

   b. To the extent Barclays' lien did not attach prepetition to the Pledged Revenues (which it did), such lien automatically attached post-petition without any action by Barclays once the Secured Creditors' claims were paid and their liens discharged in accordance with the *Stipulation Resolving Debtor's Motion for Relief from Automatic Stay* [ECF No. 196] (the "Stipulation") and Order Approving the Stipulation [ECF No. 186], irrespective of the operation of Sections 362 and 552 of the Bankruptcy Code.

   c. Barclays' lien on the Pledged Collateral was fully enforceable upon execution of the Credit Agreement as a statutory lien under California law without any further action by Barclays. Such lien extends to the Pledged Collateral automatically and without any action of Barclays, irrespective of the operation of Sections 362 and 552 of the Bankruptcy Code.

   d. To the extent Barclays does not have a statutory lien, Barclays' lien applies to Pledged Revenues acquired after commencement of the Bankruptcy Case irrespective of the operation of Section 552(a) of the Bankruptcy Code, because such Pledged Revenues constitute "special revenues" under Section 902(2) of the Bankruptcy Code.

38. Moreover, SCE has asserted a security interest in some of Barclays' Pledged Collateral based solely on a purported right of setoff against receivables collected from WCE's

customers following the Petition Date and deposited into the Lockbox Account and has even sought relief from the automatic stay to seize those funds to satisfy WCE's (otherwise unsecured) prepetition indebtedness to SCE.  SCE has not asserted any conventional security interest of any kind in the Lockbox Account funds, which constitute Pledged Revenues that are subject to Barclays' lien.

39.  SCE's assertion of a security interest in WCE's customer remittances based on a so-called "setoff right" is wholly improper for the reasons set forth in Barclays' objection to SCE's proofs of claim filed on November 30, 2021 [ECF No. 221] (the "SCE Claim Objection").

40.  As described more fully in the SCE Claim Objection, which is attached hereto as **Exhibit G**, SCE's setoff claim is barred by Section 553 of the Bankruptcy Code.  Section 553 requires that the setoff parties' respective debts and claims:  (a) be "mutual" (i.e., arise in the same right and in the same capacity between the debtor and creditor); and (b) arise prior to the petition date.  Here, neither requirement is met.  SCE holds the receivables it receives from WCE's customers (that it seeks to appropriate and apply against WCE's prepetition debt to SCE) *in trust* for WCE.  This defeats Section 553's mutuality requirement because SCE's obligation to WCE arises from its capacity as a trustee for WCE whereas WCE's prepetition obligations to SCE arose from WCE's capacity as a principal.  Moreover, because the funds SCE is seeking to retain in partial satisfaction of WCE's prepetition claim were collected from WCE's customers post-petition, any obligation of SCE to transfer such funds may only arise post-petition, which defeats SCEs ability to setoff such funds against SCEs claim due to Section 553's requirement that the debt and claim to be setoff must both arise prepetition.  In addition, pursuant to UCC § 9-404 and common law principles, any setoff rights SCE would have would be subordinate to Barclays' and other prepetition secured creditors' liens and security interests in receivables.

## CLAIM FOR RELIEF – DECLARATORY JUDGMENT

41.  Barclays incorporates each and every allegation contained in paragraphs 1 through 40, inclusive as though fully set forth herein.

9

42. An actual controversy has arisen and now exists between and among Barclays, WCE, and SCE regarding whether Barclays' claims against WCE in the Bankruptcy Case arising under the Credit Agreement and related financing documents are secured and whether and to what extent those claims are secured by a valid, enforceable, and duly perfected statutory lien on and/or lien under the UCC in certain payments received post-petition by or for the benefit of WCE from WCE's customers and its PPA counterparties.

43. A declaratory judgment is necessary and appropriate at this time because resolution of Barclays' secured status as a creditor will be essential to formulating a viable plan of adjustment given that Barclays is WCE's (at least) second largest creditor, and the treatment of Barclays' claim will thus significantly influence the amount of property that will be eligible for distribution to WCE's unsecured creditors.

44. Barclays therefore requests a declaratory judgment that: (a) it has a valid, enforceable, and properly perfected statutory lien under California Government Code Section 5451 on the Pledged Collateral and/or a valid, binding, enforceable and properly perfected lien under the UCC on the Pledged Collateral that; (b) its liens extend to payments received post-petition by or for the benefit of WCE from WCE's customers; (c) its claim(s) against WCE for the "Obligations," as defined in and arising under the Credit Agreement (and related financing documents), are secured claims within the meaning of Section 506 of the Bankruptcy Code and are secured by the Pledged Collateral; and (d) SCE has no valid and legally enforceable security interest, including based on any purported right of setoff, in the Pledged Collateral, including, without limitation, any receivables collected by SCE and deposited into the Lockbox Account.

45. Barclays also requests all such other declaratory relief as the Court deems just and proper.

**REQUEST FOR RELIEF**

WHEREFORE, Barclays prays for relief and respectfully requests that the Court enter orders and judgment in its favor against WCE and SCE as follows:

(a) Granting a declaratory judgment as specified in paragraph 44; and

(b) Granting such other and further relief as the court deems just and proper.

Dated:  November 30, 2021

Respectfully submitted,

By: */s/ Joel Moss*
Joel Moss (SBN 241853)
Daniel H.R. Laguardia (SBN 314654)
**SHEARMAN & STERLING LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:    (415) 616-1100
Facsimile:    (415) 616-1199
Email:    joel.moss@shearman.com
             daniel.laguardia@shearman.com

- *and* -

Jason D. Strabo (SBN 246426)
Kristin K. Going (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3218
Telephone:    (310) 788-4125
Facsimile:    (310) 277-4730
Email:    jstrabo@mwe.com
             kgoing@mwe.com

*Counsel for Plaintiff Barclays Bank PLC*