# Exhibit D

# DACA

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This DEPOSIT ACCOUNT CONTROL AGREEMENT ("Agreement") is made and entered into as of March 12, 2020, by and among RIVER CITY BANK, as depositary bank (the "Bank"), the Bank's depositor customer, WESTERN COMMUNITY ENERGY, a California joint powers authority (the "Company"), and BARCLAYS BANK PLC (the "Secured Party"), as lender under the Revolving Credit Agreement, dated as of March 12, 2020, between the Company and the Secured Party (the "Revolving Credit Agreement").

### Recitals

A.  The Bank has agreed to establish and maintain in the name of the Company one or more deposit accounts for the purposes of securing amount due to Secured Party. The Company's deposit relationship with the Bank is governed by one or more Deposit Account Agreements and other documents, instruments and agreements (collectively, the "Deposit Agreement") entered into between the Company and the Bank.

B.  This Agreement sets forth the rights of the Secured Party and the obligations of the Bank with respect to the deposit account (the "Collateral Account") identified in Section 1(b). Pursuant to the Revolving Credit Agreement, the Company has granted to the Secured Party a security interest in and control of the Collateral Account and all funds and other items now or hereafter deposited in or withdrawable from the Collateral Account, including without limitation all wire transfers of funds, automated clearing house ("ACH") entries, credits from merchant card transactions, other electronic funds transfers and any other funds deposited in, credited to, or held for deposit in or credit to, the Collateral Account (collectively, the "Collateral").

C.  The Company has requested that the Bank acknowledge the Secured Party's control of the Collateral to perfect the Secured Party's security interest in the Collateral, on the terms set forth herein.

### Agreement

In consideration of the covenants, representations, acknowledgements and agreements herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank, the Company and the Secured Party agree as follows:

**1.    Control of the Collateral Account**

(a)    The Bank represents that it is a "bank." The Company and the Bank acknowledge that the Collateral Account is a "deposit account." Each party to this Agreement acknowledges that this Agreement is an "authenticated" record and that the arrangements agreed to constitute "control" of the Collateral Account for purposes of perfecting the Secured Party's security interest in the Collateral. Each of these terms is used in this Agreement as defined in Division 9 of the California Commercial Code (the "UCC").

(b)    The Bank represents that the Collateral Account is maintained by the Bank in the name of the Company as deposit account number 7335632612, and identified for reference purposes as the *"Operating Fund Account"* As of the date of this Agreement,the Bank does not have actual

knowledge of any claim to or interest in the Collateral Account, except for claims and interests of the parties hereto or otherwise disclosed to the Secured Party.

(c)     The Company authorizes and directs the Bank to comply with all instructions given by the Secured Party in accordance with this Agreement, including directing the disposition of funds in the Collateral Account or any other matter relating to any Collateral, without further consent by the Company.

(d)     The Secured Party shall have all authority or power over the Collateral, including the right to give "stop payment orders" for an item presented for payment from the Collateral Account, and may instruct the Bank with respect to delivery of Collateral by delivering written instructions ("Disposition Instructions") to the Bank in accordance with Section 6, substantially in the form of Exhibit A.

(e)     The Bank shall not permit any officer or other representative of the Company or any third party to direct the disposition of any Collateral, issue any entitlement, withdraw any amount from the Collateral Account, or otherwise exercise any authority or power with respect to the Collateral. All available funds in the Collateral Account shall only be withdrawn or transferred based on instructions given by the Secured Party in accordance with this Agreement. The Company and the Secured Party each authorize and instruct the Bank to supply the Company's or the Secured Party's endorsement, as appropriate, to any Collateral that the Bank may receive for deposit to the Collateral Account.

**2.     Statements**

Upon the written request of the Secured Party, the Bank will send to the Secured Party at the Secured Party's address specified in Section 6, copies of all statements with respect to the Collateral Account that the Bank is required to send to the Company under the Deposit Agreement. The Company consents to the Bank's disclosure of any information regarding the Collateral to the Secured Party upon the Secured Party's request.

