| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Joel Moss (SBN 241853) (admission pending)<br>Daniel H.R. Laguardia (SBN 314654)<br>SHEARMAN AND STERLING LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105<br>Email: joel.moss@shearman.com<br> daniel.laguardia@shearman.com<br><br>Jason D. Strabo (SBN 246426)<br>Kristin K. Going (admitted pro hac vice)<br>MCDERMOTT WILL & EMERY LLP<br><br>☒ *Attorney for:* Barclays Bank PLC | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>WESTERN COMMUNITY ENERGY,<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:21-bk-12821-SY<br><br>CHAPTER: 9<br><br>**NOTICE OF OBJECTION TO CLAIM**<br><br>DATE: 01/06/2022<br>TIME: 1:30 pm<br>COURTROOM: 302<br>PLACE: U.S. Bankruptcy Court, Central District of CA<br><br>3420 Twelfth Streeth,<br>Riverside, CA 92501-3819 |
|---|---|

1. TO *(specify claimant and claimant's counsel, if any)*:  Southern California Edison Company, Attn: Samantha Nicely; Seth Goldman, Bradley R. Schneider

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim # 18-21 ) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers:** You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date:  11/30/2021 

McDermott Will & Emery LLP
Printed name of law firm

/s/ Jason Strabo
Signature

Date Notice Mailed:  11/30/2021 

Jason Strabo
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 2049 Century Park East, Suite 3200, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/30/2021     , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/30/2021 | Jason D. Strabo | /s/ Jason D. Strabo |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                               Page 2                      **F 3007-1.1.NOTICE.OBJ.CLAIM**

# Mailing Information for Case 6:21-bk-12821-SY

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Abram Feuerstein**   abram.s.feuerstein@usdoj.gov
- **Beth Gaschen**   bgaschen@wgllp.com, kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com;gestrada@wgllp.com
- **Seth Goldman**   seth.goldman@mto.com
- **David M Goodrich**   dgoodrich@wgllp.com, kadele@wgllp.com;lbracken@wgllp.com;wggllp@ecf.courtdrive.com;gestrada@wgllp.com
- **Everett L Green**   everett.l.green@usdoj.gov
- **Anna Gumport**   agumport@sidley.com, laefilingnotice@sidley.com;anna-gumport-6608@ecf.pacerpro.com
- **Chad V Haes**   chaes@marshackhays.com, chaes@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com;kfrederick@ecf.courtdrive.com
- **Brian D Huben**   hubenb@ballardspahr.com, carolod@ballardspahr.com;rev_jarushewskyj@ballardspahr.com
- **Mark T Jessee**   jesseelaw@aol.com, marktjessee@gmail.com
- **Lindsey E Kress**   lkress@lockelord.com, hayli.holmes@lockelord.com
- **Peter W Lianides**   plianides@wghlawyers.com, jmartinez@wghlawyers.com;mweinberg@wghlawyers.com
- **Richard A Marshack**   rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com
- **Ali Matin**   ali.matin@usdoj.gov, carolyn.k.howland@usdoj.gov
- **David L. Neale**   dln@lnbyg.com
- **Valerie Bantner Peo**   vbantnerpeo@buchalter.com
- **Cameron C Ridley**   Cameron.Ridley@usdoj.gov
- **Brandy A Sargent**   brandy.sargent@klgates.com, litigation.docketing@klgates.com
- **Bradley R Schneider**   bradley.schneider@mto.com
- **Clifford W Stevens**   dsupnet@neumiller.com
- **Jason D Strabo**   jstrabo@mwe.com, cgreer@mwe.com
- **United States Trustee (RS)**   ustpregion16.rs.ecf@usdoj.gov
- **Joseph M VanLeuven**   joevanleuven@dwt.com, katherinehardee@dwt.com;pdxdocket@dwt.com

- **Marc J Winthrop**    mwinthrop@wghlawyers.com, jmartinez@wghlawyers.com
- **Robert J Wood**    robert.wood@rivercitybank.com
- **Nahal Zarnighian**    zarnighiann@ballardspahr.com

Joel Moss (SBN 241853) (admission pending)
Daniel H.R. Laguardia (SBN 314654)
**SHEARMAN AND STERLING LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Email: joel.moss@shearman.com
        daniel.laguardia@shearman.com

Jason D. Strabo (SBN 246426)
Kristin K. Going (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, California 90067-3218
Telephone: (310) 788-4125
Facsimile: (310) 277-4730
Email: jstrabo@mwe.com
        kgoing@mwe.com

