**Exhibit 4**

**SCE Claim 21**

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 2 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 1

**Fill in this information to identify the case:**

Debtor 1    Western Community Energy

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   6:21-bk-12821-SY

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

**1. Who is the current creditor?**

Southern California Edison Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Munger, Tolles & Olson LLP <br> Name | See Addendum. <br> Name |
| 350 South Grand Avenue <br> Number    Street | <br> Number    Street |
| Los Angeles        CA      90071 <br> City        State        ZIP Code | <br> City        State        ZIP Code |
| Contact phone  213-683-9554 | Contact phone |
| Contact email  seth.goldman@mto.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
                                                                                        MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 3 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 2
of 91

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____14,568,891.88 . **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Addendum.

**9. Is all or part of the claim secured?**

☑ No
☐ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____
Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☐ No
☑ Yes. Identify the property: See Addendum _____

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 4 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 3 of 91

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/30/2021
                   MM / DD / YYYY

/s/ Bradley Schneider (original on following page)
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Bradley | Robert | Schneider |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel | | |
| Company | Munger, Tolles & Olson LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 350 South Grand Avenue | | |
| | Number    Street | | |
| | Los Angeles | CA | 90071 |
| | City | State | ZIP Code |
| Contact phone | 213-683-9237 | Email | bradley.schneider@mto.com |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 5 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 4
of 91

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/30/2021
                   MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Bradley | Robert | Schneider |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel | | |
| Company | Munger, Tolles & Olson LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 350 South Grand Avenue | | |
| | Number        Street | | |
| | Los Angeles | CA | 90071 |
| | City | State | ZIP Code |
| Contact phone | 213-683-9237 | Email bradley.schneider@mto.com | |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 6 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 5
of 91

## ADDENDUM TO PROOF OF CLAIM

### In re Western Community Energy,
### Case No. 6:21-bk-12821-SY

This addendum is attached to and a part of the proof of claim (the "Proof of Claim") filed by Southern California Edison Company ("SCE") (the "Claimant") against Western Community Energy Company (the "Debtor" and, with SCE, the "Parties").

**1.      Basis for Proof of Claim and Asserted Amount**

On June 10, 2021, WCE submitted a written notice of deregistration as a Community Choice Aggregator ("CCA") with the California Public Utility Commission ("CPUC"). The Debtor's notice of deregistration served as advanced written notice of the Debtor's mass involuntary return of its CCA customers to SCE's procurement service.

On June 11, 2021, SCE entered into a Load Transfer Agreement with the Debtor and the California Independent System Operator ("CAISO") whereby SCE assumed Scheduling Coordination of the Debtor's load on June 15, 2021. The Debtor's customer service accounts that were mass involuntarily returned to SCE totaled 113,337 and were switched to SCE's Bundled Portfolio Service effective on June 15, 2021.

Under California law, SCE is entitled to recover re-entry fees ("Re-Entry Fees") from the Debtor to cover the incremental procurement and administration caused its mass involuntary return of customers to SCE's procurement service. See Cal. Pub. Util. Code § 394.25(e); California Public Utility Commission, *Decision Establishing Reentry Fees and Financial Security Requirements for Community Choice Aggregators*, D.18-05-022 (June 7, 2018) and Resolution E-5059 (Oct 8, 2020), authorizing changes to SCE's Rule 23 to implement § 394.25(e) and D.18-05-022.

Pursuant to Section X of its Rule 23 Community Choice Aggregation Tariff ("Rule 23 Tariff"), SCE has calculated the total Re-Entry Fees owed by the Debtor as $14,715,892. A true and correct copy of SCE's current Rule 23 Tariff is attached hereto as Exhibit 1. The Debtor posted the financial security requirement ("FSR") of $147,000 in the form of a letter of credit. After drawing on the FSR posting, SCE is owed $14,568,892 in Re-Entry Fees.

On July 12, 2021, SCE submitted a Tier 1 Advice Letter to the CPUC providing notice of the mass involuntary return of the Debtor's customers to SCE's procurement service and setting forth SCE's calculation of Re-Entry Fees. A true and correct copy of SCE's Tier 1 Advice Letter is attached hereto as Exhibit 2.

The Debtor may direct SCE to set off its claim for Re-Entry Fees against customer payments that SCE collects and remits to the Debtor. *See* Rule 23 Tariff § W.4.f. To the extent the Debtor so consents, SCE's claim for Re-Entry Fee is secured by a right of setoff.

Finally, SCE asserts an administrative claim for Re-Entry Fees as an administrative expense.

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 7 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 6
of 91

2.      **Reservations of Rights**

The filing of this Proof of Claim is not and shall not be deemed or construed as: (i) a waiver or release of Claimant's rights against any other entity or person liable for all or any part of the Proof of Claim asserted herein; (ii) a consent by Claimant to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant; (iii) a waiver or release of Claimant's right to mediate or arbitrate any dispute, as applicable, including the amount or nature of the Proof of Claim; (iv) a waiver or release of Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution; (v) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (vi) a waiver or release of Claimant's right to have any and all final orders entered only after de novo review by a United States District Court Judge; (vii) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto, or other proceeding which may be commenced in this case against or otherwise involving Claimant; (viii) a waiver or release or limitation of Claimant's right to setoff or recoupment; or (ix) a waiver of Claimant's right to assert any additional claims that may be entitled to administrative priority under sections 503 and 507 of the Bankruptcy Code.

3.      **Amendments**

Claimant reserves the right to amend and/or supplement this Proof of Claim at any time, in any manner, including, but not limited to, fixing the amount of the claims described above that are or may become due to Claimant, and/or to file additional proofs of claim for any additional claim which may be based on the same or additional documents or grounds of liability.

4.      **Notices**

All notices relating to this Proof of Claim should be sent as follows:

> Southern California Edison Company
> Attn:  Samantha Nicely
> 6060 N. Irwindale Ave.
> Suite J
> Irwindale, CA 91702
>
> With a copy to:
>
> Seth Goldman
> Bradley R. Schneider
> Munger, Tolles & Olson LLP
> 350 South Grand Avenue, 50th Floor
> Los Angeles, CA 90071

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 8 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 7
of 91

All payments should be sent to:

Southern California Edison Company
Attn:  Samantha Nicely
6060 N. Irwindale Ave.
Suite J
Irwindale, CA 91702

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 9 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 8
of 91

**EXHIBIT 1**

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 10 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 9
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | |
|---|---|---|
| Southern California Edison | Revised | Cal. PUC Sheet No.   70466-E |
| Rosemead, California   (U 338-E) | Cancelling   Revised | Cal. PUC Sheet No.   67459-E |

Rule 23                                                              Sheet 1
COMMUNITY CHOICE AGGREGATION

TABLE OF CONTENTS

    A. CUSTOMER SERVICE ELECTIONS

    B. GENERAL TERMS

    C. CUSTOMER INQUIRIES AND DATA ACCESSIBILITY

    D. BASIC CCA SERVICE

    E. CCA SPECIALIZED SERVICE REQUESTS, INCLUDING PHASE-IN

    F. CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT

    G. CCA SERVICE CUSTOMER ELIGIBILITY

    H. CCA CUSTOMER NOTIFICATION PROCESSES

    I. CCA CUSTOMER OPT-OUT PROCESSES

    J. CCA SERVICE MASS ENROLLMENT PROCESSES

    K. CUSTOMER RELOCATION PROCESSES FOLLOWING MASS ENROLLMENT

    L. CCA CUSTOMERS SWITCHING RULES

    M. CCA SERVICE REQUESTS (CCASR) AFTER MASS ENROLLMENT

    N. METERING SERVICES

    O. BOUNDARY METERING SPECIAL REQUESTS

    P. BILLING SERVICE OBLIGATIONS

    Q. PAYMENT AND COLLECTION TERMS

    R. LATE OR PARTIAL PAYMENTS AND UNPAID BILLS

    S. VOLUNTARY CCA SERVICE TERMINATION

    T. INVOLUNTARY SERVICE CHANGES

    U. SERVICE DISCONNECTIONS AND RECONNECTIONS

    V. CREDIT REQUIREMENTS

    W. CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS                    (N)

    X. CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE
       REQUIREMENTS                                                          (N)

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice   4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 1C12 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 11 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 10
of 91

EDISON
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 55566-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. | 47476-E |

Rule 23                                           Sheet 2        (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

Community Choice Aggregation Service (CCA Service) permits cities, counties, a city and county, or    (N)
any group of cities and counties, as defined by PU Code Section 331.1  whose governing board(s)    |
have elected to do so, or have elected to form a joint powers agency to do so, or the Kings River    |
Conservation District, the Sonoma County Water Agency, or any California public agency possessing    |
statutory authority to generate and deliver electricity at retail within its designated jurisdiction provided    |
the cities and counties within, or contiguous to, its jurisdiction have by resolution requested the agency    |
to do so, to aggregate the electric loads of SCE end-use customers within their service areas for the    |
purposes of acquiring and providing their electric power needs.  These entities are hereinafter referred    (N)
to as Community Choice Aggregators (CCA), to provide electric services to SCE end-use customers
located within their service area(s) as set forth in California Public Utilities (PU) Code Section 366.2
and other Commission directives.  Customers that have not elected to opt-out of CCA Service or at the    (N)
customer's election shall have their electric power procured by the CCA.    (N)

The following terms and conditions apply to both SCE customers and CCAs who participate in CCA
Service and are not meant to include all requirements that may otherwise be mandated to comply with
state laws, the PU Code, Federal Energy Regulatory Commission (FERC) Rules, and California
Independent System Operator (CAISO) Rules applicable to CCAs and CCA Service.  CCA Service
shall refer to the electric service provided by a CCA to any group of end-use electric customers located
within the service area of the CCA who have not elected to opt-out from such service and receive
electricity procurement and other related services from the CCA.

A.    CUSTOMER SERVICE ELECTIONS

    1.    SCE Bundled Services

        This service preserves traditional utility electric services, under which SCE performs all
        electric energy services for the end-use customer including metering, billing, collection,
        and customer services. Customers not receiving service under CCA Service or Direct
        Access Service shall receive service under SCE Bundled Services.

    2.    Non-SCE Energy Services

        a.    Community Choice Aggregation Service (CCA Service)

            This service permits cities, counties, a city and county, or any group of cities,
            counties, or cities and counties, as defined by PU Code Section 331.1, whose
            governing boards have elected to do so, to aggregate the electric load of SCE
            end-use customers within their service areas for the purposes of acquiring and
            providing their electric power needs.  These entities are CCAs.  Customers that
            have not elected to opt-out of CCA Service or at the customer's election shall
            have their electric power procured by the CCA.

        b.    Direct Access

            This service election allows customers to purchase electric power and, at the
            customer's election, additional energy services from non-SCE entities known as
            Electric Service Providers (ESPs).  Direct Access service is governed by Rule    (T)
            22.  Direct Access customers are eligible for CCA Service participation pursuant
            to the provisions set forth in Section G of this Rule.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3113-E | Megan Scott-Kakures | Date Filed    Oct 7, 2014 |
| Decision | Vice President | Effective    Oct 1, 2015 |
| 2C20 | | Resolution    E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 12 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 11
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.    55567-E |
| Rosemead, California    (U 338-E) | Cancelling | Original | Cal. PUC Sheet No.    40025-E |

---

<u>Rule 23</u>                                      Sheet 3      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS

1.    Definitions

The definitions of principal terms used in this Rule are found either herein or in Rule 1, Definitions.  Unless otherwise stated, all references to "customer" in this Rule will refer to SCE customers that have service accounts within a CCA's service area. Unless otherwise stated, all references to "service account" shall refer to individual customer meters.  Unless otherwise stated, all references to "utility" shall refer to SCE.  Unless other stated all references to "CCA Service Customer" shall refer to "CCA Customer" as defined in Rule 1.  The descriptive section headings of this Rule have been inserted for convenience of reference only and shall in no way define, modify or restrict any of the terms and provisions thereof.

2.    General Obligations of SCE

a.    Non-Discrimination

SCE shall discharge its responsibilities under this Rule in a fully cooperative, fair and non-discriminatory manner as to providers of all commodities and services, which are subject to CCA and Direct Access Service.  Pursuant to D.05-12-041, fully cooperative is defined to mean SCE shall facilitate the CCA program and a CCA's efforts to implement it to the extent reasonable and in ways that do not compromise other SCE services.

b.    Requests for SCE Services

SCE shall process requests for similar SCE services, such as Community Choice Aggregation Service Requests (CCASRs), in the same manner and within the same period of time for all CCAs and their respective customers.

c.    Timeliness and Due Diligence

Consistent with State law and Commission decisions, SCE shall exercise due diligence in meeting its obligations and deadlines under this Rule so as to implement CCA Service as quickly as possible.

d.    Transmission and Distribution Service

Subject to the terms and conditions of the CCA Service Agreement (Form 14-768), applicable SCE tariffs, applicable FERC rules and CCA's and customer's compliance with their terms and conditions, SCE shall provide transmission and distribution services under applicable tariffs and contracts for delivery of electric power to CCA customers.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3113-E | Megan Scott-Kakures | Date Filed    Oct 7, 2014 |
| Decision | Vice President | Effective    Oct 1, 2015 |
| 3C16 | | Resolution    E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 13 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 12
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 55568-E |
| Rosemead, California    (U 338-E) | Cancelling | Original | Cal. PUC Sheet No. | 40026-E |

---

<u>Rule 23</u>                                                  Sheet 4        (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS (Continued)

   3.    General Obligations of CCAs

      a.    Timeliness and Due Diligence

            CCAs shall exercise due diligence in meeting their obligations and deadlines under this Rule, applicable laws and Commission decisions.  CCAs shall make all payments owed to SCE under this Rule in a timely manner subject to applicable payment dispute provisions.

      b.    Arrangements with CCA Customers

            CCAs shall be solely responsible for having contractual or other arrangements with their customers necessary to implement CCA consistent with all applicable laws, Commission requirements and this Rule.  SCE shall not be responsible for monitoring, reviewing or enforcing such contracts or arrangements.

      c.    Scheduling Coordinator

            As a requirement of this Rule, CCAs providing electric power shall have one or more Scheduling Coordinators.  SCE shall not be responsible for enforcing requirements applicable to the performance of Scheduling Coordinators.

   4.    Transfer of Cost Obligations Between CCAs and Customers

         Nothing in this Rule is intended to prevent CCAs and customers from agreeing to reallocate between them any costs for CCA Services which are designated in this Rule to be paid by either of them.

   5.    Responsibility for Electric Purchases

         CCAs have exclusive responsibility for obtaining and providing the electric power needs (including ancillary services) of their CCA customers and to deliver such power to the necessary grid location required to serve electric power needs to those customers.

   6.    SCE Not Liable for CCA Services

         If a customer receives service from a CCA, SCE has no obligations to the customer with respect to the services provided by the CCA.  The customer must look to the CCA to carry out the responsibilities associated with that service.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice      3113-E | Megan Scott-Kakures | Date Filed    Oct 7, 2014 |
| Decision _____ | Vice President | Effective    Oct 1, 2015 |
| 4C16 | | Resolution    E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 14 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 13
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 55569-E |
|---|---|---|---|---|
| Rosemead, California    (U 338-E) | Cancelling | Original | Cal. PUC Sheet No. | 40027-E |

<u>Rule 23</u>                                      Sheet 5        (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS (Continued)

7.    CCA Not Liable for SCE Services

To the extent the customer receives service from SCE, a CCA has no obligations to the customer with respect to the services provided by SCE. The customer must look to SCE to carry out the responsibilities associated with that service.

8.    Load Aggregation for Procuring Electric Power

CCAs may aggregate individually metered electric loads located within the service area of the CCA only for the purpose of procuring electric power and ancillary services. Load aggregation shall not be used to determine SCE charges or tariff applicability. The right of customers to physically aggregate by combining multiple accounts into a single metered account as permitted under Commission-approved tariffs is not restricted by this section.

9.    Split Loads Not Allowed

Customers participating in CCA may not partition the electric loads of an individual service account among electric service options or providers. The entire load of an individual service account must receive service under only one electric service option or provider.

10.    Residential Customers

All residential customers, as defined in Rule 1, located within a CCA's service area shall be offered CCA Service.

11.    Interval Metering

Interval metering shall refer to a meter device capable of recording the minimum data required for (a) hourly data required for the CCA Service settlement process; and (b) data required to bill SCE distribution tariffs.

12.    Statistical Load Profiles

SCE shall provide statistical load profiles, in place of Interval Metering, to permit SCE or CCA to compute the bills for all CCA customers who have service accounts where interval metering data is not provided to the CCA. Statistical load profiles shall be applied as authorized by the Commission.

13    Master Metered Customers

Individual master metered customers who provide sub-metered tenant billings, may participate in CCA Service as a single account. A master metered customer may not partition the electric loads of a single master meter among several electric service options or providers. The entire load of a single master meter must receive service under one electric service option and provider.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    3113-E | Megan Scott-Kakures | Date Filed | Oct 7, 2014 |
| Decision | Vice President | Effective | Oct 1, 2015 |
| 5C16 | | Resolution | E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 15 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 14
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | | Revised | Cal. PUC Sheet No. | 55570-E |
| Rosemead, California | (U 338-E) | Cancelling | Original | Cal. PUC Sheet No. | 40028-E |

|  | Rule 23 | Sheet 6 | (T) |
| | COMMUNITY CHOICE AGGREGATION | | |

(Continued)

B.    GENERAL TERMS (Continued)

14.    Service Fees and Other Charges

a.    SCE costs for services provided to a CCA or CCA Customer shall be charged to the CCA or customer as set forth in the appropriate SCE rate schedule.  SCE may charge service fees for CCA related services described in this Rule only for the incremental costs associated with providing these services and provided that service fees do not assess charges on CCAs for billing processes or customer services that are unrelated to services and customer billings associated with the CCA's CCA Service or are collected in other SCE rates, charges or fees.

b.    SCE Service charges approved by the Commission, which may include, but are not limited to, service establishment charges and special meter reading fees, which are contained within or authorized by other tariffs are not affected by this Rule.

c.    Service fees for CCA Services are described in Schedule CCA-SF and Schedule    (T)
CCA-INFO.    (T)

15.    Non-bypassable Obligations

As a condition of participating in CCA Service, CCA customers shall be responsible to pay all non-bypassable charges authorized by the Commission and which SCE may recover from customers in accordance with state law.    SCE shall continue to bill the customer for such charges.    Disputed charges shall be resolved pursuant to the provisions set forth in Rule 10.

16.    Franchise Fees And Other Charges

CCA Customers shall continue to be responsible to pay all applicable fees, surcharges and taxes as authorized by law.  SCE shall bill customers for franchise fees as set forth in PU Code Sections 6350 to 6354, and for fees as set forth in PU Code Sections 401 to 410.  The CCA and SCE shall each be responsible for calculating other fees, taxes, and surcharges for their respective services.

17.    Liability In Connection With CCA Services

a.    In this Section, "damages" shall include all losses, harm, costs, and detriment, both direct and consequential, suffered by the customer.

b.    SCE shall not be liable to the customer or CCA for any damages caused by SCE's conduct in compliance with, or as permitted by, SCE's electric rules and tariffs, the CCA Service Agreement and associated legal and regulatory requirements related to CCA Service.

c.    SCE shall not be liable to the customer for any damages caused to the customer by any failure by CCA to comply with SCE's tariffs, the CCA Service Agreement and associated legal and regulatory requirements related to CCA Service.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3113-E | Megan Scott-Kakures | Date Filed    Oct 7, 2014 |
| Decision | Vice President | Effective    Oct 1, 2015 |
| 6C17 | | Resolution    E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 16 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 15
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 65643-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55571-E |

<u>Rule 23</u>                                      Sheet 7
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS (Continued)

    17.    Liability In Connection With CCA Services (Continued)

        d.    The Commission shall have initial jurisdiction to interpret, add, delete or modify any provision of this Rule or the CCA Service Agreement, and to resolve disputes regarding SCE's performance of its obligations under SCE's tariffs, the CCA Service Agreement and requirements related to CCA Service, including any disputes regarding delays in the implementation of CCA.

        e.    SCE shall not be liable to the customer for any damages caused by CCA's failure to perform its obligations to the customer, including, but not limited to the obligation to provide electric supply services to the customer.  The CCA shall not be liable to the customer for any damages caused by SCE's failure to perform its obligations to the customer.

        f.    A CCA is not SCE's agent for any purpose.  SCE shall not be liable to the customer for any damages resulting from any acts, omissions, or representations made by CCA in connection with soliciting customers for CCA Service or performing any of its functions in rendering CCA Service.

        g.    SCE is not the CCA's agent for any purpose.  The CCA shall not be liable to the customer for any damages resulting from any acts, omissions, or representations made by SCE in connection with soliciting customers for CCA Service or performing any of its functions in rendering CCA Service.

    18.    CCA Implementation Plan

        A CCA shall develop an Implementation Plan, as defined in PU Code Section 366.2(c)(3).

    19.    Sixty (60) Day Period

        A Sixty (60) Day Period is a period of time equal to sixty (60) calendar days.  For purposes of this Rule, two billing cycles or two calendar months are also equal to 60 calendar days.