**3.     Priority of Lien.**

The Bank hereby acknowledges the Company's grant of a security interest in the Collateral to the Secured Party. The Bank agrees that, so long as this Agreement remains in effect, it will not enforce any security interest or banker's lien in, or exercise any right of setoff or deduction against, any Collateral. The Bank hereby subordinates to the Secured Party any security interests, liens or rights of setoff that the Bank may have now or in the future against the Collateral. Notwithstanding the foregoing, the Company hereby agrees that all rights and remedies of the Bank with respect to the Collateral Account, including all fees and other obligations of the Company under the Deposit Agreement and any amounts for which the Bank may be entitled to indemnity as provided in Section 5, shall be applicable to and may be satisfied from any and all other deposit accounts maintained with or controlled by the Bank.

**4.     Exculpation of Bank**

(a)     At all times the Bank shall be entitled to rely upon any communication in connection with this Agreement that it receives or believes in good faith to be a communication received from the Secured Party or the Company. The Bank shall have no liability to the Company or the Secured

Party for honoring or following any instruction regarding the Collateral that the Bank receives from or believes in good faith to be from the Secured Party. The Bank shall not be responsible for the validity, priority or enforceability of the Secured Party's security interest in any Collateral, nor shall the Bank be responsible for the enforcement of, or bound in any way by the terms of, any agreement between the Company and the Secured Party, whether or not the Bank has knowledge thereof. The Bank assumes no liability or responsibility for the form, sufficiency, accuracy, genuineness, falsification or legal effect of any documents, notices or certifications delivered pursuant to this Agreement.

(b)    The Bank shall be responsible only for the actual loss that a court having jurisdiction over the Collateral Account shall determine to have been incurred by the Company or the Secured Party and caused by the Bank's gross negligence or willful misconduct in its performance of its obligations under this Agreement. The Bank shall not be liable to any party for fraud committed by any third party or for failure or delay in its performance under this Agreement resulting from any "act of God," war, terrorism, fire, other catastrophe, *force majeure*, or for any electrical, computer or telecommunications failure that is not caused by the gross negligence or willful misconduct of the Bank. Nothing in this Agreement shall create an agency, partnership or other fiduciary relationship between the Bank and the Company or between the Bank and the Secured Party. The Bank shall have no duty whatsoever to the Company in connection with the subject matter of this Agreement except as specifically provided by this Agreement or applicable law. The Bank shall have no duty whatsoever to the Secured Party in connection with the subject matter of this Agreement except as provided by this Agreement or applicable law. The Secured Party is not a "customer" as defined in Division 4 of the UCC with respect to the Collateral Account.

(c)    The Bank shall not be liable to any party for lost profits or special, indirect, exemplary, consequential, or punitive damages caused by or resulting from a violation of this Agreement even if the Bank has been advised of the possibility of such damages.

(d)    The Company and Secured Party agree that in the event that a petition seeking relief under the United States Bankruptcy Code shall be filed by or against the Company, the Bank shall be authorized to continue to perform the services contemplated by this Agreement; provided, however, that the Bank shall have no obligation to take any act in furtherance of this Agreement if such act, in the sole judgment of the Bank or its legal counsel, would violate any statute, regulation, rule or order of the United States Bankruptcy Court or other court of competent jurisdiction or would otherwise expose the Bank to legal liability. The Secured Party agrees that, upon the Bank's demand, Secured Party shall promptly reimburse the Bank to the extent of any monies the Bank shall be required by court order pursuant to 11 U.S.C. § 549 to pay to the estate of the Company in bankruptcy on account of any unauthorized post-petition transfers of funds to the extent such funds arise from the Bank's performance of this Agreement; provided, however that the Secured Party's liability for such reimbursement shall be limited to the amount of Collateral so transferred to the Secured Party from the Collateral Account and in no event shall the Secured Party be liable for special, indirect, exemplary, consequential, or punitive damages caused by or resulting from such transfer even if the Secured Party has been advised of the possibility of such damages.