*Attorneys for Barclays Bank PLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>WESTERN COMMUNITY ENERGY,<br><br>     Debtor. | Case No. 6:21-bk-12821-SY<br><br>Chapter 9<br><br>**OBJECTION TO CLAIMS OF SOUTHERN CALIFORNIA EDISON COMPANY (PROOFS OF CLAIM 18-21)**<br><br>**Hearing:**<br>January 6, 2022 at 1:30 p.m. (PT)<br>Place: U.S. Bankruptcy Court<br>     Central District of California<br>     Telephonic/In-Person<br>     3420 Twelfth Street, Courtroom 302<br>     Riverside, CA 92501-3819<br><br>Judge: Honorable Scott H. Yun |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to section 502(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3007-1 of the Local Rules for the United States Bankruptcy Court for the Central District of California (the "Court"), Barclays Bank PLC ("Barclays"), as a secured creditor and party-in-interest, hereby objects to proofs of claim 18 through 21 filed by Southern California Edison Company ("SCE"). This objection (the "Objection") is based on the record of this case, and the evidence, arguments, and representations that may be presented at or prior to the hearing on the Objection. In support of this Objection, Barclays submits the following:

## PRELIMINARY STATEMENT

1.      As Barclays will demonstrate in connection with the adversary proceeding commenced contemporaneously herewith, Barclays is a fully secured creditor in this chapter 9 bankruptcy case. SCE, an unsecured creditor, is seeking to elevate its unsecured claims through setoff rights that are barred under the Bankruptcy Code and claims for administrative expenses that are wholly without merit. None of SCE's claims are secured by a right of setoff under section 553 of the Bankruptcy Code because (i) SCE's claims lack mutuality—a key element that SCE must demonstrate to assert a right of setoff under section 553 of the Bankruptcy Code; (ii) SCE cannot offset postpetition funds; (iii) any alleged setoff rights are subordinate to prepetition secured claims, including Barclays' secured claims; and (iv) allowing SCE to setoff WCE's postpetition customer remittances to satisfy its unsecured claims would be inequitable and not serve the goals of the Bankruptcy Code.

2.      SCE has failed to demonstrate how any of its claims should be afforded administrative expense priority. First, it is unclear whether administrative expenses under section 503(b)(1)(A) are allowed under chapter 9 of the Bankruptcy Code. But more importantly, SCE

1

has failed to establish the fundamental elements required for the allowance of administrative expenses: (1) the claim must directly and substantially benefit the estate; and (2) that benefit must be quantifiable.  SCE cannot satisfy either element.

3.    Finally, claim numbers 19, 20, and 21, lack sufficient evidence to establish the validity and amount of such claims.  In particular, claim 19 lacks any evidence whatsoever, and claims 20 and 21 contain documentation that fails to establish the validity and amount of such claims.  Further, in order for SCE to successfully assert the large claim referenced in claim 21, it would need to take actions that violate the automatic stay.  Accordingly, SCE's proofs of claim evidence nothing more than general unsecured claims.  SCE has failed to establish that its claims should be allowed, let alone that such claims are subject to a secured right of setoff or should be accorded administrative expense status.  At best SCE holds certain general unsecured claims in amounts not yet established by the proofs of claim it has filed.

## BACKGROUND

4.    The California Public Utilities Code allows cities, states, and joint power authorities ("JPA") to participate in community choice aggregator ("CCA") programs to procure electricity for customers within their respective jurisdictions.  *See* Cal. Pub. Util. Code § 366.2. On or about August 12, 2018, WCE was established as a JPA for the purposes of implementing a CCA program in seven cities located in Riverside County: Canyon Lake, Eastvale, Hemet, Jurupa Valley, Norco, Perris, and Wildomar.

5.    SCE is the primary electricity supply company for the above cities and much of Southern California and is responsible for collecting payments on behalf of WCE from WCE's customers.  As such, on February 26, 2019, WCE entered into a Community Choice Aggregator Agreement ("CCA Agreement") with SCE for billing and metering services for its CCA program.

Under the CCA Agreement, SCE collects WCE's customers' remittances and sends those remittances to WCE after deducting fees and charges that compensate SCE for its services. Importantly, SCE essentially in doing so functions as a pass through, with such remittances never constituting funds of SCE.   The role of SCE in holding such remittances for WCE is described in the Security Agreement, dated February 12, 2020, between WCE and River City Bank ("RCB") as collateral agent (the "Security Agreement").[1]   *See* Security Agreement § 5.01 ("WCE has, pursuant to the Direction Letter, irrevocably instructed SCE to remit to Collateral Agent all payments due or to become due in respect of the Receivables unless and until both Collateral Agent, at the direction of the Required Secured Creditors, and WCE direct otherwise in writing."). Pursuant to section 6.01 of the Security Agreement, the "Lockbox Account is subject to the sole dominion, control and discretion of the Collateral Agent until the Discharge Date."[2]   The Security Agreement also makes clear that once the Collateral Agent is paid, "[n]o distribution will be made . . . to any deposit account other than the Operating Funds Flow Account, without the express written consent of Lender."  Security Agreement § 6.02.

6.    On August 15, 2019, WCE and SCE entered into an *Agreement Between Southern California Edison Company and Western Community Energy Regarding WCE Implementation and Resource Adequacy Compliance for 2020, 2021 and 2022* (the "RA Agreement").[3]  The RA Agreement provided for, among other things, a "set-off" against customer remittances received by SCE under the CCA Agreement in the event of default by WCE under the RA Agreement.