    20.    Automatic Enrollment

        Automatic Enrollment is the process whereby a CCA can automatically enroll an eligible SCE customer in CCA Service.  Customer participation in CCA Service may not require a positive written declaration, but all customers shall be informed of their right to opt-out of CCA Service.  If no negative declaration is made by the customer during the 60-day     (T) initial notification period or the 60-day follow-up notification period, the customer shall be served through the CCA's CCA Service.  Automatic Enrollment is the transfer of a customer's service account to CCA Service with no action taken by the customer to initiate the transfer.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    3923-E-A | R.O. Nichols | Date Submitted | May 21, 2019 |
| Decision | President | Effective | Jan 19, 2019 |
| 7C5 | | Resolution | |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 17 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 16 of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No. 63349-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. 62185-E |

<u>Rule 23</u>                                                Sheet 8
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS (Continued)

21.    CCA Customer Notification

CCA Customer Notification is the required CCA customer notification that informs customers of the CCA's CCA Service.  The CCA Customer Notification must inform customers that (a) they are to be automatically enrolled in CCA Service, (b) the terms and conditions of CCA Service, and (c) the customer has the right to opt-out of CCA Service.  The notification must also include a mechanism by which a potential customer may opt-out of CCA Service.  To qualify for Automatic Enrollment the CCA shall fully inform participating customers (1) once within the sixty (60) day period in advance of    (C) the date of Automatic Enrollment, (2) once within the thirty (30)-day period in advance    | of the date of Automatic Enrollment, and (3) at least twice during a 60-day period    (C) following enrollment in a CCA's Service.

22.    Opt-Out of Automatic Enrollment

The term "opt-out" or "opt out" is the customer's election not to be served under CCA Service and to continue to receive its existing service.  In order to exercise its right not to participate in CCA Service, a customer must request to "opt out" of CCA Service through the required action as prescribed in the CCA Notification.  A customer may exercise its opt-out right at any time during a 60-day notification period prior to Automatic Enrollment through the end of the second 60-day notification period subsequent to the Automatic Enrollment of a customer's account to CCA Service.  The terms and conditions of CCA service will be made available by the CCA.  This CCA-specific information will be provided to customers pursuant to P.U. Code Section 366.2(c)(15)(A-C) – either directly by the CCA or by SCE pursuant to the provisions set forth in Section H – and will enable customers to make an informed decision whether or not to opt-out of CCA service.  Customers receiving section 366.2(c)(15)(A-C) notices regarding a CCA with more than one planned CCA phase-in date will be provided the required 60-day notices based around the date their particular phase-in commences.

23.    Initial Notification Period

The Initial Notification Period is a period of time, lasting not less than sixty (60) days, leading up to the Automatic Enrollment date.

24.    Follow-up Notification Period

The Follow-up Notification Period is a sixty (60) day period of time commencing immediately following the date of Automatic Enrollment.

25.    CCA Cost Responsibility Surcharge (CCA-CRS)

As a condition of receiving CCA Service, CCA customer shall be responsible for paying a CCA Cost Responsibility Surcharge (CRS) as set forth in Schedule CCA-CRS.  The CCA CRS shall be identified separately, as part of SCE charges on the customer's monthly billing statement.

26.    CCA Service Request (CCASR)

CCA Service Request (CCASR) is the electronic communication required to enroll or add customers to CCA Service, remove customers from CCA Service, change service options, and maintain customer information.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 8C13 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 18 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 17
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 70467-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55573-E |

---

<u>Rule 23</u>                                                                Sheet 9
COMMUNITY CHOICE AGGREGATION

(Continued)

B.    GENERAL TERMS (Continued)

27.    CCA Phase-In

Pursuant to D.04-12-046, a CCA has the ability to offer service to some eligible customers before others.  This incremental enrollment process is defined as a Phase-In and shall be subject to the provisions set forth in Section E of this Rule.

28.    CCA Service

This service permits cities, counties, a city and county, or any group of cities, counties, or cities and counties, as defined by PU Code Section 331.1, whose governing boards have elected to do so, or have elected to form a joint powers agency to do so, or the Kings River Conservation District, the Sonoma County Water Agency, or any California public agency possessing statutory authority to generate and deliver electricity at retail within its designated jurisdiction provided the cities and counties within, or contiguous to, its jurisdiction have by resolution requested the agency to do so, to aggregate the electric load of SCE end-use customers within their service areas for the purposes of acquiring and providing their electric power needs.  These entities are CCAs.  Customers that have not elected to opt-out of CCA Service or at the customer's election shall have their electric power procured by the CCA.

29.    Involuntary Return                                                                (N)

For purposes of assessing Re-Entry fees, an involuntary return of a CCA customer to Bundled Service may occur due to any of the following:

a.    The CCA has filed to deregister or the Commission has revoked the CCA's registration,
b.    The CCA service under the Service Agreement becomes terminated,
c.    The CCA or its authorized CAISO Scheduling Coordinator (SC) has defaulted on its CAISO SC obligations, such that the CCA no longer has an appropriately authorized CAISO SC,
d.    A voluntary service termination pursuant to Section S of this Rule, or
e.    An involuntary service termination pursuant to Section T of this Rule, including the Commission issuing an order to terminate service either at SCE's request or by Commission initiation.

An Involuntary Return of a CCA customer does not include the following events:
a.    A customer's contract with an CCA has expired, or
b.    CCA discontinues service to a customer due to that customer's default under their service agreement with the CCA.                                                (N)

                                                                                (L)

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 9C13 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 19 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 18
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No. 70468-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. 55573-E |
| | | Original | 55574-E |

<u>Rule 23</u>                                    Sheet 10
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

B.    GENERAL TERMS (Continued)                                    (N)
                                                                   |
    30.    Financial Security Requirement (FSR)                    |
                                                                   |
        All new and existing CCAs are required to post and maintain financial security with    |
        SCE in the form and amount as set forth in Section W of this Rule.    (N)


C.    CUSTOMER INQUIRIES AND DATA ACCESSIBILITY                    (L)
                                                                   |
                                                                   |
    1.    Customer Inquiries                                       |
                                                                   |
        Customers contacting SCE requesting information on CCA Service shall be referred    |
        to the CCA for assistance. SCE shall provide the customer with the CCA's telephone    |
        number.                                                    |
                                                                   |
    2.    Customer Request To Initiate CCA Service                 |
                                                                   |
        Eligible customers contacting SCE requesting to initiate CCA Service from the CCA    |
        shall be processed by SCE.  SCE shall notify the CCA pursuant to the provisions set    |
        forth in this Rule.                                        (L)


    3.    Access to Customer Data

        a.    SCE shall provide customer-specific usage data pursuant to Schedule CCA-
              INFO.  SCE and CCA shall abide by the instructions of a customer as to the
              entities to whom access to the confidential customer information is provided.

        b.    When a customer is enrolled into CCA Service, the customer's account
              information will be sent to the CCA. Such information will include information
              such as metering information required for billing, settlement and other
              functions and twelve (12) months of historical usage data (if available).

        c.    A CCA has the option to request additional customer information pursuant to
              Schedule CCA-INFO.


(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 10C13 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 20 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 19
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   55575-E |
| Rosemead, California      (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   55694-E |

---

<u>Rule 23</u>                                                                 Sheet 11      (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

C.   CUSTOMER INQUIRIES AND DATA ACCESSIBILITY (Continued)

   4.   Customer Inquiries Concerning Billing-Related Issues

        Customer inquiries concerning SCE's charges and services shall be directed to SCE. Customer inquiries concerning the CCA's charges or services shall be directed to the CCA.

   5.   Customer Inquiries Related To Emergency Situations And Outages

        a.   SCE shall be responsible for responding to all inquiries related to distribution or transmission service, emergency system conditions, outages and safety situations.   Customers contacting the CCA with such inquiries shall be referred directly to SCE.

        b.   It may be necessary for SCE to shed or curtail customer load at the request of the CAISO, or as otherwise provided by Commission-approved tariffs. Nothing in this Rule or CCA Service shall change the criteria for load shedding established by the CAISO or Commission.

        c.   SCE shall continue to be responsible for implementing Commission-approved load curtailment and demand response programs, including providing notification to participating customers.

        d.   The CCA shall be responsible for notifying its Scheduling Coordinator of any notice issued to the CCA by SCE under this Section.

D.   BASIC COMMUNITY CHOICE AGGREGATION SERVICES

   1.   In accordance with Decision (D). 04-12-046 and D.05-12-041 , the processes set forth below describe basic services provided by SCE to develop, implement and support CCA Service:

        a.   A standard opt-out service as defined in Section I.

        b.   A mass enrollment process, defined in Section J, whereby all eligible customers who have not opted-out of CCA Service, shall be automatically enrolled in CCA Service on the customer's scheduled meter read date during a one month period, subject to phasing or the mutual agreement of SCE and CCA pursuant to the provisions set forth in Section E of this Rule.

        c.   On an ongoing basis, subsequent to the initial mass enrollment, SCE shall initiate the customer's enrollment or transfer to CCA service, as defined in Section K, when the customer contacts SCE to establish or relocate SCE service.

(Continued)

---

| | | |
|---|---|---|
| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice      3113-E | Megan Scott-Kakures | Date Filed   Oct 7, 2014 |
| Decision _____ | Vice President | Effective   Oct 1, 2015 |
| *11C23* | | Resolution   E-4730 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 21 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 20
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   55576-E |
| Rosemead, California   (U 338-E) | Cancelling | Original | Cal. PUC Sheet No.   40033-E |

---

Rule 23                                                      Sheet 12      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

E.    CCA SPECIALIZED SERVICE REQUESTS, INCLUDING PHASE-IN

1.    A CCA electing not to utilize the basic processes described above may request specialized services from SCE at a cost to the CCA as set forth below.  Specialized Services include any request for services that do not conform to SCE's basic CCA services and processes in Section D.  Specialized Services may include, but are not limited to CCA Phase-In, special reporting or other unique services.

a.    A CCA interested in submitting a request for Specialized Services shall be responsible for funding an analysis of the impacts to SCE normal operations and a study to determine the estimate of costs for which the CCA shall be responsible to pay.

b.    A CCA requesting Specialized Services shall be responsible for executing a Specialized Services Agreement between the CCA and SCE.

c.    SCE shall consider requests for Specialized Services on a case by case basis, provided that implementation can be accomplished without compromising SCE's customer service obligations, reliability or operational flexibility of SCE's systems.

d.    The estimate of the costs for which the CCA shall be responsible, shall be provided to the CCA and shall be based upon time and materials costs and fees set forth in the appropriate SCE rate schedule.  The estimate of costs shall include any cost savings that may occur as a result of the specialized service.

e.    The CCA shall be responsible for all actual costs associated with Specialized Services, including but not limited to the development of the estimate of costs, the implementation of the Specialized Service and all applicable ongoing maintenance costs.

f.    The costs associated with the initial implementation of any Specialized Services shall be paid in advance by the CCA before work is commenced.

g.    The CCA and SCE shall agree to a mutually acceptable implementation schedule.  The implementation schedule shall take into consideration and provide priority to required SCE system work, which may include work related to mandated regulatory changes, customer service obligations, computer system integrity testing and maintenance.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3113-E | Megan Scott-Kakures | Date Filed    Oct 7, 2014 |
| Decision | Vice President | Effective    Oct 1, 2015 |
| 12C17 | | Resolution    E-4730 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 22 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 21
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63350-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55577-E |

Rule 23                                    Sheet 13
COMMUNITY CHOICE AGGREGATION

(Continued)

E.    CCA SPECIALIZED SERVICE REQUESTS, INCLUDING PHASE-IN (Continued)

h.    Pursuant to D.04-12-046, a CCA may choose to phase-in CCA Service to customers.  To assist CCA's with their phase-in plans, SCE has developed an optional standard phase-in service, more fully described in Schedule CCA-SF, which requires minimal system changes to minimize the CCA's phase-in costs.  A CCA, however, has the option to propose its own phase-in plan as a Specialized Services request.   Regardless whether a CCA chooses the standard phase-in service or proposes its own phase-in criteria, SCE will work cooperatively with CCAs to phase-in groups of customers in a manner that minimizes SCE and CCA costs.  CCA phase-in service shall be subject to the provisions set forth in Schedule CCA-SF and this section.

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT

1.    CCA Implementation Plan and CCA Registration With The Commission

a.    Pursuant to D.05-12-041, and Resolution E-4907, at the request of either the    (N)(D)
CCA or SCE, the parties must "meet and confer" as soon as reasonably practical to address areas of concern or dispute with the CCA's implementation plans or the CCA's ability to comply with SCE's tariffs. Such a request shall be presented in writing with a recitation of disputed items or areas of concern.

If the first attempts at resolution are not successful, the CCA and SCE (the parties) shall meet in person. Should the parties be unable to reach consensus after the in-person meeting(s), either party may request that Energy Division assist by sponsoring a moderated in-person discussion between the parties. Such a request should come in the form of a request to the Director of Energy Division explaining the general nature of any unresolved issues regarding CCA compliance with utility tariffs. During the "meet and confer" parties shall discuss the contents of the CCA's Implementation Plan and any relevant issues with compliance with SCE tariffs. The "meet and confer" process shall implicate no approvals, either formal or informal, from the Commission.

(N)
(D)
(L)

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision | Senior Vice President | Effective | Mar 24, 2018 |
| 13C14 | | Resolution | E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 23 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 22
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Original | Cal. PUC Sheet No. | 63351-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55577-E |

<u>Rule 23</u>                                                          Sheet 14
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)      (L)
                                                                             |
   1.    CCA Implementation Plan and CCA Registration With The Commission (Continued)   |
                                                                             | (C)
       b.    Pursuant to D.05-12-041 and Resolution E-4907, for CCAs who have not   | |
            submitted implementation plans to the Energy Division by December 8, 2017,   | |
            the CCAs and SCE shall adhere to the following timeline and procedures for   | (C)
            submitting and certifying receipt of the Implementation Plan, notice to   |
            customers, notice to CCAs of the appropriate CRS, and registration of CCAs.   (L)

          (1)  On or before January 1 of Year 1[i] (DAY 1), the prospective or expanding   (N)(D)
               CCA submits its Implementation Plan to Energy Division and serves it on   |
               the R.03-10-003 Service List, on the R.16-02-007 Service List, and on the   |
               R.17-09-020 Service List, or successor proceedings.   |

          (2)  Within 10 days of DAY 1, the Commission shall notify the Utility servicing   |
               the customers that are proposed for aggregation that an implementation   |
               plan initiating their CCA program has been filed.   |

          (3)  Within 60 days of DAY 1, the CCA provides a draft customer notice to the   |
               Commission's Public Advisor.   |

               Within 15 days of receipt of the draft notice, the Public Advisor shall   |
               finalize that notice and send it to the CCA.   |

          (4)  Within 90 days of DAY 1[ii],   |

             (a)  The Commission shall send a letter confirming that it has received the   |
                  Implementation Plan and certify that the CCA has satisfied the   |
                  requirements of an Implementation Plan pursuant to Section 366.2(c)   |
                  (3). This letter shall inform the CCA about the cost recovery   |
                  mechanism as required by P.U. Code Section 366.2(c)(7).   |

                  If and when the Commission requests additional information from a   |
                  CCA, the CCA shall respond to CPUC staff within 10 days, or notify   |
                  the staff of a date when the information will be available.   (N)

---

[i] Except for 2018, where implementation plans may be submitted by March 1, 2018.
[ii] For 2018, Energy Division will certify plans by April 13, 2018 if received by March 1, 2018 as long as the plans are reasonably complete and meet all requirements.

(Continued)

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|---|
| Advice | 3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision | | Senior Vice President | Effective | Mar 24, 2018 |
| 14C16 | | | Resolution | E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 24 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 23
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 70469-E |
| Rosemead, California | (U 338-E) | Cancelling Original | Cal. PUC Sheet No. | 63352-E |

---

Rule 23                                           Sheet 15
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

    1.    CCA Implementation Plan and CCA Registration With The Commission (Continued)
       b.    (4)  Within 90 days of DAY 1 (Continued)

          (b)  The Commission shall provide the CCA with its findings regarding any cost recovery that must be paid by customers of the CCA in order to prevent cost shifting. (P.U. Code Section 366.2 (c) (7).)

          (c)  At the request of either SCE or the CCA, the CCA and SCE shall Meet-and-Confer regarding the CCA's ability to conform its operations to the SCE's tariff requirements. The request shall be presented in writing with a recitation of disputed items or areas of concern. This process shall implicate no approvals, either informal or formal, from the Commission.

       (5)  Within 90 days of DAY 1[i], the CCA shall submit its registration packet to the Commission including:

         (a) Signed service agreement with SCE, and

         (b)  Pursuant to Resolution E-4907, D.18-05-022, and Resolution E-5059, confirmation that the CCA has posted financial security with SCE in the form and amount set forth in Section W of this Rule.    (C) | | (C)

       (6)  Within 90 days to 120 days of DAY 1[ii], if the registration packet is complete, the Commission shall confirm registration as a CCA to the CCA and SCE:

       (7)  The CCA shall comply with the Resource Adequacy deadlines set forth in Section F.4.g, below.

       (8)  Prospective CCA Customers subject to Automatic Enrollment into CCA Service, as described in Section B.20, shall be notified by the CCA as set forth in Section H, below.

       (9)  January 1, Year 2, the CCA may begin service.

---

[i] For 2018, the bond and signed service agreement must be submitted to the Energy Division by April 20, 2018.
[ii] For 2018, the Commission will confirm registration by April 27, 2018.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
| Advice   4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision  18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| *15C12* | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 25 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 24
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

Southern California Edison                                    Revised      Cal. PUC Sheet No.   64431-E
Rosemead, California      (U 338-E)        Cancelling   Original     Cal. PUC Sheet No.   63353-E

---

Rule 23                                    Sheet 16
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

(D)
2.    The CCA shall provide to SCE the Commission's certification of (1) CCA registration,   (L)
and (2) the amount of cost recovery that must be paid by its customers.                        |
                                                                                               |
3.    The earliest possible date a CCA may implement CCA Service shall be the date the          |
CCA has fulfilled all requirements in the applicable tariffs, including service                |
establishment requirements set forth in this Rule, or the date the CCA and SCE agree           |
is reasonable, whichever is later, unless stated otherwise in a Commission order or in          |
a letter from the Commission's Executive Director.  In advance of providing service to          |
the first CCA in SCE's service territory, SCE shall require six (6) months from the date        |
the first CCA files its Implementation Plan with the Commission or a mutually agreed            |
upon date between SCE and the CCA.                                                              (L)

(Continued)

---

(To be inserted by utility)              Issued by              (To be inserted by Cal. PUC)
Advice    3846-E                        Caroline Choi           Date Submitted   Aug 16, 2018
Decision                             Senior Vice President      Effective        Sep 15, 2018
16C10                                                          Resolution

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 26 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 25
of 91

EDISON
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 64432-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 63354-E |

<u>Rule 23</u>                                      Sheet 17
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

(L)

4.    CCA Service Establishment

Prior to providing CCA Services within SCE's service territory, the CCA must comply with the following requirements:

a.    CCAs must submit an executed CCA Service Agreement in the form attached hereto.

b.    The CCA remains fully responsible for its subcontractors, agents, and Scheduling Coordinators performing CCA related services on behalf of the CCA.

c.    The CCA must satisfy SCE credit-worthiness requirements set forth in Section V, Credit Requirements.

d.    The CCA must satisfy applicable Electronic Data Exchange requirements, including:

(1)    Completion of all necessary electronic interfaces for the CCA and SCE to communicate for CCASRs, billing, collections, general communications and communication of meter reading and usage data from SCE.

(2)    Have the capability to exchange data with SCE via the Internet.

(3)    Successful completion of all standard SCE technical testing and must have the capability to communicate using Electronic Data Interchange (EDI), Internet, or an electronic format acceptable to SCE and enter into appropriate agreements related thereto.  EDI testing may commence between CCA and SCE at any time prior to CCA service commencing and both SCE and CCA will make best efforts to complete EDI testing expeditiously.

e.    No outstanding charges related to Specialized Services defined in Section E.

f.    Confirmation that the CCA is registered with the Commission and that the CCA has filed an Implementation Plan with the Commission.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    3846-E | Caroline Choi | Date Submitted | Aug 16, 2018 |
| Decision | Senior Vice President | Effective | Sep 15, 2018 |
| 17C10 | | Resolution | |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 27 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 26
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Original | Cal. PUC Sheet No. | 63355-E |
|---|---|---|---|---|
| Rosemead, California   (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. | 55578-E |

Rule 23                                    Sheet 18
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

    4.    CCA Service Establishment (Continued)

        g.    Pursuant to Resolution E-4907, unless the CCA has received a waiver from the     (N)
Commission as described in Section F.4.g.(4), below, a CCA must comply with
the Resource Adequacy requirement deadlines set forth in Appendix A and
Appendix B of Resolution E-4907 and outlined below:

            (1)    April, Year 1, in accordance with P.U. Code Section 380, the CCA shall
submit its year-ahead Resource Adequacy forecast.

            (2)    August, Year 1, the CCA shall submit its updated year-ahead Resource
Adequacy forecast.