(e)    The Company agrees to pay to the Bank all fees, expenses and charges associated with the Collateral Account, the items deposited therein and the funds withdrawn therefrom, as well as fees for all services provided by the Bank pursuant to this Agreement promptly following written demand therefor or otherwise in accordance with the Deposit Agreement.

(f)    If any dispute arises between the parties with respect to the obligations of the Bank hereunder or if the Bank is served with legal process, which Bank, in good faith, believes may subject the Bank to loss or liability for disbursing any funds deposited in the Collateral Account as provided herein, then the Bank shall have the right either (x) to place a hold on funds in the Collateral Account until such time as the Bank receives an appropriate court order or other assurance satisfactory to it as to the disposition of the funds or (y) to commence, at the Company's expense, an interpleader action in any competent federal or state court located in the State of California, and to take no further action, except in accordance with joint written instructions from the Company and the Secured Party or in accordance with an appropriate court order.

**5.    Indemnification**

The Company hereby indemnifies the Bank and holds it harmless against any loss, liabilities, damage or expense (including attorneys' reasonable fees and expenses, court costs and other expenses) that Bank may suffer or incur as a result of or in connection with Bank complying with its obligations under this Agreement, including, but not limited to, (i) unpaid charges, fees, and returned items for which the Company originally received credit or remittance by the Bank, and (ii) any loss, liabilities, damage or expense the Bank incurs as a result of (A) entering into or acting pursuant to this Agreement, (B) honoring and following any instruction the Bank may receive from or believes in good faith to be from, the Secured Party or the Company in accordance with this Agreement, and (C) not honoring or following any instruction it receives from or believes in good faith to be from, the Company in accordance with this Agreement. The Company shall not be responsible for any loss, damage, or expense that a court having jurisdiction determines to have been caused by the Bank's gross negligence or willful misconduct in its performance of its obligations under this Agreement.

**6.    Notice and Communications**

(a)    All communications required by this Agreement or regarding this Agreement must be in writing, addressed to the respective Designated Authority and delivered to each recipient party at its address set forth in Section 6(d), or at such other address or other Designated Authority as a party may designate in writing to the other parties from time to time.

(b)    Any communication required to be delivered to the Bank pursuant to this Agreement, including any notice or instruction in the form of Exhibit A, B or C, shall be given in writing at the address of the Bank's Designated Authority specified in Section 6(d) below. Service of any such communication shall be deemed complete (a) if hand delivered, when delivered, (b) if mailed by United States mail, certified or registered, postage prepaid, two business days after mailing, (c) if by Federal Express or other reliable overnight courier service, on the next business day after delivered to such courier service, or (d) if by e-mail or facsimile, on the day and at the time of transmission. If service of any such communication is deemed complete after 2:00 PM Pacific time on a Business Day, or on a day that is not a Business Day, service shall be deemed received by the Bank at the Bank's opening of its business on the next succeeding Business Day.

(c)    As used herein, "Business Day" means every day other than a Saturday, a Sunday, a legal holiday or any other day on which the Bank is permitted or required by federal and California law to be closed for business.

(d)    Disposition Instructions shall be implemented by the Bank no later than 5:00 PM Pacific time on the first Business Day after the Business Day on which such Disposition Instruction was deemed received by the Bank's Designated Authority. A Disposition Instruction shall be completed in the Bank's regular course of business. The Bank may require additional documentation beyond the Disposition Instruction, including, but not limited to, transfer request forms or service agreements, before effectuating any Disposition Instruction. Such additional documentation shall be similar to that required by Bank in its regular course of business. Certain funds transfer transactions that may be requested by the Secured Party may require the completion of transfer request forms or services agreements used in the Bank's regular course of business in addition to the information required by Exhibit A.