---

[1] The Security Agreement is attached to Barclays' amended proof of claim as Exhibit 7. *See* Proof of Claim No. 22-3.

[2] The "Discharge Date" is defined as the date on which "any and all outstanding Obligations under the Transaction Agreements have been fully satisfied."  Security Agreement at 4.   "Transaction Agreements" means "this Agreement and all other agreements, instruments or documents to which WCE is a party and which are executed and delivered from time to time in connection with or as a security for WCE's obligations under the Master Agreements" or any other "Power Purchase Agreements."

[3] The RA Agreement is attached as Exhibit 1 to SCE claim number 18.

Specifically, section J(c) of the RA Agreement expressly provides that "SCE has the right to set off <u>WCE's customer remittances</u> against any payment due to SCE under this Agreement that remains unpaid sixty (60) calendar days from the date of SCE's invoice." (emphasis added).   The reference to the amounts SCE claims as being subject to setoff as "WCE's customer remittances" is also consistent with SCE holding such funds for WCE's benefit.

7.      On May 24, 2021, WCE filed a chapter 9 bankruptcy petition (the "<u>Petition Date</u>").

8.      On June 9, 2021, WCE's board of directors voted unanimously to de-register WCE as a community choice aggregator with the California Public Utilities Commission (the "<u>CPUC</u>") and terminate its CCA program.  On June 10, 2021, WCE provided notice to the CPUC of its deregistration and termination of its program and requested the CPUC to immediately deregister WCE and begin the involuntary return of WCE's customers to SCE for generation services.

9.      In accordance with Local Rule 3007-1(c)(2), attached as <u>Exhibit B</u> is the declaration of Jason D. Strabo ("<u>Strabo Declaration</u>") attesting that the attached proofs of claims are the true and complete proofs of claim on file with the Court.

10.     On September 30, 2021, SCE filed the following four proofs of claim (Claim Nos. 18, 19, 20, and 21) (collectively, the "<u>SCE Claims</u>"): (i) a claim for $7,603,680.16 ("<u>SCE Claim 18</u>"), attached as <u>Exhibit 1</u> to the Strabo Declaration, which SCE alleges is "secured by a right of offset against customer remittances collected by SCE pursuant to its service agreement with [WCE]"; (ii) a claim for $2,426,150 ("<u>SCE Claim 19</u>"), attached as <u>Exhibit 2</u> to the Strabo Declaration, which contains no supporting documentation and indicates that it is not secured; (iii) a claim for $107,306.68 ("<u>SCE Claim 20</u>"), attached as <u>Exhibit 3</u> to the Strabo Declaration, which SCE alleges is "secured by a right of offset and/or recoupment against customer payments that SCE collects and remits to [WCE] under the Services Agreement"; and (iv) a claim for

$14,568,891.88 ("SCE Claim 21"), attached as <u>Exhibit 4</u> to the Strabo Declaration, which SCE alleges is secured by a right of setoff for "re-entry fees" (the "<u>Re-Entry Fees</u>") from WCE, "to the extent WCE consents," to "cover the incremental procurement and administration caused [by] its mass involuntary return of customers to SCE's procurement service." Strabo Declaration, Exhibit 4 at 5.  In addition, SCE alleges, without providing any basis, that SCE Claims 20 and 21 constitute an "administrative expense." *See* Strabo Declaration, Exhibits 3 and 4.

11.    Prior to the Petition Date, Barclays made loans to WCE and issued letters of credit for the benefit of WCE pursuant to a Revolving Credit Agreement, dated March 12, 2020, between WCE and Barclays (the "<u>Credit Agreement</u>").[4]  The Credit Agreement functions in tandem with a Security Agreement.

12.    WCE and Barclays are also parties to that certain Promissory Note (Principal Amount not to exceed $16,000,000) dated March 12, 2020 (the "<u>Promissory Note</u>," and together with the Credit Agreement and Security Agreement, the "<u>Barclays Security Documents</u>")[5] pursuant to which WCE promised to pay the unpaid principal amount of each Loan and Unreimbursed Amount from the date of such Loan.

13.    Pursuant to Section 2.20 of the Credit Agreement, WCE conveyed to Barclays a first priority security interest in "(i) the Pledged Revenues, (ii) the Operating Reserve Fund, and (iii) the Operating Fund Account to secure all of [WCE's] Obligations."

14.    The parties' entry in the Credit Agreement gave Barclays an immediately enforceable and automatically binding statutory lien in the Pledged Collateral under California law.

---

[4] The Credit Agreement is attached to Barclays' amended proof of claim as Exhibit 1. *See* Proof of Claim No. 22-3. Capitalized terms that are undefined have the meaning ascribed to such terms in the Credit Agreement.
[5] Each of the Barclays Security Documents are attached as Exhibits A, B, and C, respectively, to Barclays' complaint for declaratory judgment, dated November 30, 2021 (the "<u>Barclays Complaint</u>").