            (3)    October, Year 1 (75 days before service commences), the CCA shall submit
its monthly load migration forecast for the Resource Adequacy program, filed
about 75 days prior to the compliance month.     (N)

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision    | Senior Vice President | Effective | Mar 24, 2018 |
| 18C17 | | Resolution | E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 28 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 27
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

Southern California Edison                                    Revised    Cal. PUC Sheet No.   70470-E
Rosemead, California        (U 338-E)          Cancelling  Original   Cal. PUC Sheet No.   63356-E

---

Rule 23                                                        Sheet 19
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

   4.    CCA Service Establishment (Continued)

      g.  (4).  Any new or expanding CCA may request a waiver from the above timelines in order to begin service prior to the deadlines in January 1, 2019.  To request a waiver either:

         i..   The CCA and SCE shall jointly submit a Tier 1 Advice Letter no later than 75 days prior to the Resource Adequacy compliance month in which the CCA wishes to begin service. This Advice Letter shall provide notification that the utility and CCA mutually agree (via payment, allocation of Resource Adequacy or a combination thereof) that they have addressed Resource Adequacy requirements and cost responsibility concerns raised by the intra-year load migration for 2018. Notification of agreements must include what categories of RA for what periods are being satisfied; or,

         ii.   If no agreement is reached, the CCA shall file a Tier 1 Advice Letter no later than 75 days prior to the Resource Adequacy compliance month in which the CCA wishes to begin service.  This Advice Letter shall provide notification that the SCE and the CCA are unable to reach agreement to address the RA requirements and cost responsibility concerns raised by the intra-year load migration for 2018, and shall state that the CCA agrees to be bound by a future Commission determination in the Resource Adequacy Proceeding (R.17-09-020) regarding cost responsibility for intra-year load migration, subject to appellate rights under the Commission's Rules. The CCA then shall file a motion in the Resource Adequacy Proceeding seeking such a determination within 60 days of the submittal of the Advice Letter. Submittal of this Advice Letter allows the CCA to begin service 75 days later and shifts the Resource Adequacy responsibility from the utility to the CCA.

      h.   The CCA must post and maintain financial security with SCE in the form and       (N)
           amount in accordance with Section W of this Rule. Failure of the CCA to provide    |
           SCE with financial security within sixty (60) days of the effective date of the  FSR   |
           advice letter described in Section W of this Rule and/or issuance of Resolution   |
           E-5059, as applicable, may be grounds for the CCA's involuntary service          |
           suspension by the Commission.                                                    (N)

(Continued)

---

(To be inserted by utility)          Issued by            (To be inserted by Cal. PUC)
Advice     4394-E                  Carla Peterman        Date Submitted   Jan 15, 2021
Decision   18-05-022               Senior Vice President  Effective        Jan 15, 2021
19C12                                                    Resolution       E-5059

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 29 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 28
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63357-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55579-E |

Rule 23                                    Sheet 20    (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

F.    CCA IMPLEMENTATION PLAN AND CCA SERVICE ESTABLISHMENT (Continued)

5.    Adding/Deleting A Municipality To An Existing CCA

This section is applicable to CCAs participating in a joint powers agency (JPA) pursuant to Chapter 5 (commencing with Section 6500) of Division 7 of Title 1 of the Government Code pursuant to PU Code Section 331.1.b.  The CCA shall comply with each of the following:

a.    Before SCE will process requests associated with a city or county joining or leaving an existing CCA, the CCA must execute a Specialized Services Agreement between the CCA and SCE pursuant to the applicable provisions set forth in Section E of this Rule.

b.    Before SCE will process requests associated with an existing CCA adding a city and/or county to its membership, the CCA must update or renew all requirements as specified in Sections F.1, F.2, F.3 and F.4 above.

G.    CCA SERVICE CUSTOMER ELIGIBILITY

A CCA must offer to provide electric power to all residential customers located within its service area and pursuant to D.04-12-046, the CCA has the option to provide CCA Service to non-residential customers located within its service area.  Pursuant to D.05-12-041, all customers, including active Direct Access customers, located within a CCA's service area that have been offered service by the CCA that do not affirmatively decline such service (opt-out), shall be served by the CCA.  SCE shall not be responsible or liable in any way for any costs, fees, or penalties associated with a customer's Automatic Enrollment in CCA Service.

1.    Customers with a SCE commodity contract term obligating them to remain on SCE's Bundled Service, including Bundled Portfolio Service (BPS), shall be included in the CCA's Automatic Enrollment process and are subject to a CCA Cost Responsibility Surcharge as set forth in Schedule CCA-CRS.  Customer inquiries concerning SCE contract term requirements will be referred to SCE.

2.    Customers taking service under Net Energy Metering (NEM) Rate Schedules, shall be included in the CCA's Automatic Enrollment process and are subject to the provisions set forth in SCE's NEM Rate Schedules which may preclude NEM eligibility or may require special metering prior to the switch to CCA service, as defined in Section J.

3.    Customers currently under Direct Access service shall be included in the CCA's Automatic Enrollment process and are subject to a CCA Cost Responsibility Surcharge as set forth in Schedule CCA-CRS.  SCE may require Direct Access customers with meters that do not conform to SCE's metering standards and are incompatible with current SCE metering reading systems to be replaced with a compatible meter prior to the switch to CCA service, as defined in Section M.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 20C18 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 30 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 29
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63358-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 55580-E |

<u>Rule 23</u>                                                        Sheet 21      (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

H.   CCA CUSTOMER NOTIFICATION PROCESSES

    1.   CCA Customer Notifications

        A CCA must provide required CCA Customer Notifications to participating customers eligible to receive Automatic Enrollment into CCA Service during the Initial Notification Period and Follow-up Notification Period.  The CCA shall be solely responsible for all obligations associated with CCA Customer Notifications and performing those obligations consistent with the requirements set forth in Public Utilities (PU) Code Section 366.2, the CCA's Implementation Plan, Commission requirements and all applicable Commission orders.   SCE shall not be responsible for monitoring, reviewing or enforcing such obligations.

        All notifications must include the necessary customer data and instructions that will allow customers to gain access to and complete the opt-out service described in Section I.

    2.   SCE CCA Customer Notification Services

        a.   A CCA may request SCE to provide the required CCA Customer Notifications on behalf of the CCA with adequate advance notice as set forth in Schedule CCA-SF.  Customized CCA Customer Notification mailing services may be provided to CCAs only upon agreement with SCE.

        b.   A CCA requesting to include its required customer notifications in SCE's billing envelope is subject to the provisions set forth in Schedule CCA-SF. The information in CCA customer notifications included in SCE's billing envelope shall be limited to that required by PU Code Section 366.2(c)(13)(A).

        c.   CCA is responsible to ensure mailing instructions provided to SCE comply with the communication plan set forth in the CCA's Implementation Plan, rules and applicable laws.

        d.   The standard CCA Customer Notification mailing(s), when provided by SCE, shall be staggered based on the customers' billing cycles.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed   Feb 22, 2018 |
| Decision _____ | Senior Vice President | Effective   Mar 24, 2018 |
| *21C16* | | Resolution   E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 31 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 30
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63359-E |
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 57091-E |

---

<u>Rule 23</u>                                        Sheet 22      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

H.    CCA CUSTOMER NOTIFICATION PROCESSES (Continued)

    3.    The following additional provisions apply to CCA Customer Notifications:

        a.    The CCA and SCE must mutually agree on the date before the CCA's Customer Notification process can begin.

        b.    CCA Customer Notifications may be sent concurrently with SCE's billing cycles.

        c.    Neither CCAs nor SCE shall use the other party's logo on CCA Customer Notifications or other materials absent express written consent to do so. Neither party shall express nor imply that the other party is affiliated with, is a sponsor of, or endorses their services or other programs.

        d.    If a CCA's Automatic Enrollment process is suspended by the CCA, the Commission or any other State agency, the CCA shall be responsible for all SCE costs, including, but not limited to, customer communications associated with the suspension.

I.    CCA CUSTOMER OPT-OUT PROCESSES

Pursuant to PU.Code § 366.2(c)(13)(A)(i), CCA-issued Customer Notifications required for automatic enrollments into the CCA program shall include the opportunity for customers to opt-out of CCA Service and continue to receive their existing service. Pursuant to PU Code § 366.2(c)(13)(C), the opt out may take the form of a self-addressed return postcard indicating the customer's election to remain with, or return to, electrical energy service provided by the electrical corporation, or another straightforward means by which the customer may elect to derive electrical energy service through the electrical corporation providing service in the area. The CCA may elect to administer the opt-out process, which shall include the distribution of the requisite customer notifications and the receipt of customer opt-out requests through options of its choosing.  Alternatively, pursuant to PU Code § 366.2 (c)(13)(B), a CCA may request that the Commission approve and order SCE to provide the Customer Notifications required in Subparagraph (A). If the CCA makes this request and the Commission approves it, the CCA shall use SCE's opt-out process as set forth below.

    1.    SCE shall provide an opt-out process to be used by all CCAs.  If such request is made, SCE shall offer at least two (2) of the following options as a part of its opt-out process:

        a.    Reply letter or postcard (postage paid) enclosed in CCA Customer Notifications
        b.    Automated phone service
        c.    Internet service
        d.    Customer Call Center contact

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice      3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision _____ | Senior Vice President | Effective    Mar 24, 2018 |
| 22C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 32 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 31
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | | | Revised | Cal. PUC Sheet No. | 63360-E |
|---|---|---|---|---|---|---|
| Rosemead, California | (U 338-E) | | Cancelling | Revised | Cal. PUC Sheet No. | 57092-E |

<u>Rule 23</u>                                             Sheet 23      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

I.    CCA CUSTOMER OPT-OUT PROCESSES (Continued)

2.    Customers eligible for Automatic Enrollment in CCA Service must be notified twice during the Initial Notification period. If SCE is aware that a customer or group of customers has not received the required notifications, SCE shall immediately inform the CCA. If the CCA is aware that a customer or group of customers has not received the required notifications the CCA shall immediately inform SCE to remove the customer from Automatic Enrollment.

3.    A customer opting out of CCA Service during the Initial Notification Period shall be removed from the Automatic Enrollment process.

4.    Pursuant to D.05-12-041, every customer in the CCA's Automatic Enrollment that does not opt-out of CCA service shall be served by the CCA, including customers with commodity contracts, Direct Access customers and customers whose CCA Customer Notifications are returned unopened.

5.    A customer opting out of CCA Service during the Follow-up Notification Period and after enrollment in CCA Service shall be returned to its previous service, without penalty, on the customer's next scheduled meter read date, consistent with CCASR processing timing as defined in Section M.  These customers shall be returned to Bundled Portfolio Service subject to the terms in Section L of this Rule, and are not subject to Transitional Bundled Service as defined in Schedule PC-TBS.

(Continued)

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|---|
| Advice | 3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision | | Senior Vice President | Effective | Mar 24, 2018 |
| 23C16 | | | Resolution | E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 33 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 32
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63361-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. | 57093-E |

---

<u>Rule 23</u>                                    Sheet 24     (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

I.    CCA CUSTOMER OPT-OUT PROCESSES (Continued)

6.    If a CCA that has elected to use SCE's opt-out process pursuant to subsection 1 receives a customer request to opt out, the CCA should inform SCE of such opt-out requests in a fashion that is mutually agreeable to SCE and the CCA so that SCE can update its records.

7.    SCE shall provide notice to the customer when the customer's opt-out request has been processed only if the CCA and SCE agree that the SCE shall provide such notice.

8.    After the conclusion of the Initial Notification Period, in advance of the date of commencing Automatic Enrollment and prior to the customer's enrollment in CCA Service, either SCE or the CCA, depending on whether the CCA has elected to use SCE's opt-out processing services or administer its own opt-out process, may continue to accept customer opt-out requests and SCE and the CCA may make best efforts to process such requests before the customer's account switches to CCA Service.  Opt-out requests that cannot be processed before the account switches shall be processed following the CCASR processing timing to return the customer's account to its previous service, as defined in this Rule.

9.    After the customer's account has switched to CCA Service, either SCE or the CCA, as appropriate, shall notify the other party of customer Opt-out requests using the CCASR process as defined in Section M.

10.    Customers making a positive election to CCA Service are not eligible for opt-out privileges and will return to Bundled Service under the provisions of Section L of this Rule.

11.    If a CCA elects to use a postcard or reply letter for the opt-out mechanism, the reply letter or postcard opt-out service must include a customer specific utility identifier preprinted on the reply letter/card if SCE makes such identifier available to the CCA.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 24C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 34 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 33
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63362-E |
| Rosemead, California | (U 338-E) | Cancelling Original | Cal. PUC Sheet No. | 57132-E |

---

<u>Rule 23</u>                                                      Sheet 25    (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

J.    CCA SERVICE MASS ENROLLMENT PROCESSES

SCE shall provide a Mass Enrollment process whereby all eligible CCA customers that have not opted out of CCA Service shall be automatically enrolled in CCA Service on the customers' regular scheduled meter read dates over a one (1) billing month period, subject to phasing.

1.    In advance of implementing the Mass Enrollment process, SCE must be in receipt of the CCA's confirmation, indicating the CCA has fulfilled its Initial Notification requirements.  SCE has no responsibility for verifying that the CCA has complied with its notification requirements.

2.    Within fifteen (15) days after conclusion of the Initial Notification Period, SCE shall provide to the CCA one (1) update of its customer enrollments, providing individual customer information and energy usage data for those customers scheduled for mass enrollment.  The update shall exclude all customer information for which SCE has processed opt-out requests.  A CCA has the option to request additional customer information pursuant to Schedule CCA-INFO.

3.    The mass enrollment shall commence at a time not less than thirty (30) days and not more than forty-five (45) days after the conclusion of the Initial Notification Period, unless another date is mutually agreed to by the CCA and SCE, and shall be processed over a one billing month period by billing cycle unless the CCA and SCE have agreed to specialized services for CCA enrollment or Phase-in services as defined in this Rule.

4.    For each account in the mass enrollment, SCE shall switch the customer's account on its scheduled meter reading date, providing confirmation to the CCA.

5.    Following the Mass Enrollment, SCE shall provide the CCA with an update to its customer enrollments, providing individual customer information and energy usage data, and the switch dates for those customers that were actually enrolled in the CCA's CCA Service.

6.    Effective beginning on the date of the transfer, the CCA is solely responsible for providing the electric power needs of its customers.

7.    Customer opt-out requests processed after the account has switched to CCA Service shall be returned to the previous service by the initiation of a CCASR and under the CCASR process timing, as defined in Section M.

8.    The CCA shall update its records within three (3) working days from the date of receiving a customer's opt-out notification from SCE to remove the opt-out customer from CCA Service and eliminate future communications from the CCA, concerning a customer's option to opt-out of the CCA Program, as defined in Section H of this Rule from the CCA.

9.    Except as otherwise provided for in Rule 23, no special metering shall be necessary or permitted during the mass enrollment process.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 25C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 35 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 34
of 91

**EDISON**
An EDISON INTERNATIONAL Company

Southern California Edison                        Revised      Cal. PUC Sheet No.    63363-E
Rosemead, California      (U 338-E)        Cancelling  Revised   Cal. PUC Sheet No.   57094-E*

---

Rule 23                                          Sheet 26      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

K.    CUSTOMER RELOCATION PROCESSES FOLLOWING MASS ENROLLMENT

The following sections apply to customers establishing electric service, relocating existing service, and discontinuing electric service within a CCA's service area. Except as otherwise exempted by this Rule, Commission decision or by law, customers establishing or relocating electric service within a CCA's service area shall be served under CCA Service unless the customer submits a request to the CCA to opt-out and the CCA provides notification to SCE of any such opt-out request.  If an existing customer moves the location of their electric service within the jurisdiction of the CCA, the customer shall retain the same electric commodity service provider as prior to the move, unless the customer affirmatively changes the customer's electric commodity service provider. If an existing DA customer moves the location of their electric service within the jurisdiction of the CCA, the DA customer must submit a DA relocation request and obtain SCE's approval of that request in order to remain on DA service and not be defaulted to CCA service upon relocation.

1.    The following section shall apply when CCA customers are contacting SCE to relocate or discontinue their electric service account within a CCA's service area:

a.    In addition to its normal business requirements related to the customer's request, SCE shall also process the changes for CCA Service and advise the customer it will place a CCA Service request to the CCA for the customer's account changes related to CCA Service.  SCE shall not use this customer contact opportunity to encourage the customer to return to Bundled Service.

b.    SCE shall notify the CCA of the customer's relocation or discontinuance of CCA Service by submitting the appropriate CCASRs as defined in this Rule.

c.    SCE shall be responsible for processing customer request(s) and the CCA is solely responsible for the customer's electric power supply needs consistent with the service date as indicated on the CCASR(s).

2.    The following section shall apply to customers establishing electric service within a CCA's service area.  Customers establishing electric service within a CCA service area shall be automatically enrolled in CCA Service at the time their electric service becomes active unless the customer submits a request to the CCA to opt-out and the CCA provides notification to SCE of any such opt-out request.

a.    In addition to its normal SCE business requirements related to the customer's request, SCE shall process the customer enrollment for CCA Service.

(Continued)

---

(To be inserted by utility)            Issued by            (To be inserted by Cal. PUC)
Advice      3749-E                    Caroline Choi          Date Filed    Feb 22, 2018
Decision  _____            Senior Vice President       Effective     Mar 24, 2018
26C16                                                        Resolution    E-4907

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 36 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 35
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63364-E |
| Rosemead, California    (U 338-E) | Cancelling | Original | Cal. PUC Sheet No. | 57095-E* |

---

<u>Rule 23</u>                                                        Sheet 27      (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

K.    CUSTOMER RELOCATION PROCESSES FOLLOWING MASS ENROLLMENT (Continued)

2.    (Continued)

b.    When processing a new electric service request within a CCA service territory, and the CCA has elected to administer its own opt-out process, SCE shall advise the customer that its account is to be automatically enrolled in CCA Service being offered by the CCA, that SCE will place a CCA Service request to the CCA and as applicable, the terms and conditions for the customer to return to Bundled Service. When the CCA has elected to use SCE's opt-out processing services, SCE will, only when prompted by the customer, process an opt-out at the time of turn-on. In either situation SCE shall not use this customer contact opportunity to encourage the customer to return to Bundled Service.

c.    SCE shall notify the CCA of the customer's enrollment by submitting the appropriate CCASRs as defined in this Rule.

d.    SCE shall be responsible for processing the customer request(s) and the CCA is solely responsible for providing the customer's electric power supply needs consistent with the service date as indicated on the CCASR(s).

e.    All CCA customer enrollments defined in this section shall be considered Automatic Enrollments and customers shall be permitted to opt-out in accordance with Section I. The CCA shall be solely responsible for all obligations consistent with the requirements set forth in PU Code 366.2. Customers shall be referred to the CCA for the information related to the CCA's customer notifications and other CCA terms and conditions of CCA Service.

3.    When processing a new electric service request or an electric service relocation within a CCA service territory, and the CCA has elected to administer its own opt-out process, SCE shall advise the customer that its account is to be automatically enrolled in CCA Service being offered by the CCA, that SCE will place a CCA Service request to the CCA. When the CCA has elected to use SCE's opt-out processing services, SCE will, only when prompted by the customer, process an opt-out at the time of turn-on. In either situation SCE shall not use this customer contact opportunity to encourage the customer to return to Bundled Service

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision    _____ | Senior Vice President | Effective    Mar 24, 2018 |
| 27C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 37 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 36
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.  70471-E |
| Rosemead, California        (U 338-E) | | Cancelling  Revised | Cal. PUC Sheet No.  67460-E |

---

<u>Rule 23</u>                                                    Sheet 28
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

L.    CCA CUSTOMERS SWITCHING RULES

1.    Positive Elections

Customers that have made a positive election to participate in CCA Service requesting to return to Bundled Service must provide a six (6) month advance notice and are subject to the terms and conditions of a Bundled Portfolio Service (BPS) as set forth below.

2.    Customers Automatically Enrolled in CCA Service Returning to Bundled Service after the Follow-up Notification Period.

Former Bundled Service Customers that have been Automatically Enrolled in CCA Service returning to Bundled Service after the Follow-up Notification Period must provide SCE with a six (6)-month advance notice and are subject to the terms and conditions of Bundled Portfolio Service (BPS) as set forth below.

In an Involuntary Return, CCA customers will be returned to BPS and are subject to    (N)
the terms and conditions of BPS as set forth below in this Special Condition.    (N)

3.    DA Customers Switching to CCA Service

DA Customers that are not Automatically Enrolled in CCA Service or opted out from CCA Service may request to Switch to CCA Service directly without having to return to Bundled Service. For any DA customer requesting to Switch to CCA Service, the DA Customers must submit a CCASR to enroll into CCA Service to request for a switch directly from DA Service to CCA Service on the same date.

4.    CCA Customers Switching to DA Service

CCA Customers may request to switch to DA Service directly without having to return to Bundled Service. These customers are subject to the requirements of SCE Rules 22 and 22.1.