>Address for Bank:
>River City Bank
>Attention: Cash Management
>2485 Natomas Park Drive
>Sacramento, CA 95833
>Telephone: 916-567-2660
>Email: CashMgmt@rivercitybank.com
>Facsimile: 916-567-2779
>
>Address for Company:
>Western Community Energy
>Attention: Andrew Ruiz, Chief Financial Officer
>3390 University Ave., Suite 200
>Riverside, CA  92501
>Phone:  (951) 405-6740
>Email:  aruiz@wrcog.us
>Facsimile: (951) 223-9720
>
>Address for Secured Party:
>Barclays Bank PLC
>745 Seventh Avenue, 19th Floor
>New York, New York 10019
>Attention: R. Cassandra Bolz
>Facsimile: (646) 758-1419
>Telephone: (212) 526-3974
>Email: cassandra.bolz@barclays.com

**7.    Termination**

(a)    The Secured Party may terminate this Agreement at any time by written notice of termination to the Bank issued substantially in the form of Exhibit B attached hereto and made a part hereof. Upon termination of this Agreement, the Collateral shall be forthwith paid to the Secured Party.

(b)     The Company may terminate this Agreement only by written notice to the Bank signed by the Secured Party and the Company issued substantially in the form of Exhibit B.

(c)     This Agreement may be terminated by the Bank on not less than 30 calendar days' prior written notice given to the Company and the Secured Party; provided however, if the Bank reasonably believes that an Account is being used to perpetrate fraud or for other unlawful purpose, the Bank may notify Company and Secured Party and terminate this Agreement immediately.

(d)     Sections 3, 4 and 5 of this Agreement shall survive the termination of this Agreement and shall remain in effect.

(e)     If the Company or the Secured Party fail to promptly notify the Bank in accordance with Section 6 of termination of the Secured Party's interest in the Collateral Account or otherwise fail to terminate this Agreement in accordance with this Section 7, any service fees paid to the Bank associated with this Agreement subsequent to such termination shall be retained by the Bank.

**8.     Miscellaneous**

(a)     This Agreement shall be binding upon and inure to the benefit of the parties hereto, their permitted successors and assigns. The Company shall not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Bank and the Secured Party. The Secured Party may assign and transfer its rights under this Agreement, provided however, the Bank shall not be bound by such transfer and the Secured Party shall remain fully liable and responsible under this Agreement unless and until the Bank is delivered written notice of such transfer in accordance with Section 6 hereof signed by such transferee substantially in the form of Exhibit C attached hereto and made a part hereof. The Bank shall not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Secured Party and the Company, except that the Bank may transfer its rights and obligations under this Agreement to any direct or indirect depositary subsidiary of River City Bank or, in the event of a merger or acquisition of the Bank, to the Bank's successor depositary institution. The Collateral and operation of the Collateral Account shall be governed by Federal Regulations and Operating Circulars, NACHA rules, and the UCC and other applicable law.

(b)     The UCC shall govern the perfection and priority of the Secured Party's rights and interest in the Collateral and shall be the "jurisdiction" of the Bank within the meaning of Section 9304 of the UCC.

(c)     In the event of a conflict between this Agreement and the Deposit Agreement or any other agreement between the Bank and/or the Customer or the Secured Party, the terms of this Agreement will prevail.

(d)     This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which taken together shall constitute one and the same Agreement. Delivery of an executed signature page counterpart to this Agreement by facsimile or .pdf transmission shall be effective as if it were delivery an original executed counterpart thereof. This Agreement can be modified or amended only by written agreement of all of the parties hereto evidencing such modification or amendment.

9. **Waiver of Jury Trial**

EXCEPT AS PROHIBITED BY APPLICABLE LAW, EACH PARTY HERETO IRREVOCABLY WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (INCLUDING ANY COUNTERCLAIM) OF ANY TYPE IN WHICH ANOTHER PARTY SHALL BE A PARTY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.

{signatures on following page}

IN WITNESS WHEREOF, each of the parties has executed and delivered this Account Control Agreement as of the day and year first above set forth.