Section 5451 of the California Government Code provides:

(a) A pledge of collateral by any public body to secure, directly or indirectly, the payment of the principal or redemption price of, or interest on, any bonds, or any reimbursement or similar agreement with any provider of credit enhancement for bonds, which is issued by or entered into by a public body, shall be valid and binding in accordance with the terms of the pledge document from the time the pledge is made for the benefit of pledgees and successors thereto.
(b) The collateral shall immediately be subject to the pledge, and the pledge shall constitute a lien and security interest which shall immediately attach to the collateral and be effective, binding, and enforceable against the pledgor, its successors, purchasers of the collateral, creditors, and all others asserting the rights therein, to the extent set forth, and in accordance with, the pledge document irrespective of whether those parties have notice of the pledge and without the need for any physical delivery, recordation, filing, or further act.

15.    Additionally, while not required by virtue of the operation of California Government Code 5451, Barclays' liens on  WCE's Operating Funds Account and Operating Reserve Account were perfected prepetition pursuant to UCC §§ 9-104(b)(8), 9-104, and 9-314 as a result of entry into Deposit Control Agreements, and Barclays' lien on the Pledged Revenues was perfected by filing of a UCC financing statement.[6]

16.    Accordingly, Barclays has a first-priority lien in the assets that SCE claims postpetition secured setoff rights in pursuant to the SCE Claims.[7]

## **RELIEF REQUESTED**

17.    By this Objection, Barclays requests entry of the attached order (the "Proposed Order") (a) granting the Objection; (b) disallowing any setoff rights asserted in the SCE Claims; (c) disallowing any administrative expense claims asserted in the SCE Claims; (d) disallowing and expunging SCE Claims 19 through 21 in their entirety; and (e) granting Barclays such other and further relief as may be appropriate under the circumstances.

---

[6] For more information relating to the Deposit Control Agreements, see the Barclays Complaint.
[7] Contemporaneously with filing this Objection, Barclays filed the Barclays Complaint which seeks a declaratory judgment that Barclays' claims are secured by a first-priority lien that trumps any alleged setoff rights SCE may have.

## OBJECTION

18.     Barclays objects to the SCE Claims for the following reasons: (1) SCE does not have a valid claim secured by a right of setoff, and even if it did, the Court should deny any setoff rights; (2) SCE lacks a valid administrative claim in this case; and (3) SCE Claims 19 through 21 are completely unfounded and lack sufficient supporting documentation (or in the case of SCE Claim 19, any documentation whatsoever).

### 1.   The SCE Claims Are Not Secured by A Right of Setoff

19.     While setoff rights are preserved in bankruptcy, they are limited by 11 U.S.C. § 553, which provides:

> (a)     Except as otherwise provided in this section and in section 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . ."

11 U.S.C. § 553(a).

20.     Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of Md. V. Strumpf*, 516 U.S. 16, 19 (1995)).  The party asserting a right of setoff bears the burden of proof. *Id.* at 1399.

21.     At the outset, SCE must establish that it is entitled to a right of setoff under section 553 of the Bankruptcy Code.   There are three conditions that must be met for a setoff in bankruptcy: "(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual." *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 594

(B.A.P. 9th Cir. 2007) (quoting *In re Luz Int'l, Ltd.*, 219 B.R. 837, 843–44 (9th Cir. BAP 1998)).

"In essence, a creditor must establish two elements before a setoff may be asserts: timing and

mutuality." *Id.*  As for timing, "each debt or claim sought to be offset must have arisen prior to

filing of the bankruptcy petition." *Newbery*, 95 F.3d at 1398.  For mutuality, the debts "must be

in the same right and between the same parties, standing in the same capacity." *Id.* at 1399 (internal

quotation omitted).  *See also In re County of Orange*, 183 B.R. 609, 615 (Bankr. C.D. Cal. 1995)

("[T]he mutuality requirement in bankruptcy should be strictly construed because setoffs run

contrary to fundamental bankruptcy policies such as the equal treatment of creditors and the

preservation of a reorganized debtor's assets.").

### a.  The SCE Claims Lack Mutuality

22.    Under the CCA Agreement and RA Agreement, SCE does not owe a debt to WCE

with respect to the Receivables[8] that are required to be deposited in the Lockbox Account and over

which SCE claims rights of setoff.  Rather, SCE holds the money paid by WCE's customers (i.e.

"WCE's customer remittances") to SCE under the CCA Agreement for the benefit of WCE.  In

other words, SCE does not hold a beneficial interest in customer remittances.  Rather, SCE holds

WCE's customer remittances in trust for WCE's benefit.  Although SCE may assert that an express

trust does not exist, one does not need to exist in this context.  The law may imply or infer a trust

relationship. *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1086 (E.D. Cal.

2003) ("Under California law, 'a resulting trust is a trust implied by operation of law to enforce

the inferred intent of the parties to establish a trust.'" (citing *In re Golden Triangle Capital*, 171

B.R. 79, 82 (9th Cir.BAP 1994))).