If these CCA Customers fail to meet the DASR requirement timely, SCE shall cancel the approved six-month advance notice to switch to DA, and these Customers will continue on CCA Service.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice        4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| *28C13* | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 38 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 37
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   67461-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   63366-E |

Rule 23                                                    Sheet 29
COMMUNITY CHOICE AGGREGATION

(Continued)

L.    CCA CUSTOMERS SWITCHING RULES (Continued)                              (C)

5.    Bundled Portfolio Service                                              (T)

Bundled Portfolio Service is applicable to CCA customers who return to Bundled Service for a minimum of 12 months.  This 12-month minimum Bundled Service commitment shall be referred to herein as Bundled Portfolio Service (BPS).  The following conditions shall apply:

a.    Customers receiving this service make a 12-month minimum commitment to SCE and shall not be allowed to return to CCA Service or Direct Access (DA) Service until their 12-month minimum period has been completed.  The 12-month minimum period shall begin on the date the customer is switched to BPS after the conclusion of the six-month advance notice period as set forth in this Section L.3.b.  In the event a customer receives service under TBS during the six-month advance notice period, the time served under TBS shall apply toward the 12-month minimum commitment with SCE. No premature departures from the 12-month commitment shall be allowed.

b.    Customers must provide a six-month advance notice to SCE prior to becoming eligible for BPS so SCE can adjust its procurement activity to accommodate the additional load.  Such notification will be made by the customer submitting a Six-Month Advance Notice to Return to Bundled Portfolio Service (from Community Choice Aggregation Service) [Form 14-955]. The six-month advance notice for customers returning from CCA Service may be transmitted by an alternate method of notification as may be mutually agreed upon by SCE and the CCA.  SCE shall provide those customers who have provided advance notice with written confirmation and necessary switching process information within 10 business days of receipt of the customer's notification.  Once received by SCE, customers will have a three business-day rescission period after which advance notifications cannot be cancelled.  SCE shall process requests to BPS in the following manner:

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice      4013-E | Kevin Payne | Date Submitted    Jun 14, 2019 |
| Decision    19-05-043 | Chief Executive Officer | Effective          Jul 14, 2019 |
| *29C13* | | Resolution |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 39 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 38
of 91

EDISON
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   67462-E |
| Rosemead, California        (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   63367-E |

Rule 23                                                     Sheet 30
COMMUNITY CHOICE AGGREGATION

(Continued)

L.    CCA CUSTOMERS SWITCHING RULES (Continued)                              (C)

  5.      Bundled Portfolio Service (Continued)

    b.    (Continued)                                                        (T)

        (1)    Account transfers to BPS shall be switched on the customer's next
               scheduled meter read date after the completion of the six-month
               advance notice period.

        (2)    SCE shall initiate a CCASR, to transfer the account to BPS and shall
               provide notification to the customer and CCA in accordance with
               Section M.

    c.    During the six-month advance notice period before customers become eligible for
          BPS, customers may either continue on CCA Service or return to SCE and receive
          Transitional Bundled Service (TBS) commodity pricing terms as set forth in Schedule
          PC-TBS and be subject to the provisions and applicable charges of the CCA Cost
          Responsibility Surcharge as set forth in Schedule CCA-CRS.  After receiving a Six-
          Month Advance Notice to Return to Bundled Portfolio Service (Form 14-955) or an
          alternate means of transmitting the six-month advance notification, as may be
          mutually agreed upon by SCE and the CCA, SCE shall process any CCASR returning
          the customer to Bundled Service during the six-month advance notice period in
          accordance with Section M and shall provide service to the customer at the TBS rate
          for the remainder, if any, of the six-month advance notice period. SCE shall initiate
          the necessary transfer of the account to BPS at the conclusion of the six month
          advance notice period with notification to the customer. Customers returning to
          bundled service during the six-month advance notice period (i.e., before the
          commencement of BPS) cannot return to CCA Service or DA Service until their 12-
          month minimum commitment with SCE has expired.

    d.    Customers returning from CCA Service after the Follow-up Notification period has
          expired are subject to a re-entry fee as set forth in Schedule CCA-SF.

(Continued)

| | | |
|---|---|---|
| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice      4013-E | Kevin Payne | Date Submitted   Jun 14, 2019 |
| Decision    19-05-043 | Chief Executive Officer | Effective   Jul 14, 2019 |
| 30C13 | | Resolution |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 40 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 39
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

Southern California Edison                          Revised    Cal. PUC Sheet No.    67463-E
Rosemead, California        (U 338-E)    Cancelling Revised    Cal. PUC Sheet No.    63368-E

---

Rule 23                                    Sheet 31
COMMUNITY CHOICE AGGREGATION

(Continued)

L.    CCA CUSTOMERS SWITCHING RULES (Continued)                                    (C)

6.    End of Bundled Portfolio Service
                                                                                   (T)

At the end of the customer's initial 12-month commitment, customers will have the
option of switching to CCA Service, DA Service, or remaining on BPS based on the
then current applicable rules in effect.  SCE will provide the customer with a courtesy
reminder eight months before the expiration of the customer's 12-month minimum
commitment term.  This timeframe will allow for the six-month notification period and
will provide a 60-day period for the customer to notify SCE of its intent to return to
CCA Service or transfer to DA Service.  If for any reason the customer is not sent, or
does not receive, a courtesy reminder from SCE, the customer is not relieved of its
responsibility for providing SCE the notice required in this Section L.4.a., below.

a.    Customers electing to return to CCA Service at the conclusion of the 12-
month commitment period shall provide advance, written notice using Form
14-954, Six-Month Advance Notice to Transfer to Community Choice
Aggregation Service to SCE. Such notice, or its alternative, shall be
transmitted at least six months prior to the conclusion of the 12-month
minimum commitment term. SCE shall provide to the customer a written
confirmation and necessary switching process information within 10 business
days of the customer's notification, including the final date to be in receipt of a
CCASR to return to CCA Service. The customer is responsible for providing
its CCA with this information.

(1)    The customer's CCA shall submit a CCASR to ensure the necessary
switch to CCA Service under the CCASR rules, as set forth in Section
M., occurs on the service account's next scheduled meter read date
after the completion of the six-month advance notice period.

(2)    If SCE is not in receipt of a CCASR by the end of the customer's
12-month commitment, the customer's request to return to CCA
Service shall be cancelled.

b.    Customers seeking to transfer to DA Service are subject to the requirements
of SCE Rules 22 and 22.1

c.    Customers electing to remain on BPS are not required to take any action.

(Continued)

---

(To be inserted by utility)                Issued by            (To be inserted by Cal. PUC)
Advice    4013-E                          Kevin Payne          Date Submitted    Jun 14, 2019
Decision    19-05-043                Chief Executive Officer    Effective        Jul 14, 2019
31C12                                                           Resolution

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 41 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 40
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   63369-E |
| Rosemead, California   (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   57100-E |

<u>Rule 23</u>                                                          Sheet 32   (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

M.   CCA SERVICE REQUESTS (CCASR) AFTER MASS ENROLLMENT

1.   CCASRs, in the form specified by SCE, must be submitted electronically by the CCA unless an alternate means of submittal has been mutually agreed to by SCE and the CCA.   The CCASR process described herein is used for various changes to a customer's choice of services and service providers, such as customer CCA elections, customer-initiated returns to SCE Bundled Service, CCA-initiated customer returns to SCE Bundled Service, and maintaining customer information.   CCAs must execute the CCA Service Agreement and successfully complete all CCA Service establishment requirements set forth in this Rule before submitting CCASRs.

2.   SCE shall begin accepting CCASRs from the CCA for service accounts on a mutually agreed upon date with SCE, but no earlier than the start of the CCA's Mass Enrollment process.

3.   A separate CCASR must be submitted for each service account.   Upon request by a CCA, SCE shall provide timely updates on the status of the CCASR processing to the submitting CCA and customer.

4.   CCASRs must identify SCE account information, as determined by SCE, of the customer participating in Community Choice Aggregation.   A CCASR that does not contain this information shall be considered materially incomplete.

5.   CCASR forms shall be available through electronic means (e.g., SCE's website).

6.   SCE shall provide an acknowledgment of its receipt of the CCASR to the CCA within two (2) working days of its receipt.   SCE shall provide to the CCA, within three (3) working days, a CCASR status notification informing them as to whether the CCASR has been accepted, rejected or deemed pending for further information.   If accepted, the switch date determined in accordance with paragraphs 11 or 12 of this section shall be sent to the CCA.   If a CCASR is rejected, SCE shall provide the reason for the rejection.   If a CCASR is held pending further information, it shall be rejected if the CCASR is not completed within eleven (11) working days following the status notification.

7.   In accordance with the provisions of Rule 3, SCE has the right to deny the CCA's request for service for a particular customer if the information provided by the customer is false, incomplete, or inaccurate in any material respect.

8.   If a submitted CCASR complies with the CCASR requirements, the CCASR shall be accepted and scheduled for CCA implementation.

(Continued)

| | | | |
|---|---|---|---|
| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
| Advice   3749-E | Caroline Choi | Date Filed   Feb 22, 2018 | |
| Decision _____ | Senior Vice President | Effective   Mar 24, 2018 | |
| 32C16 | | Resolution   E-4907 | |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 42 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 41
of 91

EDISON
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   63370-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   57101-E |

---

<u>Rule 23</u>                                              Sheet 33      (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

M.    CCA SERVICE REQUESTS (CCASR) AFTER MASS ENROLLMENT (Continued)

9.    CCASRs shall be handled on a first-come, first-served basis.  Each request shall be time-stamped by SCE.

10.    If more than one enrollment CCASR is received for a service account within a single CCASR processing period, only the first valid CCASR received shall be processed in that period.  All subsequent CCASRs shall be rejected.

11.    Accepted CCASRs that do not require a meter change and that are received by SCE a minimum of five (5) days before the customer's next scheduled meter reading date shall be switched over on the next scheduled meter reading date for that service account.

12.    If an accepted CCASR requires a meter change (i.e., the existing meter is incompatible with SCE's meter reading system), SCE shall install a new meter and switch the account over to CCA on the date of installation.  SCE shall endeavor to complete the meter change request within fifteen (15) days after acceptance of the CCASR in the absence of a meter installation backlog or other circumstances beyond SCE's control such as, but not limited to, delays in the installation of a communication line to the meter.  SCE may require Direct Access customers with meters that are incompatible with SCE's systems to be replaced with a compatible meter prior to the acceptance of a CCASR.  SCE shall provide notice of any current meter service backlog or the next available installation date.  Such metering services are subject to fees in accordance with Schedule CC-DSF.

13.    In the event the Commission or the CAISO governing board declares an emergency and institutes a moratorium of SCE processing of CCA requests, SCE shall comply with such moratoriums and inform CCAs or customers of the details of emergency plans.

14.    SCE, CCA and customer, on mutual agreement, may agree to a different service change date for the service changes requested in a CCASR.

15.    A CCASR is submitted pursuant to the terms and conditions of the CCA Service Agreement and this Rule and shall also be used to define the CCA Services that the CCA is providing the customer.

16.    CCASR's submitted for customers returning to SCE Bundled Service will follow the same process and timing as CCASRs to establish CCA Service. CCAs shall be responsible for the continued provision of the customer's electric power needs until the service change date.  Customers returning to SCE Bundled Service shall be subject to the terms and conditions as set forth in Section L.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 33C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 43 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 42
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No. 63371-E |
| Rosemead, California    (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. 57102-E |

---

<u>Rule 23</u>                                                            Sheet 34    (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

M.    CCA SERVICE REQUESTS (CCASR) AFTER MASS ENROLLMENT (Continued)

17.    SCE shall assess a service fee for CCASRs for adding or removing customers from CCA Service.  This service fee shall be billed to the CCA unless the customer is requesting to return to SCE service after the Follow-up Notification Period whereupon the customer's re-entry service fee shall be billed to the customer.

18.    SCE shall not hold the CCA responsible for any unpaid customer billing charges that the customer incurred prior to the customer's switch to CCA.  Unpaid billing charges shall not delay the processing of CCASRs and shall remain the customer's responsibility to pay SCE.  SCE shall follow current Commission credit rules in the event of customer non-payment, which includes the disconnection of service.

19.    CCA must submit CCASRs only for customer accounts within its service area and for customers that meet the eligibility requirements set forth in Section G.

20.    Any CCASR not meeting the above requirements shall be rejected, the affected customer shall be notified, and the applicable CCASR fee shall be charged to the CCA.

21.    If a customer cancels an agreement, a CCASR shall not be submitted for that customer.  If a CCASR has already been submitted, the submitting party shall, within two (2) business days, direct SCE to cancel the CCASR.

22.    CCA's shall offer service to all residential customers and shall not return residential customers involuntarily to Bundled Service, except in the event of non-payment of CCA charges by the customer, as set forth in Section U.2.

(Continued)

---

| | | |
|---|---|---|
| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| *34C16* | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 44 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 43
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63372-E |
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 57103-E |

---

<u>Rule 23</u>                                                      Sheet 35        (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

N.    METERING SERVICES

1.    Meter Services

Meter services are comprised of three primary functions, Meter Ownership, Meter Services (Installation, maintenance, and testing) and Meter Data Management Agent (MDMA) Services.  SCE shall perform all Metering Services for a CCA's customers.

SCE, as the Meter Service provider, shall ensure all of its meters and associated metering services are in conformance with its metering standards and Commission approved rules governing such services.

a.    Meter Conformity

Customers who had previously purchased or leased an interval meter acceptable to SCE as a condition of receiving DA service, may own or lease interval meters used for billing purposes for CCA Service, but shall continue to be responsible for the obligations of a meter owner under Rule 22 Section G.

If the customer has a non-conforming meter, or elects to have the meter replaced, SCE reserves the right to extend its normal installation period due to meter and installation personnel availability.  Under these circumstances, SCE shall apprise the customer and CCA of the specific reasons for the delay and the anticipated schedule for installation.

b.    MDMA Services

SCE shall perform all Meter Data and Management Agent (MDMA) services required for CCA Service in accordance with its Commission approved tariffs. MDMA obligations include but are not limited to the following:

(1)    Meter data for CCA customers shall be read, validated, edited, and transferred to the MDMA server pursuant to SCE's standards.

(2)    Both SCE and CCA shall have access to the MDMA server.

(3)    SCE shall provide the CCA's (or their designated agents) reasonable and timely access to meter data as required to allow the proper performance of billing, settlement, scheduling, forecasting and other functions.

c.    Charges for Metering Services

SCE may charge the customer or the CCA for the provision of metering services only to the extent such charges are authorized by the Commission. If the installation of metering services is at the customer's expense, the customer's authorization is required.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 35C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 45 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 44
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63373-E |
| Rosemead, California   (U 338-E) | Cancelling   Revised | Cal. PUC Sheet No. | 57104-E |

---

<u>Rule 23</u>                                    Sheet 36   (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

O.   BOUNDARY METERING SPECIAL REQUESTS

In accordance with PU Code Section 366.2, at the request and expense of any CCA SCE shall install, maintain and calibrate metering devices at mutually agreeable locations within or adjacent to the CCA's service area.  SCE shall read the metering devices and provide the data collected to the CCA at the CCA's expense.  All costs incurred by SCE as a result of providing this specialized service, hereinafter referred to as Boundary Metering shall be the sole responsibility of the requesting CCA.

1.   SCE shall consider and evaluate requests for Boundary Metering on a case-by-case basis, provided that implementation can be accomplished without compromising the safety, reliability or operational flexibility of SCE's electrical facilities.  Any CCA interested in submitting a request for Boundary Metering shall be responsible for funding an analysis of the electric system impacts and a study to determine the estimated costs associated with Boundary Metering.  The CCA shall be provided with an estimate of costs for which it shall be responsible to pay.

2.   A CCA requesting Boundary Metering installation shall be responsible for executing a Specialized Service agreement or contract established pursuant to Rule 2 establishing the terms and conditions for installation and maintenance of the special facilities.

3.   The CCA shall be responsible for all actual costs associated with Boundary Metering services, including but not limited to the development of the estimate of costs, the implementation of Boundary Metering and all ongoing operating and maintenance costs.

4.   All costs associated with the deployment of Boundary Metering for a CCA shall be paid in advance by the CCA before work commences.

5.   A CCA terminating Boundary Metering services with SCE shall be responsible for all costs related to the restoration of SCE's facilities, which may include, but are not limited to, removal of meters.

6.   As applicable, Boundary Metering costs shall be included as a part of SCE's credit requirements set forth in Section V.

7.   The CCA and SCE shall agree to a mutually acceptable Boundary Metering installation schedule.  The installation schedule shall take into consideration and provide priority to required SCE metering work which may include work related to mandated regulatory changes, customer installations and testing, emergency service orders and routine testing and maintenance.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
| Advice   3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision | Senior Vice President | Effective | Mar 24, 2018 |
| 36C16 | | Resolution | E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 46 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 45
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | | Revised | Cal. PUC Sheet No. | 63374-E |
|---|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. | 57105-E |

---

Rule 23                                                          Sheet 37        (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

P.   BILLING SERVICE OBLIGATIONS

SCE shall perform the billing services for the CCA.   SCE shall use SCE's Consolidated Billing process described below.

1.   Introduction

This section establishes SCE and CCA obligations for billing information and legal and safety notices.

a.   Description

A CCA shall send its customer billing information to SCE.  SCE shall in turn send a consolidated bill, containing both SCE and CCA charges, to the customer.

b.   SCE Obligations

(1)   SCE shall calculate SCE charges and send the bill either by mail or electronic means to the customer.  SCE shall include CCA charges on the bill.  SCE is not responsible for computing or determining the accuracy of the CCA charges on the bill.

(2)   SCE bill shall include a summary of the CCA charges and may provide any billing-related details of CCA charges, including the CCA's telephone number.  The CCA bill may be printed with the SCE bill, or electronically transmitted exactly as provided by the CCA.

(3)   SCE shall process customer payments and transfer amounts paid toward CCA charges to the CCA when the payments are received pursuant to the provisions set forth in Section R., Late or Partial Payments and Unpaid Bills.

c.   CCA Obligations

(1)   The CCA shall offer SCE consolidated billing services to the CCA customers it serves.

(2)   In accordance with subsection d., below, the CCA shall submit the necessary billing information to facilitate billing services according to SCE's billing schedule and by service account.

(3)   The CCA shall provide SCE with a summary of CCA charges by electronic transmittal.  The CCA may provide billing-related details of CCA charges on a separate page which shall be included in the consolidated bill if transmitted with the summary charge.   CCA charges which are not transmitted as required shall not be included in the consolidated bill.

(Continued)

---

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|---|
| Advice | 3749-E | Caroline Choi | Date Filed | Feb 22, 2018 |
| Decision | | Senior Vice President | Effective | Mar 24, 2018 |
| 37C16 | | | Resolution | E-4907 |

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63375-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 57106-E |

---

<u>Rule 23</u>                                                    Sheet 38     (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

P.    BILLING SERVICE OBLIGATIONS (Continued)

        d.    Timing Requirements

            (1)    SCE shall render customer bills once a month.  Nothing contained in this Section shall limit SCE's ability to render bills more frequently, consistent with SCE's existing practices.  However, CCA charges shall be included on SCE bills in accordance with the regular monthly billing cycles.

            (2)    Except as provided in paragraph d(1) above, both CCA and SCE charges shall be based on the same billing period data to avoid any confusion concerning these charges.

            (3)    CCA charges must be received by SCE the day following SCE's actual meter reading date.  If billing charges have not been received from the CCA by this date, SCE will render the bill for SCE charges only, without CCA charges.  The CCA must wait until the billing cycle following the receipt of the CCA charges.  At the discretion of SCE, other arrangements may be made available at a fee as set forth in the applicable fee schedule.

      2.    Billing Information and Inserts

        a.    Identify SCE and CCA Charges

           The consolidated SCE bill, at a minimum, shall identify SCE charges as specified by the Commission or its codes and when CCA charges are received shall identify, at a minimum, two sets of charges: one for SCE services and another for CCA energy services.

        b.    Required Legal and Safety Notices

           All customers, including CCA and SCE Bundled Service customers, shall receive mandated legal and safety notices, and SCE shall be responsible for the creation of these notices.  SCE may also enclose SCE-related bill inserts in consolidated SCE billing as permitted by Commission regulations.

        c.    CCA Obligations under Consolidated SCE Billing

           The CCA may include any information directly related to the calculation or understanding of CCA charges directly in the bill but may not include any text on the separate detail page which is not specifically related to the charges or their explanation.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision _____ | Senior Vice President | Effective    Mar 24, 2018 |
| 38C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 48 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 47
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | | Revised | Cal. PUC Sheet No. | 63376-E |
| Rosemead, California | (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. | 57107-E |

---

Rule 23                                                                    Sheet 39    (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

P.    BILLING SERVICE OBLIGATIONS (Continued)

  3.    Billing Adjustments for Meter Error and Billing Error

    a.    Adjustment of Bills for Meter Error

          SCE shall perform the adjustment of bills for meter error in accordance with Rule 17.

    b.    Adjustment of Bills for Billing Error

          SCE shall perform the adjustment of bills for billing error in accordance with Rule 17.

  4.    Unauthorized Usage of Energy

    a.    SCE will conduct the investigation of the unauthorized use of energy in accordance with Rule 17.

    b.    If SCE determines there has been unauthorized use, SCE shall have the legal right to recover, from any customer, CCA, or other person that caused or benefited from such unauthorized use, the total estimated amount of the undercharge, including the CCA electric power component, for the full period of such unauthorized use, and any other actions authorized pursuant to its Commission-approved tariffs or by law.

Q.    PAYMENT AND COLLECTION TERMS

  1.    SCE shall pay the CCA the amounts paid to SCE for CCA charges only after the payment is received from the customer.  Payments shall be transferred to the CCA electronically specifying the amount paid by each specific customer account or group of customer accounts if the customer is Summary Billed.

  2.    Upon receipt of SCE's payment, the CCA is responsible for accurately posting the payment to the customer's account.  The CCA shall also be responsible for any follow-up inquiries either with SCE or customer if there are questions concerning the posting of that payment amount.