Account Bank    RIVER CITY BANK, a California corporation

By: *(signature)*
Name: Kinzie Nichols
Title: Cash Management Manager VP

WCE    WESTERN COMMUNITY ENERGY,
a California joint powers authority

By: _____
Name: _____
Title: _____

Approved as to form:

_____
Steven DeBaun, Partner,
Best Best & Krieger

Secured Party    BARCLAYS BANK PLC

By: _____
Name: R. Cassadra Bolz
Title: Authorized Signatory for and on behalf of Barclays Bank PLC

IN WITNESS WHEREOF, each of the parties has executed and delivered this Account Control Agreement as of the day and year first above set forth.

Account Bank        RIVER CITY BANK, a California corporation

By: _____
Name: _____
Title: _____

WCE        WESTERN COMMUNITY ENERGY,
a California joint powers authority

By: _Rick Bishop_
Name: _Rick Bishop_
Title: _Executive Director_

Approved as to form:

_____
Steven DeBaun, Partner,
Best Best & Krieger

Secured Party        BARCLAYS BANK PLC

By: _R. Cassandra Bolz_
Name: R. Cassadra Bolz
Title: Authorized Signatory for and on behalf of Barclays Bank PLC

# EXHIBIT A

[To be issued on Letterhead of Secured Party
and delivered pursuant to Section 6]

[Date]

River City Bank

[Address]

## DISPOSITION INSTRUCTION

You are instructed to wire transfer all available funds from the Sending Account to the Beneficiary Account set forth below.

You are instructed to wire transfer all available funds in the amount of $
from the Sending Account to the Beneficiary Account set forth below.

Sending Account Number:

Receiving Bank Name:

Receiving Bank BIC Code:

Receiving Bank ABA:

Beneficiary Account Number:

Beneficiary Account Name:

Beneficiary's Mailing Address:

Special Instructions/Further Credit Instructions: N/A

Very truly yours,

By: _____

Name: _____

Title: _____

Attachment

cc: [Insert Company]

# EXHIBIT B

[To be issued on Letterhead of Secured Party
and delivered pursuant to Section 6]

[Date]

River City Bank
[Address]

[Company Address]

## NOTICE OF TERMINATION OF DEPOSIT ACCOUNT CONTROL AGREEMENT

Ladies and Gentlemen:

Please refer to the Deposit Account Control Agreement among [_____] , Barclays Bank PLC and River City Bank dated as of [_____] (the "Agreement"). Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

We have attached or separately transmitted a copy of the fully executed Agreement.

We hereby notify River City Bank that [Secured Party], is exercising its right under Section 7(a) of the Agreement (subject to Bank's rights as set forth in the Agreement) to terminate the Agreement. Accordingly the Agreement shall terminate at the close of the Bank's business [this day] [on _____], subject to those undertakings that shall survive termination of the Agreement. Upon termination of the Agreement, all funds thereafter on deposit or deposited in the Collateral Account and all other Collateral received by the Bank shall be subject solely to the provisions of the Deposit Agreement between [Company] and the Bank.

Very truly yours,
Secured Party

cc:

[Company]

By: _____

Name: _____

# EXHIBIT C

[To be issued on Letterhead of Assignee of Secured Party
and delivered pursuant to Section 6]

[Date]

River City Bank

[Address]

**Notice of Assignment and Assumption**

Ladies and Gentlemen:

We refer you to the Deposit Account Control Agreement among _____, Barclays Bank PLC and River City Bank dated as of _____ (the "Agreement"). Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

We have attached or separately transmitted a copy of the fully executed Agreement.

You are hereby notified pursuant to Section 8(a) of the Agreement, that the Agreement has been assigned and transferred to [name of transferee]. The contact information for the transferee for the purpose of Section 6 of the Agreement is:

    [name]    : Designated Officer

    [address]
    Facsimile:

    Email:
    Phone:

[name of transferee] as transferee represents that it has succeeded to the interests of the Secured Party under the Agreement and has assumed the obligations and responsibilities of the Secured Party under the Agreement. [name of transferee] agrees and represents to River City Bank that it is fully bound by the terms of this Agreement.

cc:

[Company]

    Very truly yours,

    [name of transferee]

    By: _____

    Name: _____