---

[8] "Receivable" is defined in the Security Agreement as "an Account evidencing WCE's rights to payment for Product, billed in an invoice sent to a Customer by SCE, together with all late fees and other fees which SCE and WCE agree are to be charged in such invoice to the Customer by SCE on behalf of WCE."

23.     SCE's role as trustee with respect to the customer remittances is supported by the obligations in the Security Agreement.   Pursuant to the Security Agreement, SCE has been irrevocably instructed to "remit to Collateral Agent all payments due or to become due in respect of the Receivables unless and until both Collateral Agent, at the direction of the Required Secured Creditors, and WCE direct otherwise in writing."  Security Agreement § 5.01.  Pursuant to section 6.01 of the Security Agreement, the "Lockbox Account is subject to the sole dominion, control and discretion of the Collateral Agent until the Discharge Date."[9]  The Security Agreement also makes clear that once the Collateral Agent is paid, "[n]o distribution will be made . . . to any deposit account other than the Operating Funds Flow Account, without the express written consent of [Barclays]."  Security Agreement § 6.02.

24.     A trustee cannot exercise setoff rights against funds held in trust.  *In re Carlyle*, 242 B.R. 881, 888 n. 4 (Bankr. E.D. Va. 1999) ("A trustee cannot set off against the trust fund held by him his individual demand against the creator of the trust. In this connection, equity treats the fiduciary as holding the res in a separate capacity.") (internal quotations omitted); *and see In re Ben Franklin Retail Store, Inc.*, 202 B.R. 955, 957 (Bankr. N.D. Ill. 1996) ("[W]hen a fund is deposited for a 'special purpose' it is held in trust for the depositor, rather than 'owed' to the depositor.  Because of this distinction, the requisite mutuality of obligation is not present with special purpose funds and set off is not permitted.").

25.     Under the CCA Agreement, SCE is a fiduciary for WCE, while any claim owed by WCE to SCE that SCE claims is subject to setoff is owed to WCE as principal.   As such, there is

---

[9] The "Discharge Date" is defined as the date on which "any and all outstanding Obligations under the Transaction Agreements have been fully satisfied."  Security Agreement at 4.   "Transaction Agreements" means "this Agreement and all other agreements, instruments or documents to which WCE is a party and which are executed and delivered from time to time in connection with or as a security for WCE's obligations under the Master Agreements" or any other "Power Purchase Agreements."

no mutuality for setoff purposes because there is no capacity mutuality. *In re Luz*, 219 B.R. at 847–48; *see Matter of Esgro, Inc.*, 645 F.2d 794, 797 (9th Cir. 1981); *In re Cty. of Orange*, 183 B.R. 609, 619 (Bankr. C.D. Cal. 1995) ("Thus, for example, where the debt of an entity arises from a fiduciary duty, or is in the nature of a trust, there is no mutuality."  (citing *In re Bob Richards Chrysler-Plymouth Corp., Inc.*, 473 F.2d 262 (9th Cir. 1973), *cert. denied*, 93 S.Ct. 2735 (1973))). Moreover, the language in the RA Agreement that purportedly gives rise to SCE's setoff rights expressly refers to the funds that SCE is seeking to setoff as "WCE's customer remittances."  *See* Strabo Declaration, Exhibit 1 at 6.  This characterization of the funds to be setoff is inconsistent with SCE holding a beneficial interest in the funds to be setoff, meaning that mutuality of capacity is lacking.

26.    Because there is no mutuality, there can be no valid right of setoff in favor of SCE under section 553 of the Bankruptcy Code.

### b.  SCE Cannot Offset Postpetition Funds

27.    The funds in the Lockbox Account represent WCE's customer remittances that were collected by SCE for WCE's benefit postpetition.   SCE's obligation to turn over customer remittances under the agreements with WCE by definition can only arise when such funds are collected, here postpetition. WCE's postpetition funds cannot be setoff, because under section 553(a) of the Bankruptcy Code, each debt and claim subject to offset must have arisen prepetition. *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 933 (9th Cir. 2020) ("'[U]nder § 553(a) of the Code, each debt or claim sought to be offset must have arisen prior to [the] filing of the bankruptcy petition.'"  (quoting *Newbery*, 95 F.3d at 1398)). *In re Orient River Investments, Inc.*, 105 B.R. 790, 794 (Bankr. E.D. Pa. 1989) ("In no event can a creditor seek to assert setoff as to a claim which the debtor has against it which has arisen post-

petition."); *In re All-Bright Sign Service Co., Inc.*, 11 B.R. 409, 411 (Bankr. W.D. Ky. 1981) ("The filing of the petition marks the time at which mutuality ceases, and any money thereafter deposited is considered either property of the debtor or his estate. This is embodied in 11 U.S.C. § 553(a), which permits setoff in bankruptcy, only for mutual debts that arose before the commencement of the case.") (internal quotations omitted).