  3.    SCE shall remit payments to the CCA only for the amounts paid by the CCA customer for payment of CCA charges.  Payments are due on or before the later of:

    a.    Seventeen (17) calendar days after the bill was rendered to the customer, or

    b.    The next business day after the payment is received from the customer.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 39C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 49 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 48
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 63377-E |
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 57108-E |

<u>Rule 23</u>                                                 Sheet 40      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

Q.    PAYMENT AND COLLECTION TERMS (Continued)

4.    SCE shall process payments, post SCE charges paid to customer accounts, and transfer funds owed the CCA to the CCA.  SCE shall debit to the CCA any amounts resulting from returned payments and assess returned payment charges (i.e., a charge for each returned payment) to the appropriate customers.

5.    The CCA has no payment obligations for customer payments under consolidated SCE billing services. The CCA is required to settle any disputes of CCA charges with the customer.

6.    The customer is obligated to pay SCE for all SCE and CCA charges consistent with existing tariffs.

7.    The customer must notify SCE of any disputed SCE charges; otherwise, any outstanding balance shall be handled as an amount past due.  Customer disputes of CCA charges must be directed to the CCA, and customer disputes of SCE charges must be directed to SCE.

8.    If the customer disputes any SCE charges, it shall nevertheless pay the amount billed; provided, however, that the customer may, at its election, pay that portion of the charges that the customer disputes to the Commission in accordance with Rule 10.  If the customer disputes any CCA charges, the provisions of its agreement with the CCA shall apply. SCE shall forward to the CCA amounts paid to cover CCA charges.  However, no CCA may discontinue CCA Service to a residential customer for a disputed amount if that customer has filed a complaint with the Commission, and that customer has paid the disputed amount into an escrow account.

9.    For CCA sundry charges, SCE shall accept cash, check or electronic payments. The CCA must remit payment for any charges, approved by the Commission, for services provided it by SCE. Sundry charges shall be considered past due 30 days after the date the bill to the CCA is rendered.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice    3749-E | Caroline Choi | Date Filed    Feb 22, 2018 |
| Decision | Senior Vice President | Effective    Mar 24, 2018 |
| 40C16 | | Resolution    E-4907 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 50 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 49
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 70472-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling   Revised | Cal. PUC Sheet No. | 63378-E |

---

<u>Rule 23</u>                                    Sheet 41
COMMUNITY CHOICE AGGREGATION

(Continued)

R.   LATE OR PARTIAL PAYMENTS AND UNPAID BILLS

1.   SCE is responsible for collecting the unpaid balance of all charges, including the CCA charges, from customers during the time the CCA is providing CCA Service, sending notices informing customers of unpaid balances, and taking the appropriate actions to recover the unpaid amounts owed the CCA during its credit related interactions with customers.

2.   Partial payments by customers shall be allocated on a pro rata basis to SCE charges for which delinquency may result in disconnection, and then any balance shall be prorated between the CCA and other SCE charges.

3.   Undisputed overdue balances owed SCE shall be considered late and subject to SCE late payment procedures.

4.   Commission rules shall apply to unpaid SCE charges by the customer.

S.   VOLUNTARY CCA SERVICE TERMINATION

Termination of a CCA's CCA Service occurs when an individual CCA or a CCA operating under a Joint Powers Agency (JPA) discontinues providing CCA Service to all customers in its service area.   Upon termination of CCA Service, all active CCA customers in the CCA's   (T)
service area shall be involuntarily returned to Bundled Portfolio Service (BPS) pursuant to   (T)
Section L of this Rule.   CCAs shall use best efforts to provide as much advance notice as possible to customers, the Commission and SCE and coordinate with the Commission and SCE to ensure an efficient process and to protect all SCE customers from service problems and additional costs.   In addition to the above, the CCA must comply with the requirements set forth below or may be subject to Section T, Involuntary Service Changes, of this Rule.   (T)

1.   The CCA shall provide at least a one (1) year advanced written notice to the Commission and SCE of the CCA's intention to discontinue its CCA Service.

2.   The CCA shall provide customers with a six-month notice and at a minimum provide a second notice during the final 60 days before the CCA's scheduled termination of service.

3.   SCE shall provide notification to and return all CCA's customers to SCE's BPS during the month in which the CCA terminates its CCA Service on the customer's scheduled meter read date.   The CCA shall be responsible for the continued provision of the customer's electric power needs until the date the customer returns to Bundled Service, and shall be responsible for payment of all Re-Entry Fees for the Involuntary   (N)
Return pursuant to Section W of this Rule.   (N)

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice   <u>4394-E</u> | <u>Carla Peterman</u> | Date Submitted | <u>Jan 15, 2021</u> |
| Decision   <u>18-05-022</u> | Senior Vice President | Effective | <u>Jan 15, 2021</u> |
| *41C12* | | Resolution | <u>E-5059</u> |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 51 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 50
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 70473-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 63379-E |

<u>Rule 23</u>                                                Sheet 42
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

S.    VOLUNTARY CCA SERVICE TERMINATION  (Continued)

4.    Customers eligible to switch to Direct Access shall do so subject to Direct Access    (C)
Rule 22.1.  All other customers shall be returned to BPS subject to the terms in    |
Section L, but are not subject to Transitional Bundled Service as defined in SCE's    |
rate Schedule PC-TBS.    (C)

5.    Customers requesting to return to Bundled Service before the termination of CCA
Service shall be subject to all terms and conditions in Section L of this Rule.  The
CCA shall not terminate any of its customers' CCA Service before the termination of
the CCA's CCA Service.

6.    The CCA remains responsible for compliance with all applicable Commission rules,
CAISO requirements and LSE obligations.

7.    A CCA shall be responsible for all costs resulting from the CCA's CCA Service    (C/
termination including Re-Entry Fees owed by the CCA upon an Involuntary Return
pursuant to Section W. of this Rule.  SCE reserves the right to withhold CCA
customer payment remittances from the CCA for undisputed overdue charges
including Re-Entry Fees owed by the CCA upon an Involuntary Return pursuant to    (N)
Section W of this Rule that are in excess of the posted CCA FSR amount.  SCE will    |
refund any CCA funds that SCE has retained that are greater than the costs SCE    |
incurred, or at the time that the CCA fully replaces a FSR instrument because such    |
FSR instrument terminated or expired or for other reasons specified in Section W.1 of    |
this Rule.    (N)

(L)

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 42C13 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 52 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 51
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Original | Cal. PUC Sheet No.   70474-E |
| Rosemead, California        (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   63379-E |

---

<u>Rule 23</u>                                                    Sheet 43       (N)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

S.    VOLUNTARY CCA SERVICE TERMINATION  (Continued)                              (L)

8.    The CCA's Service Agreement with SCE will be cancelled with its termination of its
CCA Service.  At any time not less than three (3) years after the CCA's termination of
CCA Service, the CCA's eligibility to engage in CCA Service may be reinstated.  The
CCA's reestablishment of CCA Service will require the CCA to complete all CCA
Service establishment requirements, including filing a new Implementation Plan with
the Commission, being registered by the Commission, establishment of service with
SCE pursuant to Section F, completion of credit requirements pursuant to Section V,
all past due charges and arrearages having been paid, with interest, and the CCA has
re-established compliance with all then-current Commission requirements.

9.    A CCA providing CCA Service pursuant to a JPA that terminates its CCA Service
must fully comply with the CCA Voluntary Service termination requirements. Should              (T)
one or more constituent members of a JPA seek to continue operations as a CCA,
that new entity shall comply with all requirements for CCA Service establishment set
forth in Section F of this Rule. If the JPA continues operations, but a constituent CCA        (L)(N)
member discontinues its participation in the JPA and seeks to offer CCA Service as
an individual CCA entity or through another entity, that new entity shall comply with all
requirements for CCA Service establishment set forth in Section F of this Rule.
Otherwise, the constituent JPA member's discontinuance of its participation in the
JPA shall result in i) a voluntary CCA service termination under this Section S for the
CCA customers in that constituent JPA member's jurisdiction; and, ii) the Involuntary
Return of those  customers to Bundled Service.                                                 (N)

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice        4394-E | Carla Peterman | Date Submitted   Jan 15, 2021 | |
| Decision    18-05-022 | Senior Vice President | Effective          Jan 15, 2021 | |
| 43C14 | | Resolution        E-5059 | |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 53 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 52
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Original | Cal. PUC Sheet No. 70475-E |
| Rosemead, California (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No. 63380-E |

---

Rule 23                                                                    Sheet 44    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

T.    INVOLUNTARY SERVICE CHANGES                                                    (L)
                                                                                      |
    1.    Service Changes                                                             |
                                                                                      |
          Pursuant to D.05-12-041, absent the express approval of the CCA, an order of a    |
          court, the Commission or the FERC, SCE shall adhere to the requirements set forth    |
          below in the event it seeks to terminate service to a CCA.                  |
                                                                                      |
    2.    SCE shall send notices of involuntary service changes or termination to the CCA, to    |
          each affected CCA customer, and to the Commission.  The CCA shall be responsible    |
          for all SCE costs associated with an Involuntary Service Change occurrence.  Such    |
          costs may include, but are not limited to, system, administrative, customer    (C)
          communications, legal costs and any Re-Entry Fees owed by the CCA upon an     |  |
          Involuntary Return pursuant to Section W. of this Rule.  SCE has the right to withhold    |  |
          and offset CCA customer payment remittance to the CCA until the CCA has paid all    (C)
          such undisputed charges, including Re-Entry Fees pursuant to Section W of this Rule    (N)
          that are in excess of the posted CCA FSR amount.  SCE will refund any CCA funds    |  |
          that SCE has retained that are greater than the costs SCE incurred, or at the time that    |  |
          the CCA fully replaces an FSR instrument because it terminated or expired or for    |  |
          other reasons specified in Section W.1 of this Rule.  Pursuant to D.05-12-041, absent    |  |
          the express approval of the CCA, an order of a court, the Commission or the FERC,    |  |
          SCE shall adhere to the requirements set forth below in the event it seeks to    |  |
          terminate service to a CCA.                                                (L)(N)

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted    Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective    Jan 15, 2021 |
| *44C17* | | Resolution    E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 54 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 53
of 91

**EDISON**
An EDISON INTERNATIONAL Company

Southern California Edison                    Revised      Cal. PUC Sheet No.    70476-E
Rosemead, California      (U 338-E)      Cancelling Revised      Cal. PUC Sheet No.    63380-E

---

Rule 23                    Sheet 45      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

T.    INVOLUNTARY SERVICE CHANGES (CONTINUED)                    (T)
                                                                (L)

3.    Change of Service Election In Exigent Circumstances

Where continued CCA service would constitute an emergency or may substantially
compromise SCE operations or service to bundled customers, SCE should seek an
emergency order from the Commission.  In the event a CCA or a customer has failed
to meet its obligations under this Rule or CCA Service Agreement such that SCE
seeks to invoke its remedies under this Section, and the failure constitutes an
emergency (i.e. the failure poses a substantial threat to the reliability of the electric
system or to public health and safety or the failure poses a substantial threat of
irreparable economic or other harm to SCE or the customer), or the failure relates to
CCA's unauthorized energy use, then SCE may initiate a change, or, in some cases,
terminate a customer's CCA Service, or a CCA's ability to provide services under
CCA.  In such case, SCE shall seek an emergency order from the Commission.
Pursuant to D.05-12-041, the assigned Administrative Law Judge (ALJ), in
consultation with the assigned Commissioner, is authorized to issue a ruling providing
interim authority for SCE to terminate a CCA's service.  Upon receipt of such a ruling,
SCE shall initiate the change or termination by preparing a CCASR, but the change or
termination may be made immediately notwithstanding the applicable CCASR
processing times set forth in this Rule.  SCE shall provide such notice to the CCA
and/or the affected customer as is reasonable under the circumstances of this
section, if any is reasonable.  The CCA or the affected customer shall have the right
to seek an order from the Commission restoring the customer's service election
and/or the CCA's ability to provide services.  If a customer's CCA Service is
terminated because the customer failed to meet its obligations under this Rule, the      (N)
customer will be subject to the provisions of Section L and the terms and conditions of
Bundled Portfolio Service.  Unless expressly ordered by the Commission, these
provisions do not disconnect electric service provided to the customer. If the CCA's      (N)
ability to provide CCA Service is terminated under this Section T, such termination will      |
result in an Involuntary Return of the CCA's customers to Bundled Service,      |
irrespective of whether the CCA is a JPA, a constituent member of a JPA, or an      |
individual CCA.                                                                (N)

(Continued)

---

(To be inserted by utility)              Issued by              (To be inserted by Cal. PUC)
Advice      4394-E                    Carla Peterman          Date Submitted    Jan 15, 2021
Decision    18-05-022                Senior Vice President    Effective          Jan 15, 2021
45C14                                                        Resolution        E-5059

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 55 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 54
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   70477-E |
| Rosemead, California      (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   63381-E |

---

<u>Rule 23</u>                                                                 Sheet 46      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

T.    INVOLUNTARY SERVICE CHANGES (Continued)

4.    Change of Service Election Absent Exigent Circumstances

In the event SCE finds that a CCA has failed to meet its obligations under this Rule or CCA Service Agreement such that SCE seeks to invoke its remedies under this Section, but the failure does not constitute an emergency (as defined in Section T.3), SCE shall notify the CCA and the affected customer of such finding in writing stating specifically:

a.    The nature of the alleged non-performance;

b.    The actions necessary to cure it;

c.    The consequences of failure to cure it and the remedy SCE proposes to invoke in the event of a failure to cure; and

d.    The name, address and telephone number of a contact person at SCE authorized to discuss resolution of the problem.

The CCA shall have thirty (30) days from receipt of such notice to cure the alleged non-performance or reach an agreement regarding it with SCE.  If the problem is not cured or an agreement is not reached following this 30 day period, SCE may seek authority from the Commission to terminate CCA Service.  SCE's request to the Commission shall specify the reasons for the requested termination, the impacts of the termination, and the expected impacts if the CCA's service is not terminated.  Upon Commission approval, SCE may initiate the CCASR process set forth in this Rule to accomplish the remedy set forth in the notice.  If a customer's CCA Service is terminated, the customer will be subject to the provisions of Section L and the terms and conditions of Bundled Portfolio Service, unless the customer is eligible for Direct Access and has previously selected another ESP in accordance with Rule 22.   SCE shall suspend the exercise of such remedy if, before the end of the cure period, the CCA has filed an application with the Commission requesting an order from the Commission that the CCA is entitled to continue the CCA Service Agreement and SCE is not entitled to exercise the remedy it has identified in its notice.  The status of the CCA shall not change pending the Commission's review of SCE's request provided that an emergency, as described in Section T.3 of this Rule does not arise.  Unless expressly ordered by the Commission, these provisions do not disconnect electric service provided to the customer.  SCE's action to defer the exercise of its remedies in accordance with this section does not constitute a waiver of any rights.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice      4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 46C15 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 56 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 55
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Revised | Cal. PUC Sheet No. | 70478-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling Revised | Cal. PUC Sheet No. | 63382-E |

---

Rule 23                                                                Sheet 47      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

T.    INVOLUNTARY SERVICE CHANGES (Continued)

5.    Following consultation with the CCA, SCE is authorized to serve CCA customers temporarily where the CAISO or the CCA has notified SCE that customers would otherwise not be served. In such cases, the CCA's Service Agreement is not terminated; however SCE shall immediately initiate the process to return affected CCA customers to Bundled Service without prior Commission approval. SCE shall initiate the service change by preparing a CCASR, but the service change may be made immediately notwithstanding the applicable CCASR processing times set forth in this Rule. Affected customers will be provided service temporarily under Schedule PC-TBS. CCA customers receiving temporary service in this situation may not seek service from other ESPs or CCAs. SCE may seek authority from the Commission to terminate CCA Service pursuant to Section T.4 of this Rule at anytime after being notified that the CCA's customers are not being served.

6.    Burden of Proof Before Commission

In any case before the Commission the party bearing the burden of going forward and the party bearing the burden of proof shall be established in the manner normally established at the Commission.

7.    Involuntary Returns                                                             (N)
      |
      a.    An Involuntary Return is defined in Section B.29 herein.                   |
      |
      b.    Action in the Event of an Involuntary Return                              |
            Except for the customers eligible for Direct Access that previously selected |
            another ESP under the procedures set forth in the Direct Access Rules 22 and |
            22.1., upon the Involuntary Return of a CCA Service customer, the customer shall |
            be returned to BPS subject to the terms in Section L, but is not subject to |
            Transitional Bundled Service as defined in SCE's rate Schedule PC-TBS.    (N)

8.    Action in the Event of Termination                                               (D)

At any time not less than three (3) years and six (6) months after termination of a CCA's CCA Service rights pursuant to this Section T, the CCA's eligibility to engage in CCA Service shall be reinstated upon a reasonable showing by the CCA that the cause(s) of the CCA's termination have been cured, all past due charges and arrearages have been paid, with interest, including any unpaid Re-Entry Fees owed   (N)
by the CCA as a result of an Involuntary Return pursuant to Section W of this Rule,   (N)
and the CCA has re-established compliance with all then-current Commission requirements, including credit requirements under Section V.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| *47C18* | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 57 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 56
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.  70479-E |
| Rosemead, California        (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.  63383-E |

---

<u>Rule 23</u>                                        Sheet 48      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

U.    SERVICE DISCONNECTIONS AND RECONNECTIONS

1.    SCE shall notify the customer of SCE's right to disconnect electric service for the non-payment of SCE charges pursuant to electric Rule 8.  The customer, and not SCE, is responsible for contacting CCA in the event it receives notice of late payment or service termination from SCE. If a customer has been disconnected, and is not reconnected within two days, SCE shall promptly notify the CCA. A service charge shall be imposed on the customer if a field call is performed to disconnect electric service.

2.    SCE shall not disconnect electric service to the customer for the late payment or non-payment of CCA charges. In the event of non-payment of CCA charges by the customer, the CCA may submit a CCASR requesting transfer of the service account to SCE Bundled Service according to Section M.

3.    SCE shall reconnect electric service for a Commission-authorized service fee when the criteria for reconnection pursuant to the provisions set forth Rule 11, Discontinuance of Service, and Schedule SC have been met.

V.    CREDIT REQUIREMENTS

1.    SCE may require the CCA to establish its creditworthiness through evaluations, deposits, or other security in the manner described in Section V.2 of this Rule, to cover Commission-approved charges incurred as a result of CCA participation. That is, the creditworthiness only applies to SCE charges that are billed directly to the CCA.

2.    Creditworthiness

a.    Credit Evaluation

A CCA with a demonstrable current credit rating of Baa2 or higher from Moody's or BBB or higher from Standard and Poor's, Fitch or Duff & Phelps, is deemed to be creditworthy unless SCE determines that a material change in the CCA's creditworthiness has occurred. SCE requires CCAs to complete a credit application including financial information reasonably necessary to establish credit. The creditworthiness evaluation may be conducted by an outside credit analysis agency, determined by SCE, with final credit approval granted by SCE. This evaluation shall be completed within ten (10) business days.  Credit reports shall remain strictly confidential between the credit analysis agency and SCE. A credit application processing fee, as approved by the Commission, may be charged to offset the cost of determining the CCA's creditworthiness.

(Continued)

---

| | | |
|---|---|---|
| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
| Advice      4394-E | Carla Peterman | Date Submitted    Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective           Jan 15, 2021 |
| 48C15 | | Resolution         E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 58 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 57
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Revised | Cal. PUC Sheet No.   70480-E |
| Rosemead, California   (U 338-E) | Cancelling | Revised | Cal. PUC Sheet No.   63384-E |

---

<u>Rule 23</u>                                                    Sheet 49      (T)
<u>COMMUNITY CHOICE AGGREGATION</u>

(Continued)

V.    CREDIT REQUIREMENTS (Continued)

    2.    Creditworthiness (Continued)

        b.    Security Deposits

            The CCA or its authorized agent may submit and maintain a cost-based security deposit in lieu of submitting to or being qualified under a creditworthiness evaluation. The amount of the security deposit required to establish credit will be based on SCE providing services to the CCA for customers in the CCA's service area and costs associated with specialized services and boundary metering requested by the CCA. The value of the security deposit shall be determined by SCE. Security deposits may be in the form of (1) cash deposits, with interest earned at the 3-month commercial paper rate, (2) letters of credit, defined as irrevocable and renewable issued by a major financial institution acceptable to SCE, or (3) surety bonds, defined as renewable and issued by a major insurance company acceptable to SCE Security deposits must be posted with SCE prior to the CCA's participation in CCA and prior to the implementation of any Customer Notifications as identified in Section H. Security deposits posted with SCE which are in excess of outstanding unpaid bills owed to SCE will be returned to the CCA within approximately 60 days after the CCA has terminated its services in SCE's service territory.