28.    Therefore, remittances collected by SCE on WCE's behalf postpetition may not be used to setoff debts allegedly owed to SCE.  Simply put, customer remittances received by SCE after the Petition Date are not subject to setoff under section 553 of the Bankruptcy Code.

29.    Moreover, to the extent that the Receivables were collected postpetition by SCE, SCE could not rely on such Receivables forming a part of its secured claim due to the operation of section 552 of the Bankruptcy Code.   Section 552 of the Bankruptcy Code would expressly cut off SCE's lien on funds acquired postpetition, unless such funds were proceeds of SCE's prepetition collateral.  *See* 11 U.S.C. § 552(a) ("Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.").  SCE did not have any lien or security interest on any collateral prepetition, but rather, SCE acted as a pass-through entity for WCE's customer remittances.  New customer remittances are not the proceeds of any prepetition collateral held by SCE, and if SCE holds a security interest in customer remittances, which it does not, that interest is limited to the funds in its possession on the Petition Date.  SCE does not hold a lien on any postpetition remittances, which constitute property of WCE.

### c. Even If SCE Had Valid Setoff Rights, Its Setoff Rights Would Be Subordinate to Secured Claims

30.  Under UCC § 9-404 and analogous common law principles, even if SCE's claims were secured by valid setoff rights, such setoff rights would be subordinate to secured claims that existed before SCE's right of setoff accrued. Section 9-404(a)(2) provides:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (c), the rights of an assignee are subject to:
>
> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

UCC § 9-404(a)(2).

31.  "A creditor's setoff right is subordinate to a lender's security interest if the creditor received authenticated notice of that security interest." *In re Commc'n Dynamics, Inc.*, 300 B.R. 220, 223 (Bankr. D. Del. 2003).  "A person has notice of a fact if the person: (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all of the facts and circumstances known to the person at the time in question, has reason to know that it exists."  UCC § 1-202(a).  Further, the UCC states "a person 'receives' a notice or notification when . . . it comes to that person's attention."  UCC § 1-202(e).

32.  As of the Petition Date, SCE had notice of the security interests of secured creditors (RCB and Power Purchase Aggregators) and, therefore, could not possess valid setoff rights.  *See* Security Agreement § 5.01 (directing SCE to remit customer remittances for the "Required Secured Creditors").

33.  SCE also had notice of Barclays' liens, which are secured by a valid lien on substantially all of WCE's assets that was granted by WCE, attached, and perfected prior to the Petition Date.  *See* Barclays Compl. ¶¶16-30.  Barclays perfected its liens pursuant to a UCC-1

12

prepetition. *Id.* Section 5.01 of the Security Agreement directs SCE to deposit all payments made in respect of "Receivables" and any proceeds generated by the "Collateral" into the Lockbox Account." *See* Security Agreement § 5.01. Further, that same Security Agreement identifies Barclays as Lender and provides that "[n]o distribution will be made pursuant to . . . any deposit account other than the Operating Funds Flow Account, without the express written consent of Lender." *See* Security Agreement § 6.02. It would defy logic to argue that SCE did not have actual notice of Barclays' validly perfected first-priority liens, and thus, any alleged right of setoff would be subordinate to Barclays first-priority liens.

### d. Even if SCE Can Meet the Bankruptcy Code's Requirements Under Section 553, the Court Should Deny Any Right of Setoff

34. Even if SCE could somehow establish that its contractual setoff rights meet the technical requirements of section 553 of the Bankruptcy Code, because setoff in this case would be inequitable, the Court should exercise its discretion to deny setoff.

35. The right of setoff is permissive and its application rests in the discretion of the Court. *In re Cty. of Orange*, 183 B.R. 609, 622–23 (Bankr. C.D. Cal. 1995) ("An issuer's lien is also unlike a setoff because an issuer's lien is a legal remedy, while setoff has its foundation in equity. A valid issuer's lien must comport with the specific statutory requirements of § 8103. If all of these criteria are met, the court must recognize its validity. In contrast, a setoff is an equitable remedy which, when properly invoked, still rests in the discretion of the court."); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d at 1399; *In re Cascade Roads, Inc.*, 34 F.3d 756, 763 (9th Cir. 1994). "Once the three-part test is satisfied, a court must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives which include an orderly bankruptcy process and equitable treatment of all creditors." *Steadfast Insurance Company v. Woodside Group, LLC*, 2009 WL 6340015 at *4 (Bankr. C.D. Cal. 2009); *see In re Lakeside Community Hosp., Inc.*, 151 B.R.

887, 893-94 (N.D. Ill. 1993) ("The right of setoff is exercised in aid of justice . . . if the rights of no one but the debtor are affected by the act . . . Equity may override a creditor's satisfaction of technical statutory requirements.") (internal citations omitted).