            While the CCA is participating in CCA, deposits cannot be used as payment for past due bills in order to avoid or delay imposition of any of the Commission tariffs and rules pertaining to CCA's non-payment of bills owed to SCE.

        c.    Interest on Cash Deposit

            SCE shall pay interest on cash deposits, except as provided below, calculated on a daily basis, and compounded at the end of each calendar month, from the date fully paid to the date of refund by check or credit to the CCA's account. The interest rate applicable in each calendar month shall be set forth in Rule 7; except that when a refund is made within the first fifteen days of a calendar month the interest rate applicable in the previous month shall be applied for the elapsed portion of the month in which the refund is made. No interest shall be paid if the CCA's right to continue to provide CCA Service is temporarily or permanently discontinued for nonpayment of bills. No interest shall be paid for periods covered by bills paid after becoming past due.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 49C15 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 59 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 58
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | |
|---|---|---|
| Southern California Edison | Revised | Cal. PUC Sheet No.   70481-E |
| Rosemead, California        (U 338-E) | Cancelling   Revised | Cal. PUC Sheet No.   63385-E |

---

<u>Rule 23</u>                                      Sheet 50      (T)
COMMUNITY CHOICE AGGREGATION

(Continued)

V.    CREDIT REQUIREMENTS (Continued)

d.    Ongoing Maintenance of Credit

To assure continued validity of established unsecured credit, the CCA shall promptly notify SCE of any material change in its credit rating or financial condition.  CCA shall also furnish evidence of an acceptable credit rating or financial condition, as set forth above, to SCE upon request.

3.    Additional Documents

The CCA shall execute and deliver all documents and instruments (including, without limitation, security agreements and SCE financing statements) reasonably required from time to time to implement the provisions set forth above and to perfect any security interest granted to SCE.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice     4394-E | Carla Peterman | Date Submitted   Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective   Jan 15, 2021 |
| 50C16 | | Resolution   E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 60 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 59
of 91

EDISON
An EDISON INTERNATIONAL Company

| Southern California Edison | | Original | Cal. PUC Sheet No. | 70482-E |
|---|---|---|---|---|
| Rosemead, California | (U 338-E) | Cancelling | Cal. PUC Sheet No. | |

---

Rule 23    Sheet 51    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.  CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS

As described in Section F.4.h, all new and existing CCAs are required to post and maintain an FSR with SCE using a financial security instrument in the form of an irrevocable standby letter of credit, a surety bond, or cash held by a U.S. branch of a commercial bank acting as the escrow holder in an escrow, and in the amount sufficient to cover the Re-Entry Fees associated with the Involuntary Return of its CCA Service customers to SCE's Bundled Service, as required by this Section W.

The terms of the FSR instrument are subject to mutual agreement by SCE, CCA, and the third-party issuer of the FSR instrument. The FSR instrument will govern the rights and obligations of the parties and shall be based on commercially reasonable and accepted terms and conditions and consistent with D.18-05-022 and SCE's tariffs. No party may unreasonably withhold its agreement to commercially reasonable terms and conditions of the FSR instrument.

1.  The FSR instrument must meet the following requirements:

    a.  An irrevocable standby letter of credit in form, substance and amount satisfactory to SCE and issued by a bank mutually acceptable to SCE and CCA. SCE shall be the beneficiary or recipient of the letter of credit. The issuing bank must be a U.S. national bank, or by a U.S. branch of a foreign bank mutually acceptable to SCE and CCA. SCE's standard form of letter of credit may be used for this purpose. Or,

    b.  A surety bond in form, substance and amount satisfactory to SCE, by an insurer mutually acceptable to SCE and CCA, authorized to issue and hold surety bonds in the State of California. SCE shall be the beneficiary or recipient of the surety bond. It is further agreed and understood that if co-sureties are used, the bonds shall be issued on a "joint and several" basis. SCE's standard form of surety bond may be completed for this purpose. Or,

    c.  Cash held by a U.S. branch of a commercial bank acting as the escrow holder in an escrow account. The escrow agreement shall be in form, substance and amount satisfactory to SCE, CCA and the bank. SCE shall be the beneficiary or recipient of the escrow account. The issuing bank must be a U.S. national bank or by a U.S. branch of a foreign bank mutually acceptable to SCE and CCA. SCE's standard form of escrow agreement may be used for this purpose.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 51C15 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 61 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 60
of 91

EDISON
An EDISON INTERNATIONAL Company

Southern California Edison                                    Original      Cal. PUC Sheet No.    70483-E
Rosemead, California      (U 338-E)          Cancelling                  Cal. PUC Sheet No.

---

Rule 23                                                   Sheet 52      (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)


1.    The FSR instrument must meet the following requirements
      (Continued):


The issuer of a FSR instrument must have an investment grade rating equivalent to at
least an A- by Standard & Poor's or A3 by Moody's. The calculated FSR amount will
include the incremental administrative costs related to switching the involuntarily returned
customer service accounts back to Bundled Service and, pursuant to the methodology
adopted in D.18-05-022 and set forth in Section X of this Rule, the incremental
procurement costs for involuntarily returned customer service accounts for a six-month
period. The incremental administrative costs shall be calculated for each involuntarily
returned customer service account using the Schedule CCA-SF Customer Re-Entry Fee
effective at the time the FSR amount is calculated. All costs associated with the issuance
and maintenance of the FSR instrument are the responsibility of the CCA. If (i) the issuer
of the FSR instrument fails to comply with or perform its obligations under the FSR
instrument; or (ii) the issuer of the FSR instrument disaffirms, disclaims, repudiates or
rejects, in whole or in part, or challenges the validity of the FSR instrument; or (iii) such
FSR instrument expires or terminates, or fails or ceases to be in full force and effect at
any time during which the CCA is required to provide a FSR instrument; or (iv) the issuer
of such FSR instrument becomes insolvent or subject to a bankruptcy proceeding; or (v)
the issuer of the FSR instrument fails to maintain an investment grade rating equivalent to
at least an A- by Standard &  Poor's or A3 by Moody's; then the CCA must replace the
FSR instrument with an FSR instrument from an issuer that has an investment grade
credit rating equivalent to at least an A- by Standard & Poor's or A3 by Moody's within five
(5) business days of notice from SCE.

The FSR amount shall be the higher of the amount determined in accordance with
Sections W.2 and W3 below, as applicable, or the minimum FSR amount of one hundred
and forty-seven thousand dollars ($147,000) and SCE shall be the beneficiary or recipient
of the FSR instrument. The terms and conditions for these FSR instruments must be
mutually acceptable to SCE, the CCA and the issuer, and must meet the minimum
requirements listed above.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice      4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 52C18 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 62 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 61
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No.    70484-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

<u>Rule 23</u>                                                                                  Sheet 53    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

2.    The initial FSR for existing and new CCAs will be established as follows:

a.    For existing CCAs, SCE will perform the initial financial security calculation based upon the incremental administrative and procurement costs of switching a CCA's customers back to Bundled Service in accordance with Section X of this Rule and submit the proposed financial security amounts in a Tier 2 advice letter for CPUC approval. For purposes of calculating the number of customer service accounts for each CCA, any customers that submitted, prior to the Involuntary Return, Direct Access Service Requests (DASRs) or CCASRs to voluntarily return to DA service or BPS, respectively, and that do make the switch in accordance with those requests, shall be excluded in the calculation of the respective CCA's financial security amount. Any confidential data relating to a CCA or proprietary information of a third party utilized in the calculation shall be redacted in the public version of the advice letter. The confidential version of the advice letter will be filed under confidential seal with the Energy Division. Concurrent with submitting the advice letter to the CPUC's Energy Division, SCE will serve by electronic means on each applicable CCA a copy of the advice letter, with the relevant supporting data, redacted of any proprietary information that is not the subject of a non-disclosure agreement or third-party proprietary information that can be acquired through a subscription with the Intercontinental Exchange (ICE), and calculations of each respective CCA's financial security amount provided confidentially only to that specific CCA. The CCA must post the FSR with SCE in the form and amount described above within sixty (60) days of the effective date of the advice letter or within 60 days of the Commission's issuance of Resolution E-5059, as applicable.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted    Jan 15, 2021 | |
| Decision    18-05-022 | Senior Vice President | Effective    Jan 15, 2021 | |
| 53C15 | | Resolution    E-5059 | |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 63 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 62
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No.  70485-E |
| Rosemead, California   (U 338-E) | Cancelling | Cal. PUC Sheet No. |

<u>Rule 23</u>                     Sheet 54    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

2.    The initial FSR for existing and new CCAs will be established as follows (Continued):

b.    For a new CCA, or for a new phase of an expanding CCA in SCE's service territory, the FSR amount will be calculated in Month M (where M denotes the month when SCE will calculate the financial security amount) using Month M-1 data, and the financial security will be for months of the six (6) month forecast period of M+1 to M+6 during which the CCA will serve load. SCE may submit the financial security calculation and amount in a Tier 2 advice letter for CPUC Energy Division's approval no later than thirty (30) days prior to the start date of the new CCA's, or new phase of, Mass Enrollment. Any confidential data relating to the CCA or proprietary information of a third party utilized in the calculation shall be redacted in the public version of the advice letter. Concurrent with submitting the advice letter to the CPUC's Energy Division, SCE will serve by electronic means on each applicable CCA a copy of the advice letter, with the relevant supporting data, redacted of any proprietary information  that is not the subject of a non-disclosure agreement or third-party proprietary information that can be acquired through a subscription with the Intercontinental Exchange (ICE),  and calculations of each respective CCA's financial security amount provided confidentially only to that specific CCA. The CCA must post the FSR with SCE in the form and amount described above within sixty (60) days of the effective date of the advice letter.

For a new CCA in SCE's service territory, for the purpose of registration as described in Section F.1.b.(5)(b), the CCA is required to post and maintain the minimum financial security amount established by the Commission in D.18-05-022 of one hundred and forty-seven thousand dollars ($147,000) within 90 days of Day 1, as defined in Section F, which may be adjusted upon approval of the financial security calculation and amount pursuant to the paragraph above.

(Continued)

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice      4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 54C16 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 64 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 63
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No.    70486-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

---

<u>Rule 23</u>                                                                    Sheet 55        (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

    3.    Semi-annual Financial Security Requirement Calculation:

        SCE will update the CCA's FSR amount semi-annually and submit the updated amount to the CPUC by May 10 and November 10 of each year. Updated FSR amounts for each CCA will be submitted in a Tier 2 advice letter to the CPUC's Energy Division. Any adjustments to the CCA FSR amount must be posted by the following January 1 and July 1, respectively. The posted amounts are subject to the Energy Division's final disposition. Any confidential data relating to a CCA or proprietary information of a third party utilized in the calculation shall be redacted in the public version of the advice letter. Concurrent with submitting the advice letter to the CPUC, SCE will serve by electronic means on each applicable CCA a copy of the advice letter, with the relevant supporting data, redacted of any proprietary information that is not the subject of a non-disclosure agreement or third-party proprietary information that can be acquired through a subscription with the Intercontinental Exchange (ICE), and calculations of each respective CCA's FSR amount provided confidentially only to that specific CCA. The CCA shall adjust the posted FSR amount if and when the calculated amount is (1) more than ten percent (10%) above or below the CCA's current posted FSR amount (i.e., if the recalculated financial security amount is less than 90% or more than 110% of the posted amount), and (2) more than twenty thousand dollars ($20,000) above or below the posted amount.

        If a CCA believes SCE has miscalculated its FSR amount, the CCA shall confer with SCE to resolve the inaccuracies, and may file comments with the Energy Division, and serve them upon SCE, indicating any appropriate corrections with relevant supporting explanation and detail within twenty (20) days of the submission of the  advice letter.  A CCA that fails to timely post the FSR in the required amount is subject to involuntary service changes pursuant to Section T of this Rule.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    <u>4394-E</u> | <u>Carla Peterman</u> | Date Submitted    <u>Jan 15, 2021</u> |
| Decision    <u>18-05-022</u> | <u>Senior Vice President</u> | Effective    <u>Jan 15, 2021</u> |
| *55C15* | | Resolution    <u>E-5059</u> |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 65 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 64
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No. 70487-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

---

Rule 23                                                    Sheet 56    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

    4.    Re-Entry Fees For The Involuntary Return of Customers:

        The CCA is responsible for all Re-Entry Fees for the Involuntary Return of its customers as defined in Section B.29.

        a.    When an Involuntary Return is initiated, SCE will file a Tier 1 Advice Letter within 30 days of its occurrence to notify the Commission of the involuntary return and, if feasible, provide the Re-Entry Fee calculation, which serves notice to the CCA that they must pay the calculated Re-Entry fees upon SCE's demand pursuant to Section X of this Rule. Otherwise, SCE will supplement the Tier 1 Advice Letter within 30 days of its submittal to provide the calculated Re-Entry Fees, which will be a binding estimate as provided in Section X.3.b of this Rule. Any party may file a protest to this AL disputing aspects of the Re-Entry Fees and whether they are compliant with D.18-05-022 or SCE's tariff. However, SCE can continue to move forward with drawing upon the CCA's posted FSR instrument, even if the CCA files a protest, except as provided in Section W.4.i below. Re-entry fees that are calculated correctly and in compliance with D.18-05-022 should not be subject to dispute. If the CCA submits a protest of the calculated Re-entry Fees based on a dispute that is not directly addressed by D.18-05-022 or Resolution E-5059, SCE will file another Tier 1 AL creating a memorandum account to track disputed costs. Any legitimately disputed costs will be deferred to the Provider of Last Resort (POLR) proceeding or other proceeding at the CPUC's direction for review and will be collected from the involuntarily returning CCA customers upon CPUC approval.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 56C16 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 66 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 65
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No.    70488-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

---

<u>Rule 23</u>                                                                                 Sheet 57    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

4.    Re-Entry Fees For The Involuntary Return Of Customers (Continued):

b.    SCE will calculate Re-Entry Fees pursuant to the methodology set forth in Section X of this Rule within sixty (60) days of the earlier of (i) the start of the Involuntary Return of customers, or (ii) SCE's receipt of the CCA's advance written notice of the Involuntary Return.  The Re-Entry Fees will be a binding estimate of:

i.    The incremental administrative costs to switch the involuntarily returned CCA customer service accounts to BPS, which will be established for each customer service account using the proxy amount equal to the Customer Re-Entry Fee for voluntarily returning CCA customers as established in SCE's Schedule CCA-SF, unless SCE has tracked the actual incremental administrative costs of the Involuntary Return pursuant to Section W.4.h below, in which case SCE reserves the right to use the actual incremental administrative costs; plus

ii.    The incremental procurement costs for involuntarily returned CCA customer for an additional six-month period for those customers remaining on BPS as set forth in Section X of this Rule.

At no time shall the sum of the administrative cost and the incremental procurement costs for customers subject to Involuntary Return be less than zero dollars ($0). The amount of the Re-Entry Fees will not be subject to true-up. If SCE tracks and plans to recover the actual administrative costs of processing the Involuntary Return, SCE shall file another Tier 1 AL creating a memorandum account to track the costs.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted    Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective    Jan 15, 2021 |
| 57C15 | | Resolution    E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 67 of 92

Case 6:21-bk-12821   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 66
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Original | Cal. PUC Sheet No.   70489-E |
| Rosemead, California   (U 338-E) | Cancelling | | Cal. PUC Sheet No. |

---

Rule 23                                                                 Sheet 58     (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

   4.    Re-Entry Fees For The Involuntary Return Of Customers (Continued)

      c.    SCE's demand to the CCA for payment of the Re-Entry Fees shall be made no later than sixty (60) days after the start of the Involuntary Return of CCA customers to utility procurement service.

      d.    Re-Entry Fees are due and payable to SCE within fifteen (15) days after SCE's issuance of the demand for payment. An Involuntary Return by a CCA, and the failure of the CCA to make full payment of the Re-Entry Fees within fifteen (15) days of SCE's demand shall entitle SCE to immediately draw upon the defaulting CCA's FSR instrument in an amount not to exceed the Re-Entry Fees, except as provided in Section W.4.i below. The CCA FSR instrument may only be drawn upon in the event of an Involuntary Return, or as mutually agreed upon in or pursuant to the terms of the FSR instrument

      e.    In the event that SCE's draw on the defaulting CCA's FSR instrument results in a reduction in the posted FSR amount of another CCA (e.g., a JPA), SCE will recalculate the FSR amount of that non-defaulting CCA, which shall adjust its posted FSR amount within five (5) business days if the recalculated amount is (1) more than ten percent (10%) above or below the CCA's current posted FSR amount (i.e., if the recalculated FSR amount is less than 90% or more than 110% of the posted amount), and (2) more than twenty thousand dollars ($20,000) above or below the posted amount.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice     4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 58C16 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 68 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 67
of 91

EDISON
An EDISON INTERNATIONAL Company

| Southern California Edison | | | Original | Cal. PUC Sheet No. | 70490-E |
| Rosemead, California | (U 338-E) | Cancelling | | Cal. PUC Sheet No. | |

Rule 23                                                                 Sheet 59     (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

4.    Re-Entry Fees For The Involuntary Return Of Customers (Continued)

f.    At the CCA's discretion, the CCA may pay the Re-entry Fees or direct SCE to draw upon the FSR instrument or withhold customer payment remittances. In the event a CCA fails to timely pay the Re-Entry Fees owed to SCE pursuant to Sections W.4.c and W.4.d above, SCE shall have the immediate right to demand and receive payment from the issuer of the defaulting CCA's FSR instrument in an amount not to exceed the Re-Entry Fees. To the extent the CCA fails to discharge its obligation to pay the Re-Entry Fees, any Re-Entry Fees not recovered from the CCA, either directly and/or from SCE's draw on its FSR instrument, will be recovered from the involuntarily returned CCA customers. If the CCA payments and the FSR instrument amount are together inadequate to cover the Re-Entry Fees, the residual costs will be allocated to the involuntarily returned CCA customers.

Any Re-Entry Fees not recovered from the CCA shall be paid by the involuntarily returned CCA customers. For any Re-Entry Fees not recovered from the CCA, SCE will file a Tier 2 Advice Letter to specify SCE's proposal for recovering the residual Re-Entry Fees from the involuntarily returned CCA customers and schedule. If the residual Re-Entry Fees are not the subject of a legitimate dispute, they may be collected upon approval of the Tier 2 Advice Letter. If SCE subsequently recovers additional Re-Entry Fees from the CCA, a refund up to the recovered amount will be provided to the involuntarily returned CCA customers in proportion to the amount collected by SCE.

g.    Service changes for the CCA's involuntarily returned customers will be as follows:

CCA service accounts will be switched to Bundled Portfolio Service, but are otherwise subject to the same rights and obligations of other CCA customers with respect to advance notices required for switching, and the minimum stay provisions in SCE's authorized tariffs.

h.    SCE may seek recovery of the actual administrative cost of the involuntary return in lieu of the adopted proxy CCA service fee amount. In such an event, SCE shall file a Tier 1 advice letter to create a memorandum account to track the actual administrative costs of processing the Involuntary Return. SCE's procurement costs shall continue to be recovered in rates through the operation of its' applicable balancing accounts.

(Continued)

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
| Advice | 4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision | 18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 59C17 | | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 69 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 68
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| | | |
|---|---|---|
| Southern California Edison | Original | Cal. PUC Sheet No. 70491-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

---

<u>Rule 23</u>                                                                          Sheet 60        (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

W.    CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (Continued)

    4.    Re-Entry Fees For The Involuntary Return Of Customers (Continued)

        i.    If the CCA FSR instrument contains each of the following conditions i) – iii), SCE will wait until the end of the 20-day protest period of the Tier 1 advice letter submission and of its supplement, if any, made pursuant to Section W.4.a, before drawing on the CCA FSR instrument and only draw undisputed Re-Entry Fee amounts:

            i.    In the event the issuer of the CCA's FSR instrument terminates the FSR instrument, the CCA must replace the CCA FSR instrument before the effective date of termination using a qualified new issuer;

            ii.    If the CCA fails for any reason to replace the CCA FSR instrument within 20 business days prior to the effective date of the issuer's termination, SCE has the immediate right to draw on the FSR instrument up to the full amount of the calculated Re-Entry Fees, even if the CCA has submitted a protest; and

            iii.    The CCA continues to be responsible for all issuer fees associated with the CCA FSR instrument.

    Undisputed Re-Entry Fee amounts are those amounts set forth in the SCE's Tier 1 advice letter submission, or if a supplemental Tier 1 advice letter is submitted, SCE's Tier 1 supplemental advice letter, made pursuant to Section W.4.a, that i) are not timely protested by the CCA; and/or ii) are approved.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) |
|---|---|---|
| Advice    4394-E | Carla Peterman | Date Submitted    Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective    Jan 15, 2021 |
| 60C18 | | Resolution    E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 70 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 69
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | Original | Cal. PUC Sheet No. | 70492-E |
| Rosemead, California   (U 338-E) | Cancelling | | Cal. PUC Sheet No. | |

---

Rule 23                                                                    Sheet 61      (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

X.    CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENT

The following steps shall apply for purposes of determining CCA Financial Security Requirements and Re-Entry Fees for incremental procurement costs associated with the Involuntary Return to Bundled Service of CCA customers in accordance with the methodology proposed in Joint Utilities' testimony (Ex. JU-01, Appendix E), adopted in D.18-05-022.

1.    Load Forecast

Each CCA's usage, peak demand, and number of customer service accounts (collectively, the CCA's "load forecast") will be based on the most recent calendar year of historical data, unless a collaborative load forecast has been developed at least one month prior to the submission date of the advice letter setting forth the financial security amounts, as described in Section W. 2. The CCA's load forecast will be established using the corresponding six (6)-month period from the most recent calendar year of historical usage (MWh) data. The CCA's monthly peak demand forecast (MW) will be established using the most recent 12 months of historical monthly peaks, defined as the CCA's demand during each month's system peak hour. The CCA's customer service accounts forecast will be established using the actual number of customer service accounts to whom the CCA provided service as of the date of the forecast, unless the CCA is new and beginning service, or plans to implement a new phase of service during the 6-month forecast period, as discussed below.