36.    Permitting SCE to setoff WCE's postpetition customer remittances to satisfy its unsecured claims would be inequitable and not serve the goals of the Bankruptcy Code.  A right of setoff for SCE would elevate SCE's unsecured claim to a secured claim, thereby preferring SCE over all other unsecured creditors.  Setoff would allow SCE to receive 100% of customer remittances while other unsecured creditors will be limited to a pro rata share of the remaining funds of the WCE's chapter 9 bankruptcy.  This would grant SCE a windfall to the detriment of all other creditors.  Accordingly, SCE should not be permitted to retain customer remittances and offset those remittances against WCE's debt.

## 2.  SCE's Does Not Have an Administrative Claim

37.    First, it is unclear whether administrative expense claims under 503(b)(1)(A) of the Bankruptcy Code can even exist under chapter 9 of the Bankruptcy Code.  *See In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 141-142 (Bankr. S.D.N.Y. 2010) ("Because a chapter 9 debtor's property remains its own and does not inure into a bankruptcy estate as provided by section 541 of the Bankruptcy Code, there can be no administrative expenses for 'the actual necessary costs of preserving the estate' as contemplated by section 503(b)(1)(A) of the Bankruptcy Code.").  The concept of the "estate" is not incorporated into chapter 9, and thus it is unclear whether there can be administrative expenses for "preserving the estate."  In *Off-Track Betting*, the court explained:

> Both leading bankruptcy treatises concur with this approach. Collier observes that because there is no estate in a chapter 9 case, administrative expense claims under section 503 must be limited to "expenses incurred in connection with the chapter 9 case itself" and

14

1

2   not operating expenses. 6 COLLIER ON BANKRUPTCY ¶
    901.04[13][a]. Norton agrees, observing in passing that no operating
3   administrative expenses are permitted in a chapter 9 bankruptcy
    case. 5 WILLIAM J. NORTON, JR. WILLIAM L. NORTON III,
4   NORTON BANKRUPTCY LAW AND PRACTICE § 90:3.

    *Id.*
5

6       38.    Even if SCE can show that administrative expenses under 503(b)(1)(A) should be

7   allowed in the context of chapter 9, SCE has failed to demonstrate how their claims constitute a

8   quantifiable benefit to the bankruptcy estate.  In order for a claim to be deemed an administrative

9   expense under 503(b)(1), the claim "must (1) arise from a transaction with the debtor in possession,

10  and (2) directly and substantially benefit the estate."  *In re Rodakis*, No. 2:06-BK-04123-SSC,

11  2009 WL 1069164, at *3 (Bankr. D. Ariz. Mar. 30, 2009) (citing *Abercrombie v. Hayden Corp.*

12  *(In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir.1998)).  The benefit provided to the estate must

13  be quantifiable and cannot be speculative.  *See*, *e.g., In re Durango Georgia Paper Co.*, No. 02-

14  21669, 2021 WL 1259530, at *6 (Bankr. S.D. Ga. Mar. 31, 2021) ("'[T]hat which is thought to

15  have some potential benefit . . . is too speculative to be allowed as an 'actual, necessary cost and

16  expense of preserving the estate.'" (quoting *In re Subscription Television of Greater Atlanta*, 789

17  F.2d 1530, 1532 (11th Cir. 1986))); *In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 431 (Bankr.

18  E.D.N.Y. 2015), *aff'd sub nom. Holzer v. Barnard*, No. 15-CV-6277 (JFB), 2016 WL 4046767

19  (E.D.N.Y. July 27, 2016) ("A creditor must not only show that what it provided to the bankruptcy

20  estate was used, but also that such use benefited the estate. Where the speculative benefit is

21  not quantifiable, the mere potential benefit does not qualify as a benefit for purposes of

22  determining administrative expense priority status."); *In re Lazar*, 207 B.R. 668, 674–75 (Bankr.

23  C.D. Cal. 1997) ("Absent any better evidence of postpetition leakage, the court finds this evidence

24  too speculative to provide a basis for an award of administrative expenses."); *In re CIS Corp.*, 142

25  B.R. 640, 644 (S.D.N.Y. 1992) ("This speculative benefit is not quantifiable, and a mere potential

26

27

28

benefit does not qualify as a benefit for the purposes of determining administrative expense status.").

39.     While it is questionable whether the administrative expenses sought can even be allowed in chapter 9, the SCE Claims present no realizable and quantifiable benefit to the bankruptcy estate given that WCE is liquidating and no longer services the very customers that SCE took back from SCE, and SCE has failed to present any evidence of a quantifiable benefit provided to the WCE or its creditors.  Accordingly, there simply is no basis for SCE to claim administrative expenses.