For a new CCA that is beginning service, unless the CCA and SCE otherwise agree on a collaborative load forecast, the CCA Load Forecast shall be based on the default assumptions regarding the percentage of customers in the various classes that may opt out of CCA service established by the Commission and set forth in Section A.2. of SCE's Rule 23.2, as follows:

- Bundled Service Customers - 5% for residential and 20% for non-residential customers.
- Direct Access Customers – 100% for both residential and non-residential customers.

If the CCA plans to implement a new phase of service (e.g., expanding its services to new cities or to additional customer groups within its existing service territory pursuant to its Implementation Plan) within the 6-month forecast period, the load associated with the new phase will be included in that CCA's load forecast to determine the CCA's financial security amount The load forecast of the new phase of service will be based on the most recent calendar year of historical data for customers service accounts in the new phase, using the default assumptions above for the new phase of service, unless a collaborative load forecast has been developed at least one month prior to the submission date of the advice letter setting forth the financial security amounts that estimates the number of customer service accounts likely to be served by the CCA (e.g., contains agreed-upon customer opt-out rate assumptions).

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
| Advice    4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision   18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 61C17 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 71 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 70
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

Southern California Edison                                      Original      Cal. PUC Sheet No.   70493-E
Rosemead, California      (U 338-E)            Cancelling            Cal. PUC Sheet No.

---

Rule 23                                      Sheet 62      (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

X.    CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS
(Continued)

1.  Energy Cost Forecast

To forecast incremental energy costs for the CCA FSR, SCE will use a load-weighted
forward SP-15 price and update the forward price forecast monthly.  The forward prices
will be obtained from Intercontinental Exchange (ICE) and will be the load-weighted[i]
average of daily peak and off-peak energy prices for all trading days in Month M-1 for
Months M+1 to Month M+6, inclusive, where Month M denotes the month when the
financial security amount is calculated.  Additionally, the IOU-specific line-loss factor
specified in Resolution E-4475 is then applied to the incremental energy cost forecast.

Calculation

- On-Peak Forecast--PF ($/MWh) = Average of daily peak prices in month M-1 for
  Months M+1 to M+6, inclusive

- Off-Peak Forecast--OF ($/MWh) = Average of daily off-peak prices in month M-1
  for Months M+1 to M+6, inclusive

- On-Peak Load--PL (MWh) = Estimated CCA customers' Peak Period usage for 6
  forward months

- Off-Peak Load--OL (MWh) = Estimated CCA customers' Off-Peak Period usage
  for 6 forward months

- Energy Cost Forecast = [(PF x PL) + (OF x OL)] x IOU-Specific Line Loss Factor

---

[i]    Load weights will be determined based on CCA-specific on- and off-peak usage ratios.  For example, if
65% of a CCA's total usage is measured during the on-peak hours, as defined in the North American
Electric Reliability Corporation (NERC) Policy 1, and 35% of the CCA's total usage is measured during
the off-peak hours, ICE's on- and off-peak forward prices will be multiplied by 0.65 and 0.35,
respectively.

(Continued)

---

| (To be inserted by utility) | Issued by | (To be inserted by Cal. PUC) | |
|---|---|---|---|
| Advice      4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision    18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 62C16 | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 72 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 71
of 91

EDISON
*An EDISON INTERNATIONAL Company*

| Southern California Edison | | | Original | Cal. PUC Sheet No. | 70494-E |
| Rosemead, California | (U 338-E) | Cancelling | | Cal. PUC Sheet No. | |

---

**Rule 23**                                             Sheet 63      (N)
**COMMUNITY CHOICE AGGREGATION**

(Continued)

X.    CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS
(CONTINUED)

1.    RPS Cost Forecast

In the absence of a robust index, a forward quote, or durable methodology for regularly estimating the value of a REC, SCE will use the $10/MWh REC value adopted by the Commission in D.16-05-006 as an estimate of the incremental cost of satisfying the RPS requirement for the involuntarily returned CCA load. A Commission decision in the RPS Rulemaking to update or modify the $10/MWh REC value will apply to all programs and tariffs that use the $10/MWh REC value, including the CCA FSR and Re-Entry fee calculations. The REC value will be multiplied by SCE's annual RPS target and by the forecast of CCA usage to determine the RPS cost forecast.  Additionally, the SCE-specific line-loss factor specified in Resolution E-4475 is then applied to the RPS cost forecast.

Calculation

• RPS Cost Forecast = REC Value ($/MWh) x Annual RPS Target (%) x CCA Annual Usage Forecast (MWh) x IOU-Specific Line Loss Factor

2.    RA Cost Forecast

In the absence of a forward quote of RA prices, SCE will use data published in the CPUC's annual Resource Adequacy report (CPUC RA report) as an estimate of the incremental cost of procuring RA for the involuntarily returned CCA load.  SCE will multiply the CCA's local RA requirement (MW)[i] by the local RA VWAP ($/kW-mo) specified in the CPUC's RA report, and to multiply the CCA's net system RA requirement (MW),[ii] which will include the Planning Reserve Margin (PRM) of 115%, by the system RA average monthly price specified in the CPUC's RA report.  This result will be multiplied by 6 to determine the RA cost forecast.

---

[i]   Because the Commission-set local RA requirement for the CCA is considered confidential, SCE will estimate this requirement by multiplying the CCA's load share (defined as the CCA's annual peak demand divided by the annual peak demand in the Transmission Access Charge (TAC) area) by the total local capacity requirement for all local areas within the utility's service territory.
[ii]  Because the Commission-set system RA requirement for the CCA is considered confidential, SCE will estimate this requirement by multiplying their historical average monthly peak demand by the 115% PRM.

(Continued)

---

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
| Advice | 4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision | 18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 63C16 | | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 73 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 72
of 91

**EDISON**
*An EDISON INTERNATIONAL Company*

| | | | |
|---|---|---|---|
| Southern California Edison | | Original | Cal. PUC Sheet No.  70495-E |
| Rosemead, California    (U 338-E) | Cancelling | Cal. PUC Sheet No. |

---

Rule 23    Sheet 64    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

X.    CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS (CONTINUED)

4.    RA Cost Forecast (Continued)

Calculation

- Local RA requirement (MW) = Annual local capacity requirement (LCR) in Transmission Access Charge (TAC) area (MW)[i] as adopted by the Commission
- CCA load share = CCA's annual peak demand (MW) / annual peak demand in the TAC area (MW)[ii]
- CCA's local RA requirement (MW) = Local RA requirement (MW) x CCA load share
- CCA's system RA requirement (MW) = Average of the CCA's monthly peak demand forecast (MW) x PRM of 115%
- CCA's net system RA requirement (MW) = (Average of the CCA's monthly peak demand forecast (MW) x PRM of 115%) – CCA's local RA requirement (MW)
- RA Cost Forecast = [(CCA's local RA requirement (MW) x Local RA VWAP ($kW-mo)) + (CCA's net system RA requirement x System RA VWAP ($/kw-mo))] x 6 x 1000

5.    Forecast Cost of New Procurement to Serve Involuntarily Returned CCA Customers
The Forecast Cost of New Procurement to serve involuntarily returned CCA customers for a 6-month period after an Involuntary Return is the sum of the Energy, RPS, and RA costs calculated in Sections X.2 to X.4.

Calculation

- Forecast Cost of New Procurement = (Energy Cost Forecast + RPS Cost Forecast + RA Cost Forecast)

---

[i]    Local capacity requirements include the MW requirements for all local areas within SCE's service territory.

[ii]    The CCA's annual peak demand will be established using the monthly peak demand forecast established in Step 1.  The annual peak demand in the TAC area will be established using the most recent TAC Area load forecasts developed by the CEC in its Mid Demand Baseline - Mid AAEE scenario.  This load share calculation is modeled off the methodology used by the Commission to allocate local capacity requirements.

(Continued)

---

| (To be inserted by utility) | | Issued by | | (To be inserted by Cal. PUC) | |
|---|---|---|---|---|---|
| Advice | 4394-E | Carla Peterman | | Date Submitted | Jan 15, 2021 |
| Decision | 18-05-022 | Senior Vice President | | Effective | Jan 15, 2021 |
| 64C16 | | | | Resolution | E-5059 |

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 74 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 73
of 91

**EDISON**
An EDISON INTERNATIONAL Company

| Southern California Edison | | | Original | Cal. PUC Sheet No. | 70496-E |
| Rosemead, California | (U 338-E) | Cancelling | | Cal. PUC Sheet No. | |

---

Rule 23                                                                 Sheet 65    (N)
COMMUNITY CHOICE AGGREGATION

(Continued)

X.    CALCULATION OF CCA FINANCIAL SECURITY AND RE-ENTRY FEE REQUIREMENTS
(CONTINUED)

4.  Forecast of Revenues That Will Be Collected Directly from Returned CCA Customers
through Their Bundled Service Generation Rate (Forecast Revenues)

Involuntarily returned CCA customers will be placed on BPS.  A forecast of the revenues
that will be collected from these customers through their bundled service generation rates
will be developed by multiplying SCE's system average bundled generation rate, as set in
the most recent rate change filing, by the CCA's load forecast.

5.  Incremental Procurement Cost Exposure

To determine the forecasted exposure to incremental procurement costs, which should be
covered by the CCA's financial security instrument, subtract the Forecast Revenues from
the Forecast Cost of New Procurement

Calculation
  •  Incremental Procurement Cost Exposure = (Forecast Cost of New
Procurement – Forecast Revenues).

6.  Administrative Costs

To forecast the administrative costs for purposes of setting the FSR, SCE will use its
Commission-approved Re-Entry fee in a voluntary return of a CCA customer (i.e., at the
customer's election) as the proxy for the utility's incremental time and material costs in the
event of an involuntary return of CCA customers.  This fee is detailed in SCE's Schedule
CCA-SF.

Calculation
  •  Administrative costs = CCA-SF Re-Entry fee*[number of involuntarily returned
customer service accounts].

7.  CCA Financial Security Requirement

To determine the CCA FSR, add the forecast Incremental Procurement Cost Exposure to
the forecast Administrative Costs.

Calculation
  •  CCA FSR = Incremental Procurement Cost Exposure + Administrative Cost.

The financial security amount for a CCA shall be the higher of the amount determined in
accordance with the steps above or the minimum financial security amount of one
hundred and forty seven thousand dollars ($147,000).

At no time shall the sum of the administrative costs and the incremental procurement
costs for involuntarily returned customers be less than zero dollars ($0).

---

| (To be inserted by utility) | | Issued by | (To be inserted by Cal. PUC) | |
| Advice | 4394-E | Carla Peterman | Date Submitted | Jan 15, 2021 |
| Decision | 18-05-022 | Senior Vice President | Effective | Jan 15, 2021 |
| 65C15 | | | Resolution | E-5059 |

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 75 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document    Page 74
of 91

**EXHIBIT 2**

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 76 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 75
of 91



**Shinjini C. Menon**
Managing Director, State Regulatory Operations

July 12, 2021

**ADVICE 4541-E**
**(U 338-E)**

PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA
ENERGY DIVISION

    **SUBJECT:**    Notice of Western Community Energy's Mass Involuntary
                  Return its Community Choice Aggregator Customers and Re-
                  Entry Fee Calculation

In compliance with Southern California Edison Company's (SCE's) Rule 23, SCE
hereby notifies the Commission that on June 10, 2021 Western Community Energy
(WCE), a Community Choice Aggregation (CCA) program, submitted a written notice of
deregistration with the California Public Utilities Commission (Commission).  WCE's
notice closely followed its Chapter 9 bankruptcy petition, filed May 24, 2021.  WCE's
written notice of deregistration served as advance written notice of the mass involuntary
return of WCE's CCA customers to SCE's procurement service.

**PURPOSE**

Pursuant to SCE's Rule 23, Section W.4.a, SCE submits this Tier 1 advice letter
providing notice to the Commission of the mass involuntary return of WCE's CCA
customers to SCE's procurement service.  SCE also sets forth the Re-Entry Fee
calculation in conformance with Rule 23, Section X.  Attached hereto is a confidential
version of the Re-Entry Fee calculation for the Commission (Attachment A), the
associated confidentiality declaration (Attachment B), and a public, redacted version
(Attachment C).

**BACKGROUND**

In Assembly Bill (AB) 117 (2002), authorizing the formation of CCA programs, the
Legislature enacted Section 394.25(e), a consumer protection provision, which
provides:

> *If a customer of an electric service provider or a community choice
> aggregator is involuntarily returned to service provided by an electrical
> corporation, any reentry fee imposed on that customer that the commission
> deems is necessary to avoid imposing costs on other customers of*

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 77 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 76
of 91

ADVICE 4541-E
(U 338-E)                                    - 2 -                              July 12, 2021

> *the electrical corporation shall be the obligation of the electric service
> provider or a community choice aggregator, except in the case of a customer
> returned due to default in payment or other contractual obligations or
> because the customer's contract has expired. As a condition of its
> registration, an electric service provider or a community choice aggregator
> shall post a bond or demonstrate insurance sufficient to cover those reentry
> fees. In the event that an electric service provider becomes insolvent and is
> unable to discharge its obligation to pay reentry fees, the fees shall be
> allocated to the returning customers.*

The Commission ordered the implementation of Section 394.25(e) for CCA programs and adopted the methods for calculating Financial Security Requirement (FSR) amounts and Re-Entry Fees[1] in Decision (D.)18-05-022, issued June 7, 2018. D.18-05-022 concluded that, to keep other utility customers indifferent to a mass involuntary return of CCA customers to the utility's procurement service, CCA Re-Entry Fees need to recover the incremental procurement and administration costs caused by the mass involuntary return.[2] The Decision adopted the Joint Utilities' methodology set forth in Exhibit JU-01, Appendix E of R.03-10-003, for calculating the incremental procurement costs with the changes necessary to be consistent with the Decision.[3] The Decision requires the CCA FSR to be calculated twice a year and reflect incremental administrative costs and incremental procurement costs for a six-month forward period, finding that "[a] six-month notice period allows sufficient time for a utility to adjust its procurement portfolio to accommodate additional bundled load due to returning CCA customers."[4] A minimum CCA financial security amount of $147,000 was also established.[5]

Pursuant to the Decision, SCE submitted two advice letters:

1. On August 15, 2018, SCE submitted Advice 3839-E, providing each active CCA within SCE's service area with the calculation for its respective FSR amount pursuant to D.18-05-022. SCE also affirmed in Advice 3839-E that "[t]he CCA financial security amounts will be recalculated on the regular bi-annual schedule adopted in D.18-05-022 and submitted with the Commission starting in November 2018." The Commission approved Advice 3839-E on September 14, 2018. However, the newly calculated FSRs were not required

---

[1]    Re-entry fees include a utility's administrative and procurement costs resulting from a mass involuntary return of a CCA's customers to the utility, and financial security amounts are intended to cover those potential costs.

[2]    *See* D.18-05-022, pp. 2-3, 4, 5-7, Finding of Fact (FOF) 1, 4, Conclusion of Law (COL) 2, Ordering Paragraphs 1, 5.

[3]    *See id.*, p. 7, OP 5, 8, 9.

[4]    *Id.*, FOF 5.

[5]    *See* D.18-05-022, Ordering Paragraph (OP) 9.

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 78 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 77
of 91

ADVICE 4541-E
(U 338-E)                                    - 3 -                          July 12, 2021

to be posted by the CCAs until the Commission approved the modifications to
SCE's Rule 23, implementing D.18-05-022.

2.  On August 15, 2018, SCE submitted Advice 3840-E to revise SCE's CCA
    Service Fees tariff schedule (Schedule CCA-SF) and SCE's CCA tariff rule
    (Rule 23) to implement the CCA FSR and Re-Entry Fees requirements in
    SCE's tariffs in compliance with D.18-05-022.  Advice 3840-E was approved
    in Resolution E-5059,[6] which "adopts the proposed tariff revisions that were
    specifically directed in Decision (D.) 18-05-022 and rejects proposed revisions
    that do not comply with the decision."[7]  Resolution E-5059 resolved numerous
    disputed issues on the tariff implementation of the CCA FSR and Re-Entry
    Fees, including cost responsibility for residual Re-Entry Fees (*i.e.,* those Re-
    Entry Fees not recovered from the defaulting CCA):

    > *P.U. Code Section 366.2(a)(4) supports this interpretation: 'The
    > implementation of a community choice aggregation program shall not
    > result in a shifting of costs between the customers of the community
    > choice aggregator and the bundled service customers of an electrical
    > corporation.'  If returning CCA customers avoid residual reentry costs
    > above the financial security requirement, this could shift costs to
    > bundled customers in violation of Section 366.2(a)(4). Therefore, we
    > conclude that P.U. Code Sections 366.2(a)(4), 394.25(e) and D.18-05-
    > 022 do not absolve involuntarily returned CCA customers from reentry
    > fees. CCA customers bear cost responsibility for reentry fees that the
    > CPUC deems necessary to avoid cost shifting.[8]*

On December 8, 2020, WCE submitted Advice 4-E pursuant to Resolution E-5059,
which directed CCAs to post new FSR instruments with the utilities within 60 days.[9]

On January 15, 2021, SCE submitted Advice 4394-E to implement the tariff revisions in
compliance with Resolution E-5059.[10]

The CCA FSR amounts were updated for the first time after being posted in SCE Advice
4494-E, submitted on May 10, 2021.[11]

---

[6]   Resolution E-5059 was adopted on October 8, 2020.
[7]   Resolution, p. 2.
[8]   Resolution E-5059, p. 10; *see also* p. 17 and Finding 9.
[9]   *See* Resolution E-5059, OP 11.
[10]  Energy Division approved SCE Advice 4394-E on February 26, 2021, with an effective date
      of January 15, 2021.
[11]  See SCE's Advice 4494-E, p. 2, explaining "[f]or the Resource Adequacy (RA) Cost Forecast, SCE is
      using the data that is published in the CPUC's 2019 Resource Adequacy Report (CPUC 2019 RA
      Report or "Report") as an estimate of the incremental cost of procuring RA for the involuntarily

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 79 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 78
of 91

ADVICE 4541-E
(U 338-E)                                           - 4 -                          July 12, 2021


## MASS INVOLUNTARY RETURN

On May 24, 2021, WCE declared a fiscal emergency and filed for Chapter 9 Bankruptcy protections.[12]  Shortly thereafter, on June 10, 2021 WCE submitted a written notice of deregistration as a CCA with the Commission.[13]  WCE's notice of deregistration served as advanced written notice of WCE's mass involuntary return of its CCA customers to SCE's procurement service.

Working closely with WCE, the Commission and the California Independent System Operator (CAISO) to coordinate an efficient return of WCE customers to SCE's procurement service, on June 11, 2021 SCE entered into a Load Transfer Agreement with WCE and CAISO pursuant to which SCE assumed Scheduling Coordination of WCE's load on June 15, 2021.  The WCE customer service accounts mass involuntarily returned to SCE totaled 113,337 and were switched to SCE's Bundled Portfolio Service effective on June 15, 2021.

The mass involuntary return impacted all accounts served by WCE on June 10, 2021, including those customer service accounts that had six-month advance notices to return to SCE's procurement service still pending (*i.e.*, that had not completed the full six months advance notice period).  Moreover, customers that switched to SCE's Transitional Bundled Service (TBS) on or after May 24, 2021 (the WCE bankruptcy filing date) were presumed to be fleeing an insolvent CCA and were therefore moved to SCE's Bundled Portfolio Service and included in the mass involuntarily return.[14]  WCE customers that switched to SCE's TBS prior to May 24, 2021 were not included in the mass involuntary return.[15]  Moreover, inactive service accounts, and WCE customer service accounts that exercised their opt-out right during their 60-day pre- or post-notification periods occurring prior to the mass involuntary return, were also not included.

---

returned CCA load. However, SCE notes that the Report's data is out of date and not consistent with current RA market pricing as reflected in the Commission's RA Market Price Benchmarks (MPBs) established pursuant to D.18-10-019 and D.19-10-001. Consistent with the CCA FSR methodology established in Decision (D.) 18-05-022 and Resolution E-5059, the CCA FSR should be calculated using the Commission's MPBs for RA and Renewable Portfolio Standards (RPS) because the MPBs reflect actual market transactions and prices. In the Provider of Last Resort (POLR) Rulemaking (R.21-03-011), SCE is seeking the Commission's concurrence to begin using the MPBs for the FSR calculations" (footnotes omitted).  *See also* SCE's Reply Comments filed on May 10, 2021 in R.21-03-011 (POLR OIR), at pp. 11-12.

[12]  WCE press release announcing its Chapter 9 Bankruptcy petition (https://westerncommunityenergy.com/press-release-wce-files-for-chapter-9-bankruptcy/)

[13]  *See* Western Community Energy Notice of Deregistration as a Community Choice Aggregator, submitted to Executive Director Rachel Peterson on June 10, 2021.

[14]  SCE saw a material uptick in the number of WCE customer requests to switch to SCE's procurement service on / after May 24, 2021.

[15]  SCE did not see a material uptick in uptick in the number of WCE customer requests to switch to SCE's procurement service prior to May 24, 2021.