### 3.    SCE Claims 19, 20, and 21 Lack Sufficient Evidence to Establish their Validity

40.     SCE Claims 19, 20, and 21 lack sufficient documentation to establish the validity of such claims, and the documentary evidence provided for SCE Claim 21 in particular does not support the claim asserted therein.  "A proof of claim that lacks the documentation required by Rule 3001(c) does not qualify for the evidentiary benefit of Rule 3001(f). . . ." *In re Heath*, 331 B.R. 424, 426 (B.A.P. 9th Cir. 2005).  A claim that fails to provide documentation in support of such claim cannot serve as prima facie evidence of the validity and amount of the claim.  *Id.*

41.     SCE Claim 19—a claim in excess of $2.4 million—does not contain any evidence in support of such claim.  *See* Strabo Declaration, Exhibit 2.  As such, SCE has failed to establish any basis for such claim.  Accordingly, SCE has failed to provide evidence as to the validity and amount of the claim, and such claim should be disallowed.

42.     SCE Claim 20—a claim for $107,306.68 for "CCA Services"—only provides a copy of a CCA service agreement and is devoid of any other support.  In fact, section 5 of the CCA service agreement attached to SCE Claim 20 provides that "SCE will bill and the CCA agrees to pay SCE for all services and products provided by SCE."  Strabo Declaration, Exhibit 3 at 11.

However, SCE attached no bills, receipts, accounting or any similar evidence to provide a sufficient basis for its $107,306.68 claim.  This is particularly relevant given the fact that WCE ceased being a CCA in the early part of June 2021, and SCE Claim 20 asserts fees for the month of June.

43.    SCE Claim 21—a claim in excess of $14.5 million—also does not contain sufficient documentation to establish the validity of such claim.  Pursuant to the language of the CCA Agreement, SCE was, among other things, required to provide written notice and a demand to WCE for Re-Entry Fees. *See* Strabo Declaration, Exhibit 4 at 79 ("SCE will issue a written demand to WCE for payment of the Re-Entry Fees in conformance with [Section X of Rule 23 Community Choice Aggregation]").  The CCA Agreement requires SCE to "file a Tier 1 Advice Letter to notify the Commission."  Strabo Declaration, Exhibit 4 at 64.  Further, SCE must serve notice and a "demand to the CCA for payment of the Re-Entry Fees . . . no later than sixty (60) days after the start of the Involuntary Return of CCA customers to utility procurement service."  *Id.* at 66.  However, SCE has failed to attach any evidence of such notice having been provided to WCE, presumably because serving such postpetition notice and demand on WCE would violate the automatic stay. *See*, *e.g.*, *In re Del Mission Ltd.*, 998 F.2d 756, 758 (9th Cir. 1993) ("[The Employment Development Department] and the Board violated the automatic stay by demanding unauthorized payments.").

44.    Rather, by submitting its Tier 1 advice letter to the California Public Utilities Commission, SCE is attempting to have the CPUC adjudicate its claim in violation of the automatic stay.  *See* Strabo Declaration, Exhibit 4 at 75-80.  SCE cannot have CPUC adjudicate its claim outside of the jurisdiction of the Bankruptcy Court because any action to do so is a clear violation of the automatic stay.  Moreover, SCE filing its proofs of claim with the Court amounts

to SCE's submission to the Court's jurisdiction for purposes of determining the validity and amounts of its claims. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 310 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 CV 2392 AKH, 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011) ("It is well settled that by filing a proof of claim, a creditor submits to the bankruptcy court's equitable jurisdiction regarding adjudication of matters related to that claim, including avoidance actions." (citing *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990))); *Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 418 (Bankr.S.D.N.Y.2004) ("[W]hen [plaintiffs] filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of this court, especially with respect to the very subject matter of their claims.").

45.    Section 362 of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *See* 11 U.S.C. §§ 362(a)(3), (6). Section 362 is made applicable in chapter 9 cases by section 901. 11 U.S.C. 901(a) ("Section[] . . . 362 . . . of this title appl[ies] in a case under this chapter."). Thus, SCE has not and cannot comply with the CCA Agreement and its claim must therefore be disallowed in its entirety.

## CONCLUSION

46.    For the reasons set forth above, Barclays respectfully requests that the Court enter the Proposed Order (a) granting the Objection; (b) disallowing any setoff rights asserted in the SCE Claims; (c) disallowing any administrative expense claims asserted in the SCE Claims; (d) disallowing and expunging SCE Claims 19 through 21 in their entirety; and (e) granting Barclays such other and further relief as may be appropriate under the circumstances.

18

## **RESERVATION OF RIGHTS**

47.     Barclays expressly reserves all rights and/or remedies, including without limitation, to supplement this Objection and/or to file further objections to claims of SCE on any additional grounds not referenced herein.

Dated:   November 30, 2021                    Respectfully submitted,

By: */s/ Joel Moss*
Joel Moss (SBN 241853)
Daniel H.R. Laguardia (SBN 314654)
**SHEARMAN & STERLING LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:     (415) 616-1100
Facsimile:     (415) 616-1199
Email:         joel.moss@shearman.com
               daniel.laguardia@shearman.com

*- and -*

Jason D. Strabo (SBN 246426)
Kristin K. Going (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3218
Telephone:     (310) 788-4125
Facsimile:     (310) 277-4730
Email:         jstrabo@mwe.com
               kgoing@mwe.com

*Counsel for Barclays Bank PLC*

19