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 80 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 79
of 91

ADVICE 4541-E
(U 338-E)                                          - 5 -                                          July 12, 2021


**RE-ENTRY FEE CALCULATION**

The Re-Entry Fee calculation is set forth in detail in Section X of SCE's Rule 23.  It is designed to enable a CCA to mitigate its incremental procurement cost exposure by giving the investor-owned electric utility (IOU) at least six months advance notice of a mass involuntary return.  This is because the Commission in D.18-05-022 found that six months is sufficient for the IOU to adjust its procurement portfolio to accommodate the additional bundled service load of the mass involuntarily returned CCA customers.[16]  In WCE's case, SCE received only five calendar days advance notice of the mass involuntary return, which is not sufficient to mitigate incremental procurement cost exposure.

SCE has calculated the Re-Entry Fees for WCE's mass involuntary return of 113,337 customer service accounts pursuant to and in compliance with SCE's Rule 23, Section X, and they total $14,715,892.  SCE will issue a written demand to WCE for payment of the Re-Entry Fees in conformance with Rule 23.  However, because WCE is insolvent, SCE expects to draw on WCE's posted FSR and seek, in a subsequent Tier 2 advice filing, Commission authorization of a ratemaking mechanism to recover the residual Re-Entry Fees from WCE's mass involuntarily returned customer service accounts.  If, at the conclusion of WCE's bankruptcy proceeding, SCE recovers any Re-Entry Fee monies beyond WCE's posted FSR amount, those monies will be refunded to the mass involuntarily returned customer service accounts using a methodology approved by the Commission.

The Re-Entry Fee calculation uses the 2021 forecasted Market Price Benchmarks (MPBs) for Resource Adequacy (RA) and Renewable Portfolio Service (RPS) attributes established by the Commission pursuant to D.18-10-019 and D.19-10-001, issued in the Power Charge Indifference Adjustment (PCIA) Rulemaking.[17]  Use of these up-to-date MPBs is appropriate and necessary to avoid shifting the costs caused by WCE's mass involuntary return to other SCE customers in violation of California law.[18]  It is appropriate to use the PCIA MPBs because the Re-Entry Fee calculation methodology approved by the Commission expressly contemplates the use of up-to-date values when they are available.  Specifically, SCE's Rule 23, Section X, expressly authorizes the use of a "forward quote" of RA prices, or "robust index, forward quote, or durable methodology for regularly estimating the value of a REC [Renewable Energy Credit]" when they are available.[19]  The PCIA MPBs satisfy these criteria.  The Commission forecasts and trues-up the PCIA MPBs annually based on the actual RA and RPS transactions of all jurisdictional load-serving entities (LSEs) in California.  As such, they are robust indices or forward quotes of RA and RPS compliance attributes, established using a durable methodology for estimating the value of these attributes.

---

[16]  *See* fn. 4, *supra*.
[17]  Rulemaking (R.) 17-06-026.
[18]  *See e.g.*, Public Utilities Code Sections 394.25(e), 366.2 (a)(4), 366(d)(1), 366.3 and 365.2.
[19]  *See* SCE's Rule 23, Section X, Sheets 63 and 64.

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 81 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 80
of 91

ADVICE 4541-E
(U 338-E)                                    - 6 -                         July 12, 2021

Use of the PCIA MPBs is also appropriate because they are the values the bundled service customers "pay" to CCA customers upon their departure from SCE's procurement service.  The PCIA MPBs establish the market value of SCE's PCIA portfolio of resources, which bundled service customers are obligated to pay under the PCIA methodology. CCA customers pay their pro-rata vintaged share of the "above-market" costs of SCE's PCIA portfolio of resources through the PCIA rate.  The RA and RPS resources need to be consistently valued to avoid cost shifting.  If they are valued at market for CCA customers upon their departure from SCE's procurement service and valued below market for CCA customers upon their return to SCE's procurement service, that will cause unlawful cost shifting.[20]

SCE attaches hereto a confidential version of the Re-Entry Fee calculation for the Commission (Attachment A), the associated confidentiality declaration (Attachment B), and a public, redacted version (Attachment C), which redacts the proprietary Intercontinental Exchange (ICE) forward energy prices and the WCE total peak load and total energy forecasts.

## CONFIDENTIALITY PROTECTION

Attachment A to this advice letter contains confidential material that is subject to the protections adopted in D.16-08-024 and D.06-06-066.  Attachment A is submitted to the Commission confidentially pursuant to D.16-08-024 and D.06-06-066.  This declaration is submitted as Attachment B to this advice letter.

Attachment A is removed from the public version of this advice letter. SCE is providing by electronic means to WCE and the Commission a copy of the confidential Re-Entry Fee calculation.

## TIER DESIGNATION

Pursuant to Rule 23, Section W.4.a, this advice letter is submitted with a Tier 1 designation.

This advice letter will not increase any rate or change, cause the withdrawal of service, or conflict with any other schedule or rule.

---

[20]   SCE also notes that even the up-to-date 2021 forecasted PCIA MPBs for RA do not reflect the higher prices of RA SCE is paying in the current market.

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 82 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 81
of 91

ADVICE 4541-E
(U 338-E)                                    - 7 -                           July 12, 2021

**EFFECTIVE DATE**

This Tier 1 advice letter is effective upon submittal pending disposition.

**NOTICE**

Anyone wishing to protest this advice letter may do so by letter via U.S. Mail, facsimile,
or electronically, any of which must be received no later than 20 days after the date of
this advice letter.  Protests should be submitted to:

> CPUC, Energy Division
> Attention:  Tariff Unit
> 505 Van Ness Avenue
> San Francisco, California  94102
> E-mail:  EDTariffUnit@cpuc.ca.gov

Copies should also be mailed to the attention of the Director, Energy Division,
Room 4004 (same address above).

In addition, protests and all other correspondence regarding this advice letter should
also be sent by letter and transmitted via facsimile or electronically to the attention of:

> Shinjini C. Menon
> Managing Director, State Regulatory Operations
> Southern California Edison Company
> 8631 Rush Street
> Rosemead, California 91770
> Telephone (626) 302-3377
> Facsimile:  (626) 302-6396
> E-mail:  AdviceTariffManager@sce.com

> Tara S. Kaushik
> Managing Director, Regulatory Relations
> c/o Karyn Gansecki
> Southern California Edison Company
> 601 Van Ness Avenue, Suite 2030
> San Francisco, California 94102
> Facsimile:  (415) 929-5544
> E-mail:  Karyn.Gansecki@sce.com

There are no restrictions on who may submit a protest, but the protest shall set forth
specifically the grounds upon which it is based and must be received by the deadline
shown above.

In accordance with General Rule 4 of GO 96-B, SCE is serving copies of this Advice
Letter to the interested parties on SCE's GO 96-B, R.03-10-003, R.12-06-013,
R.17-06-026, R.16-02-007, and R.17-09-020 service lists. Address change requests to

Case 6:21-bk-12821-SY   Doc 224-6   Filed 12/01/21   Entered 12/01/21 11:37:49   Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21   Page 83 of 92

Case 6:21-bk-12821-SY   Claim 21-1   Filed 09/30/21   Desc Main Document   Page 82
of 91

ADVICE 4541-E
(U 338-E)                              - 8 -                              July 12, 2021

the GO 96-B service list should be directed by electronic mail to
AdviceTariffManager@sce.com or (626) 302-4039. For changes to all other service
lists, please contact the Commission's Process Office at (415) 703-2021 or by electronic
mail at Process_Office@cpuc.ca.gov.

Further, in accordance with Public Utilities Code Section 491, notice to the public is
hereby given by submitting and keeping the Advice Letter at SCE's corporate
headquarters.  To view other SCE advice letters submitted with the Commission, log on
to SCE's web site at https://www.sce.com/wps/portal/home/regulatory/advice-letters.

For questions, please contact Diana Valle at (626) 302-5666 or by electronic mail at
Diana.Valle@sce.com.

**Southern California Edison Company**

/s/ Shinjini C. Menon
Shinjini C. Menon

SCM:dv:jm
Enclosures



# ADVICE LETTER SUMMARY
## ENERGY UTILITY



| MUST BE COMPLETED BY UTILITY (Attach additional pages as needed) |
|---|

**Company name/CPUC Utility No.:** Southern California Edison Company (U 338-E)

**Utility type:**
- [x] ELC
- [ ] GAS
- [ ] WATER
- [ ] PLC
- [ ] HEAT

**Contact Person:** Darrah Morgan
**Phone #:** (626) 302-2086
**E-mail:** AdviceTariffManager@sce.com
**E-mail Disposition Notice to:** AdviceTariffManager@sce.com

| EXPLANATION OF UTILITY TYPE | (Date Submitted / Received Stamp by CPUC) |
|---|---|
| ELC = Electric    GAS = Gas    WATER = Water<br>PLC = Pipeline    HEAT = Heat | |

**Advice Letter (AL) #:** 4541-E                    **Tier Designation:** 1

**Subject of AL:**
Notice of Western Community Energy's Mass Involuntary Return its Community Choice Aggregator Customers and Re-Entry Fee Calculation

**Keywords (choose from CPUC listing):** Compliance

**AL Type:** [ ] Monthly  [ ] Quarterly  [ ] Annual  [x] One-Time  [ ] Other:

If AL submitted in compliance with a Commission order, indicate relevant Decision/Resolution #:

---

Does AL replace a withdrawn or rejected AL? If so, identify the prior AL:

Summarize differences between the AL and the prior withdrawn or rejected AL:

Confidential treatment requested?  [x] Yes  [ ] No

> If yes, specification of confidential information: See Attachment B, Confidentiality Declaration
> Confidential information will be made available to appropriate parties who execute a nondisclosure agreement. Name and contact information to request nondisclosure agreement/ access to confidential information:

Resolution required?  [ ] Yes  [x] No

Requested effective date: 7/12/21                    No. of tariff sheets: -0-

Estimated system annual revenue effect (%):

Estimated system average rate effect (%):

When rates are affected by AL, include attachment in AL showing average rate effects on customer classes (residential, small commercial, large C/I, agricultural, lighting).

Tariff schedules affected:  None

Service affected and changes proposed[1]:

Pending advice letters that revise the same tariff sheets:  None

---

[1]Discuss in AL if more space is needed.

Clear Form

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 85 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 84 of 91

**Protests and all other correspondence regarding this AL are due no later than 20 days after the date of this submittal, unless otherwise authorized by the Commission, and shall be sent to:**

CPUC, Energy Division
Attention: Tariff Unit
505 Van Ness Avenue
San Francisco, CA 94102
Email: EDTariffUnit@cpuc.ca.gov

Name: Shinjini C. Menon
Title: Managing Director, State Regulatory Operations
Utility Name: Southern California Edison Company
Address: 8631 Rush Street
City: Rosemead
State: California                          Zip: 91770
Telephone (xxx) xxx-xxxx: (626) 302-3377
Facsimile (xxx) xxx-xxxx: (626) 302-6396
Email: advicetariffmanager@sce.com

Name: Tara S. Kaushik  c/o Karyn Gansecki
Title: Managing Director,  Regulatory Relations
Utility Name: Southern California Edison Company
Address: 601 Van Ness Avenue, Suite 2030
City: San Francisco
State: California                          Zip: 94102
Telephone (xxx) xxx-xxxx:
Facsimile (xxx) xxx-xxxx: (415) 929-5544
Email: karyn.gansecki@sce.com

Clear Form

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 86 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 85 of 91

## ENERGY Advice Letter Keywords

| | | |
|---|---|---|
| Affiliate | Direct Access | Preliminary Statement |
| Agreements | Disconnect Service | Procurement |
| Agriculture | ECAC / Energy Cost Adjustment | Qualifying Facility |
| Avoided Cost | EOR / Enhanced Oil Recovery | Rebates |
| Balancing Account | Energy Charge | Refunds |
| Baseline | Energy Efficiency | Reliability |
| Bilingual | Establish Service | Re-MAT/Bio-MAT |
| Billings | Expand Service Area | Revenue Allocation |
| Bioenergy | Forms | Rule 21 |
| Brokerage Fees | Franchise Fee / User Tax | Rules |
| CARE | G.O. 131-D | Section 851 |
| CPUC Reimbursement Fee | GRC / General Rate Case | Self Generation |
| Capacity | Hazardous Waste | Service Area Map |
| Cogeneration | Increase Rates | Service Outage |
| Compliance | Interruptible Service | Solar |
| Conditions of Service | Interutility Transportation | Standby Service |
| Connection | LIEE / Low-Income Energy Efficiency | Storage |
| Conservation | LIRA / Low-Income Ratepayer Assistance | Street Lights |
| Consolidate Tariffs | Late Payment Charge | Surcharges |
| Contracts | Line Extensions | Tariffs |
| Core | Memorandum Account | Taxes |
| Credit | Metered Energy Efficiency | Text Changes |
| Curtailable Service | Metering | Transformer |
| Customer Charge | Mobile Home Parks | Transition Cost |
| Customer Owned Generation | Name Change | Transmission Lines |
| Decrease Rates | Non-Core | Transportation Electrification |
| Demand Charge | Non-firm Service Contracts | Transportation Rates |
| Demand Side Fund | Nuclear | Undergrounding |
| Demand Side Management | Oil Pipelines | Voltage Discount |
| Demand Side Response | PBR / Performance Based Ratemaking | Wind Power |
| Deposits | Portfolio | Withdrawal of Service |
| Depreciation | Power Lines | |

Clear Form

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 87 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 86
of 91

# ATTACHMENT A

# Confidential Re-Entry Fee Calculation [OMITTED IN THE PUBLIC VERSION OF THIS ADVICE LETTER SUBMITTAL]

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 88 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 87
of 91

# ATTACHMENT B

# Confidentiality Declaration

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 89 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 88
of 91

## DECLARATION OF

## NATALIA WOODWARD

## REGARDING THE CONFIDENTIALITY OF CERTAIN DATA

I, Natalia Woodward declare and state:

1.    I am a Vice President and Treasurer at Southern California Edison Company (SCE) with authority to sign this declaration. I have responsibility for overseeing and reviewing the Western Community Energy (WCE), Community Choice Aggregation (CCA) Re-entry Fee calculation.

2. I am making this declaration in accordance with the instructions set forth in Decision D.06-06-066 (as modified by D.07-05-032), which governs the submission of confidential, market-sensitive procurement information to the Commission, and Decisions 16-08-024 and 17-09-023, which govern the submission of all other confidential documents to the Commission.

3.    I have personal knowledge of the facts and representations herein and, if called upon to testify, could and would do so, except for those facts expressly stated to be based upon information and belief, and as to those matters, I believe them to be true.

4.    Listed below are the data for which SCE is seeking confidential protection and the basis for SCE's confidentiality request.

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 90 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 89
of 91

| Location of Confidential Data | Description of Information that is Confidential | Basis for SCE's Confidentiality Claim | Limitations on Confidentiality Specified in Matrix |
|---|---|---|---|
| Confidential WCE Reentry Fee _Calculation Sheet July 12, 2021 –ED Version.<br><br>Data shaded in grey. | Average On- and Off- Peak Forward Prices from Intercontinental Exchange (ICE). | The Average On- and Off-Peak Prices are proprietary to ICE and available only through a paid subscription with ICE.<br><br>SCE has obtained the written consent of ICE to provide its proprietary price data to the CPUC solely for purposes of verifying the accuracy of the WCE Reentry Fee calculation and its compliance with D.18-05-022. | N/A. |
| Confidential WCE Reentry Fee _Calculation Sheet July 12, 2021 –ED Version.<br><br>Data shaded in grey. | WCE Forecast Monthly On- and Off-Peak Energy and Peak Demand. | D.06-06-066 as modified by D.07-05-032), Matrix Appendix 2 Categories III.B and III.C (which protects similar ESP data). | Front three years of forecast data is confidential. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 12, 2021 at Rosemead, California.

*/s/ Natalia Woodward*

Natalia Woodward

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 91 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 90
of 91

# ATTACHMENT C

# Public Redacted Re-Entry Fee Calculation

Case 6:21-bk-12821-SY    Doc 224-6    Filed 12/01/21    Entered 12/01/21 11:37:49    Desc
Exhibit 4 to Strabo Declaration - SCE Claim 21    Page 92 of 92

Case 6:21-bk-12821-SY    Claim 21-1    Filed 09/30/21    Desc Main Document    Page 91
of 91

**CCA Re-Entry Fee Requirement**
**WESTERN COMMUNITY ENERGY**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Average On-Peak and Off-Peak Forward Price Source | | ICE | | | | |
| 2 | Calculation Month (M) | | June-21 | | | | |
| | **3** | | **4** | **5** | **6** | **7** | **8** |
| | Trading Day Average for 6 Months Forward Strip From Month of (M-1) | | Average On-Peak Forward Price | Average Off-Peak Forward Price | CCA Load Forecast On-Peak (MWh) | CCA Load Forecast Off-Peak (MWh) | CCA Monthly Peak Demand (MW) |
| 3 | Jul-21 | | | | | | |
| 4 | Aug-21 | | | | | | |
| 5 | Sep-21 | | | | | | |
| 6 | Oct-21 | | | | | | |
| 7 | Nov-21 | | | | | | |
| 8 | Dec-21 | | | | | | |
| 9 | Jan-22 | | | | | | |
| 10 | Feb-22 | | N/A[1] | | | | |
| 11 | Mar-22 | | | | | | |
| 12 | Apr-22 | | | | | | |
| 13 | May-22 | | | | | | |
| 14 | Jun-22 | | | | | | |
| 15 | Forecast CCA Number of Service Accounts (SA) | | 113,337 | SA | | | |
| 16 | Customer Re-Entry Fee | | $   0.50 | Per SA | | | |
| 17 | IOU-Specific Line Loss Factor | | 105% | | | | |
| 18 | IOU System Average Bundled Service Generation Rate | | $   86.00 | Per MWh | | | |
| 19 | Prior Period's CCA FSR | | 147,000 | | | | |
| 20 | Minimum FSR | | $   147,000 | | | | |

**RPS Cost Forecast Inputs**

| | | | | |
|---|---|---|---|---|
| 21 | REC Value | $   14.49 | Per MWh |
| 22 | RPS Annual Target Percentage | 36% | |

**RA Cost Forecast Inputs**

| | | | | |
|---|---|---|---|---|
| 23 | RA Planning Reserve Margin (PRM) Requirement | 115% | |
| 24 | Local RA Volume-Weighted Average Price (VWAP) | $6.37 | Per kW-mo |
| 25 | System RA Volume-Weighted Average Price (VWAP) | $6.10 | Per kW-mo |
| 26 | Annual Peak Demand in TAC Area | 23,145 | MW |
| 27 | Annual Local Capacity Requirement (LCR) in TAC Area | 8,423 | MW |

**Load Forecast Calculation** — Load Forecast Calculation Formulas

| | | | | |
|---|---|---|---|---|
| 28 | CCA Usage Forecast | 877,712 | MWh | Sum of Columns 6, 7 |
| 29 | CCA Annual Peak Demand | 481.79 | MW | Max of Column 8 (Lines 3-14) |
| 30 | CCA Average Peak Demand | 372.97 | MW | Average of Column 8 (Lines 3-8) |

**RA Forecast Calculation** — RA Forecast Calculation Formulas

| | | | | |
|---|---|---|---|---|
| 31 | CCA Peak Load Share (based on CCA Annual Peak Demand) | 2.08% | | Line 29 ÷ 26 |
| 32 | CCA Local RA Requirement | 175.33 | MW | Line 31 x 27 |
| 33 | CCA Net System RA Requirement | 253.58 | MW | Line (30 x 23) - Line 32 |

**Incremental Cost Calculation** — Total — Incremental Cost Calculation Formulas

| | | | | |
|---|---|---|---|---|
| 34 | Energy Cost Forecast (incl. IOU-Specific Line Loss Factor) | $   69,372,520 | | [Sum Product of Columns 4, 5, 6, 7] x Line 17 |
| 35 | RPS Cost Forecast  (incl. IOU-Specifc Line Loss Factor) | $   4,787,676 | | Line 21 x 22 x 28 x 17 |
| 36 | RA Cost Forecast | $   15,982,248 | | [(Line 24 x 32) + Line (25 x 33)]  x  [# of forward months with data] x 1000 |
| 37 | Forecast Cost of New Procurement | $   90,142,444 | | Line 34 + 35 + 36 |
| 38 | Forecast Revenues (Total Revenues Collected from Returned CCA Customers through the IOU System Average Bundled Service Generation Rate) | $   75,483,221 | | Line 18 x 28 |
| 39 | Incremental Procurement Cost Exposure (Forecast Cost of New Procurement Less Forecast Revenues) | $   14,659,223 | | Line 37 - 38 |
| 40 | Administrative Costs | $   56,669 | | Line 15 x 16 |

**Re-entry Fee Requirement Calculation** — FSR Calculation Formulas

| | | | | |
|---|---|---|---|---|
| 41 | CCA Re-entry Fee Requirement (REF) under Section 394.25(e) | $   14,715,892 | | Max [Line 39 + 40, 0] |
| 42 | Final REF | $   14,715,892 | | Max [Line 41 , Line 20] |
| 43 | Prior Period's CCA FSR | $   147,000.00 | | Line 19 |
| 44 | Change Required to CCA FSR | $   14,568,892 | | Line 42 - 43 if 10% and $20,000 deadband threshold is exceeded |

| | |
|---|---|
| Confidential Input Cell | Non-IOU Specific Input Cell |
| CCA Specific Input Cell | IOU Specific Input Cell |

1. While CCA Monthly Peak demand for 12 months is used to estimate monthly Local RA requirement, only monthls 1-6 are used to
calculate System RA requirement and Forecast Cost of New Procurement.