1   **WEILAND GOLDEN GOODRICH LLP**
    David M. Goodrich, State Bar No. 208675
2   dgoodrich@wgllp.com
    Ryan W. Beall, State Bar No. 313774
3   rbeall@wgllp.com
    650 Town Center Drive, Suite 600
4   Costa Mesa, California 92626
    Telephone    714-966-1000
5   Facsimile    714-966-1002

6   Counsel for Debtor
    Western Community Energy
7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                          **RIVERSIDE DIVISION**

11  In re                                    Case No. 6:21-bk-12821-SY

12  WESTERN COMMUNITY ENERGY,                Chapter 9

13                     Debtor.              **DEBTOR'S MOTION FOR AUTHORITY TO
                                            ASSUME AND ASSIGN NEM**
14                                          **CONTRACTS PURSUANT TO SECTION
                                            365 OF THE BANKRUPTCY CODE;**
15                                          **MEMORANDUM OF POINTS AND
                                            AUTHORITIES AND DECLARATION OF**
16                                          **ANDREW RUIZ IN SUPPORT THEREOF**

17                                          Hearing Date, Time and Location:
                                            Date:    May 12, 2022
18                                          Time:    1:30 p.m.
                                            Place:   3420 Twelfth Street
19                                                   Courtroom 302
                                                     Riverside, CA 92501
20

21

22

23

24

25

26

27

28

*Weiland Golden Goodrich LLP*
*650 Town Center Drive, Suite 600*
*Costa Mesa, California 92626*
*Tel 714-966-1000 · Fax 714-966-1002*

1354453.1

**TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE, AND ALL OTHER INTERESTED PARTIES:**

Western Community Energy ("Debtor"), the chapter 9 debtor in the above-captioned bankruptcy case hereby files this *Motion For Authority to Assume and Assign NEM Contracts Pursuant to Section 365 of the Bankruptcy Code* ("Motion") seeking approval to assume and assign NEM Contracts (defined herein) to Southern California Edison Company ("SCE").[1]  The Motion is based upon the notice of motion filed herewith, the declaration of Andrew Ruiz ("Ruiz Dec."), the record in this case, all judicially noticeable facts and all evidence, arguments and representations made at or prior to the hearing on the Motion.

## I.    INTRODUCTION

The Debtor seeks the Court's authority to assume and assign NEM Contracts (defined herein) to SCE as part of a settlement and release agreement ("Agreement") entered into between the Debtor and SCE to settle SCE's claims against the Debtor and resolve litigation between the Debtor and SCE.

The motion to approve the Agreement was filed by the Debtor on January 20, 2022 and approved by the Court on February 15, 2022.  *See* Dkt. Nos. 243 and 249[2]. The assumption and assignment of the NEM Contracts by the Debtor to SCE are part of the Agreement. The assumption and assignment of the NEM Contracts will allow the credits under the NEM Contracts with the Debtor's former customers to be honored. Hence, the Court should grant the Motion.

---

[1] The Debtor only consents to the Court exercising jurisdiction under 11 U.S.C. § 365 to the extent necessary to grant the relief sought in this Motion and does not consent to any other exercise of authority over the Debtor's assets and financial affairs.

[2] The Debtor request the Court take judicial notice of the filing dates of certain pleadings on its docket as well as its orders.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

2    MOTION FOR AUTHORITY TO ASSUME
AND ASSIGN NEM CONTRACTS

## II.    **STATEMENT OF FACTS**

The Debtor filed a voluntary chapter 9 petition on May 24, 2021 ("Petition Date"). *See* Dkt. No. 1.  The Debtor ceased providing services to its customers as of June 14, 2021.

The Debtor is a party to Net Energy Metering contracts ("NEM Contracts")[3] which are unexpired contracts between the Debtor and its customers.  Under NEM Contracts, the Debtor agreed to provide and sell electricity to its customers and receive and purchase energy from its customers, on a "net metering" basis. *See* Ruiz Dec.  Under net metering, customers that use less energy than they generate on a periodic basis accrue credits with the Debtor.  There are approximately 4,754 former NEM customers owed balances under NEM Contracts.  *Id.*  The aggregate amount owed to all NEM customers by the Debtor is approximately $692,433.  *Id.*

On January 20, 2022, the Debtor filed a motion to approve a settlement agreement between the Debtor and SCE ("Agreement").  *See* Dkt. No. 243.  As part of the Agreement, the Debtor agreed to assume and assign the NEM Contracts to SCE and make a lump sum payment to SCE for all cure amounts necessary under 11 U.S.C. § 365(b) to assume and assign the NEM Contracts, including any NEM credits owing under the NEM Contracts.  *See* Ruiz Dec. at ¶ 5; *See* **Exhibit 1** hereto.  Under the Agreement, SCE will distribute the cure amounts to each NEM Contract counterparty upon approval of the assumption and assignment of the NEM Contracts and the Debtor's payment to SCE of the lump sum cure amount.  *Id.*  On February 15, 2022, the Court granted the motion to approve the Agreement.  *See* Dkt. 249.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

---

[3] NEM Contracts are defined in the settlement documents entered into between WCE and SCE and nothing in this motion shall change the definition of NEM Contracts as contemplated by such documents.

MOTION FOR AUTHORITY TO ASSUME
AND ASSIGN NEM CONTRACTS

**III.    DEBTOR'S LIMITED CONSENT FOR COURT'S AUTHORITY TO APPROVE**

**MOTION**

Section 904 states provides:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—
> (1) any of the political or governmental powers of the debtor;
> (2) any of the property or revenues of the debtor; or
> (3) the debtor's use or enjoyment of any income producing property.

11 U.S.C. § 904.

Section 365 is specifically incorporated in Chapter 9 by 11 U.S.C. § 901. With respect to §904, the Debtor consents to the Court's jurisdiction for the limited purpose of granting the Motion and authorizing the assumption and assignment of the NEM Contracts from the Debtor to SCE.

**IV.    ASSUMPTION AND ASSIGNMENT OF THE NEM CONTRACTS IS**

**APPROPRIATE PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE**

Debtors are afforded wide discretion in assuming executory contracts and leases under 11 U.S.C. § 365. This is especially so in chapter 9 cases where courts have granted wide latitude to debtors the power to reject or assume and assign executory contracts including labor contracts. *See In re City of Stockton, California*, 526 B.R. 35 (Bankr. E.D. Cal. 2015).

The Supreme Court has held that the proper standard for the court to use in determining whether to approve the assumption or rejection of a lease or executory contract is the "business judgment test." *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 318 U.S. 523, 550 (1943); *see also In re Huang*, 23 B.R. 798, 800 (9th Cir. 1982). The business judgment rule is appropriate in chapter 9 bankruptcies absent the necessity of a higher standard for, for example, rejection of collection bargaining agreements. *In re City of Stockton, California*, 526 B.R. at 59. The assumption or rejection of a lease or executory contract is appropriate if it will benefit the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  bankruptcy estate.  *See In re Great Northwest Recreation Center, Inc.*, 74 B.R. 846, 853

2  (Bankr. D. Mont. 1987) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d

3  1303, 1309-10 (5th Cir. 1985); *see also Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R.

4  856, 866 (M.D. Fla. 2000).

5          A decision whether to assume or reject under § 365 is judged by the "business

6  judgment test," which generally requires the trustee or debtor acted in good faith and with

7  the honest belief that such actions were in the best interests of the estate.  *See In re*

8  *Pomona Valley Medical Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007).  The Court "need

9  engage in 'only a cursory review of the [movant]'s decision…'" and should approve the

10  decision unless it finds that the decision is "so manifestly unreasonable that it could not be

11  based on sound business judgment, but only on bad faith, or whim or caprice."  *Id.*

12          Pursuant to Section 365(f)(2) of the Bankruptcy Code, a debtor may assign the

13  debtor's executory contracts and unexpired leases, provided he or she first assumes

14  those agreements in accordance with Section 365(b)(1), and provides adequate

15  assurance of future performance by the assignee. Section 365(b)(1) of the Bankruptcy

16  Code, in turn, requires a debtor to: (a) cure any existing defaults under such agreements;

17  (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss

18  resulting from the defaults; and (c) provide adequate assurance of future performance

19  under the contract or lease. 11 U.S.C. § 365(b)(1); *In re AEG Acquisition Corp.*, 127 B.R.

20  34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (B.A.P. 9th Cir. 1993).

21          The Debtor believes that there is a valid business justification for the assumption

22  and assignment of the NEM Contracts to SCE. The assumption and assignment of the

23  NEM Contracts is part and parcel to Agreement entered into between SCE and the

24  Debtor. Further, the transfer of NEM Contracts to SCE will eliminate former NEM

25  customers as creditors of the Debtor, each holding small claims, and avoid the cost and

26  delay associated with serving the plan and disclosure statement on 4,754 creditors and

27  gathering ballots from the same amount of creditors.  The Debtor's former NEM

28  customers will benefit from the assumption and assignment of the NEM Contracts

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1354453.1

5

MOTION FOR AUTHORITY TO ASSUME
AND ASSIGN NEM CONTRACTS

1 because each NEM customer's credit will be honored.  Thus, there is a business

2 justification for the assumption and assignation of the NEM Contracts to SCE.  As such,

3 the Court should allow the Debtor to assume and assign the NEM Contracts pursuant to

4 11 U.S.C. § 365.

5        In order to assume the NEM Contracts, the Debtor has agreed to make a lump sum

6 payment to SCE equal to the cure amount required under 11 U.S.C. § 365(b)(1).  The

7 Debtor estimates that the amount needed for the cure for all of the NEM Contracts is

8 approximately $692,433. The Debtor is unaware of any other non-debtor parties to the

9 NEM Contracts that will suffer pecuniary loss resulting from the defaults. The Debtor will

10 provide a notice of hearing on the Motion to all NEM Contract counterparties and a letter

11 that provides the proposed amount needed to cure all defaults or other obligations arising

12 under the NEM Contract, including any credit owed to the customer (the "Cure Amount").

13 The counterparty will have an opportunity to object and the Debtor and counterparty will

14 either resolve the dispute, have the Court resolve the dispute, or remove the contract from

15 the Motion and not assume and assign that particular NEM Contract.  If the counterparty

16 does not object, it will be bound by the Cure Amount.  The Debtor will be responsible for

17 all Cure Amounts for the NEM Contracts.  Upon approval of the Motion, the Debtor will

18 provide the Cure Amounts in a lump sum payment to SCE, who will distribute the Cure

19 Amount directly to each NEM Contract counterparty.  The Cure Amounts will be paid in full

20 satisfaction of all defaults or obligations that arise under the assumed and assigned NEM

21 Contracts before the date of the order approving the Motion.  SCE shall have no liability

22 for the Cure Amounts other than distribution of the Cure Amounts to the NEM Contract

23 counterparties in the manner described in this Motion.

24

25 **V.    CONCLUSION**

26        Based upon the foregoing, the Trustee respectfully requests that the Court enter an

27 order:

28        1.    Granting the Motion;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

2.     Approving the assumption of the NEM Contracts by the Debtor;

3.     Approving the assignment of the NEM Contracts by the Debtor to SCE;

4.     Finding the notice of the Motion was appropriate in the particular circumstances and no further notice of the Motion is needed;

5.     Finding the Debtor is responsible for all Cure Amounts necessary under 11. U.S.C. § 365(b) to cure defaults or otherwise perform any obligations, in each case, arising under the NEM Contracts before the date of this Order, which Cure Amounts shall be paid by the Debtor to SCE to be distributed to NEM Contract counterparties;

6.     Finding the Cure Amount for each NEM Contract is the amount provided in the letter accompanying the notice of hearing on the Motion that was served on each NEM Contract counterparty;

7.     Finding the notice of the Cure Amounts was appropriate in the particular circumstances and no further notice of the Cure Amounts is needed; and

8.     Finding that SCE shall have no liability for the Cure Amounts other than distribution of the Cure Amounts to the NEM Contract counterparties in the manner described in the Motion; and

9.     For such other and further relief as the Court deems just and proper.

Dated:  April 18, 2022          WEILAND GOLDEN GOODRICH LLP

By:  */s/ David M. Goodrich*
     DAVID M. GOODRICH
     RYAN W. BEALL
     Counsel for Chapter 9 Debtor
     Western Community Energy

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

## DECLARATION OF ANDREW RUIZ

I, Andrew Ruiz, declare as follows:

1.      I am Chief Financial Officer of Western Riverside Council of Governments, Managing Agent of Western Community Energy ("Debtor"), the chapter 9 debtor in the bankruptcy case number 6:21-bk-12821-SY. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Debtor's Motion for Authority to Assume and Assign NEM Contracts Pursuant to Section 365 of the Bankruptcy Code* (the "Motion"). Any term not specifically defined herein shall have the meaning set forth in the Motion.

2.      Under the Net Energy Metering contracts, Western Community Energy agreed to provide and sell electricity to its customers and receive and purchase energy on a "net metering" basis.

3.      There are approximately 4,754 former NEM customers that are owed balances under NEM Contracts.

4.      The aggregate amount owed to all NEM customers by the Debtor is approximately $692,433.

5.      As part of the Agreement between Debtor and SCE, the Debtor agreed to assume and assign the NEM Contracts to SCE and make a lump sum payment to SCE for all cure amounts necessary under 11 U.S.C. § 365(b) to assume and assign the NEM Contracts, including any NEM credits owing under the NEM Contracts. A true and correct copy of the Agreement between the Debtor and SCE is attached hereto as **Exhibit 1**.

///

///

///

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

6.      Under the Agreement, SCE will distribute the cure amounts to each NEM Contract counterparty upon approval of the assumption and assignment of the NEM Contracts and the Debtor's payment to SCE of the lump sum cure amount.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of April, 2022 at Riverside, California.

_____
Andrew Ruiz

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1354453.1

MOTION FOR AUTHORITY TO ASSUME
AND ASSIGN NEM CONTRACTS

# EXHIBIT 1

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

## SETTLEMENT AGREEMENT
## AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "**Agreement**") is made, executed and entered into effective as of January 20, 2022 (the "**Execution Date**"), by and between:

Western Community Energy, a California joint powers authority and the debtor ("**Debtor**") in the chapter 9 bankruptcy case pending before the United States Bankruptcy Court for the Central District of California, Riverside Division (the "**Bankruptcy Court**"), as Bankruptcy Case No. 6:21-bk-12821-SY (the "**Bankruptcy Case**"); and

Southern California Edison Company, a California corporation ("**SCE**");

(each, individually, a "**Party**", and all, collectively, the "**Parties**"), with respect to the following facts, circumstances, understandings and beliefs (collectively, "**Recitals**"):

### R E C I T A L S :

**A.**    Section 1.1 sets forth the words and phrases which, when capitalized and used in this Agreement, have specifically assigned meanings for purposes of this Agreement.

**B.**    On May 28, 2021, the Debtor filed a complaint for declaratory relief and an injunction against SCE (the "**Debtor's Claims**") initiating Adversary Proceeding No. 6:21-ap-01068-SY  (the "**SCE Adversary Proceeding**").

**C.**    SCE disputes the Debtor's Claims.

**D.**    SCE filed proofs of claim in the Debtor's Bankruptcy Case - Claim 18, Claim 19, Claim 20, and Claim 21 (as amended, the "**SCE Claims**") against Debtor, including Claims that are secured and administrative in nature.  SCE asserts that some of the SCE Claims are secured by setoff or recoupment against amounts collected from WCE's former customers or remitted to WCE and held in a lockbox account that is among the RCB Bank Accounts (defined below).

**E.**    Debtor disputes the SCE Claims and the secured and administrate nature of the SCE Claims.

**F.**    On June 14, 2021, SCE filed a motion in the Bankruptcy Case (the "**SCE Relief From Stay Motion**") seeking relief from the automatic stay to exercise setoff and recoupment rights securing the SCE Claims.

**G.**    Barclays Bank PLC ("**Barclays**") purports to hold various Claims ("**Barclays Claims**") against Debtor, some of which are the subject of the litigation filed by Barclays as Adversary Proceeding No: 6:21-ap-01128 SY (the "**Barclays Adversary Proceeding**"), and Barclays purports to hold a duly perfected first priority Lien (the "**Barclays Lien**") against all assets of Debtor including Debtor's accounts receivable and all cash on deposit in Debtor's bank accounts ("**RCB Bank Accounts**") held at River City Bank ("**RCB**").

EXHIBIT 1    PAGE 10

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**H.**      Debtor and SCE dispute the Barclays Claims and the Barclays Lien.

**I.**      Debtor and Barclays entered into a settlement agreement with each other dated December 16, 2021 (the "**Barclays Agreement**"), pursuant to which Debtor and Barclays have agreed to settle all of their disputes against each other, including those relating to the Barclays Claims and Barclays Lien.  On December 16, 2021, the Debtor file a motion to approve the Barclays Agreement and the Bankruptcy Court approved the Barclays Agreement on January 6, 2022 [Docket No. 236].

**K.**      Subject to Bankruptcy Court approval, as discussed in Article 2, Debtor and SCE desire to once and forever compromise, settle and release, on the terms and conditions set forth in this Agreement, each and all of their respective Claims against each other, as more fully set forth in this Agreement.

**THEREFORE,** pursuant to the Recitals, and in consideration of the covenants of the Parties set forth below and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties, desiring to be legally bound by this Agreement, hereby covenant, agree, warrant, represent and declare as follows:

## ARTICLE 1
## DEFINITIONS, CONVENTIONS AND CONSTRUCTION

**1.1      Definitions.**  The following words and phrases, when capitalized and used in this Agreement, will have the meaning assigned below, unless the context in which the word or phrase is used reasonably prohibits the application of such meaning:

"**Agreement**" is defined in the Preamble, and for purposes of further clarity, means this Settlement Agreement and Release of Claims.

"**Appeal**" means and will be construed broadly to include any appeal or motion for reconsideration of an entered order, or any other motion seeking to reverse, vacate, set aside, modify, or remand for further action, an entered order.

"**Approval Motion**" is defined in Section 2.2.

"**Approval Order**" is defined in Section 2.1.

"**AR and CAPP Receipts**" is defined in Section 2.6.

"**AR Assignment**" is defined in Section 3.6.

"**Assumption Motion**" is defined in Section 3.4

"**Bankruptcy Case**" is defined in the Preamble.

"**Bankruptcy Code**" means Title 11 of the United States Code.

"**Bankruptcy Court**" is defined in the Preamble.

"**Barclays**" is defined in Recital G.

EXHIBIT 1    PAGE 11

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

"**Barclays Adversary Proceeding**" is defined in <u>Recital G</u>.

"**Barclays Agreement**" is defined in <u>Recital I</u>.

"**Barclays Lien**" is defined in <u>Recital G</u>.

"**Barclays Claims**" is defined in <u>Recital G</u>.

"**Breach**" is defined in <u>Section 5.7</u>.

"**CAPP**" means the California Arrearage Payment Program pursuant to which the State of California provides financial assistance to, among others, Debtor's former customers to reduce delinquent energy bill balances owed by Debtor's former customers.

"**CAPP Assignment**" is defined in <u>Section 3.5</u>.

"**CAPP Delta**" is defined in <u>Section 3.6</u>.

"**CCA Service Agreement**" means the Community Choice Aggregator (CCA) Service Agreement dated February 26, 2019, between Debtor and SCE, a copy of which is attached to Claim 20.

"**Claim**" means and will be construed broadly to include debts, obligations, agreements, contracts, covenants, promises, representations, warranties, guaranties, indemnities, acts, errors, omissions, breaches, defaults, damages, injuries, losses, costs, expenses, charges, demands, causes of action, actions, orders, judgments, Liens, levies, writs, rights of offset, cross-claims, counter claims and other claims and liabilities of any kind or nature, whether legal or equitable, liquidated or unliquidated, contingent or non-continent, and known or unknown.

"**Claim 18**" means the secured Claim described in the proof of claim filed by SCE in the Bankruptcy Case on September 30, 2021, as Claim No. 18-1, in the net amount of $7,603.680.16, excluding interest or other charges, relating generally to SCE's Claims under the CSRP RA Agreement.

"**Claim 19**" means the Claim described in the proof of claim filed by SCE in the Bankruptcy Case on September 30, 2021, as Claim No. 19-1, as amended on December 20, 2021, as Claim No. 19-2, in the net amount of $2,426,150.00, excluding interest or other charges, relating generally to SCE's Claims under the EEI Agreement.

"**Claim 20**" means the secured and or administrative expense Claim described in the proof of claim filed by SCE in the Bankruptcy Case on September 30, 2021, as Claim No. 20-1, in the net amount of $107,306.68, excluding interest or other charges, relating generally to SCE's Claims under the CCA Service Agreement and the Rule 23 Tariff for the period up to the Petition Date and for the period from the Petition Date thorugh June 30, 2021.

EXHIBIT 1    PAGE 12

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

"**Claim 21**" means the Claim described in the proof of claim filed by SCE in the Bankruptcy Case on September 30, 2021, as Claim No. 21-1, in the net amount of $14,568,891.88, excluding interest or other charges, relating generally to SCE's Claim for Re-Entry Fees.

"**CPUC**" means the California Public Utilities Commission.

"**CSRP RA Agreement**" means the Agreement Regarding WCE Implementation and Resource Adequacy Compliance for 2020, 2021 and 2022, a copy of which is attached to Claim 18, executed between Debtor and SCE, dated August 15, 2019, and effective upon its submission to CPUC on August 22, 2019.

"**Debtor**" is defined in the Preamble.

"**Debtor's Claims**" is defined in Recital B.

"**Default**" is defined in Section 5.8.

"**EEI Agreement**" means the Master Power Purchase and Sale Agreement Confirmation Letters dated as of October 29, 2020, and January 11, 2021, each of which is governed by the Edison Electric Institute Master Power Purchase and Sale Agreement between the Parties, effective as of October 28, 2020, along with the Cover Sheet, any amendments and annexes thereof including the EEI Collateral Annex to the Master Agreement along with Paragraph 10 to the Collateral Annex between the Parties, referenced in Claim 19.

"**Effective Date**" means the date upon which the Approval Order first becomes a Final Order.

"**Execution Date**" is defined in the Preamble.

"**Final Order**" means an order entered by a court of competent jurisdiction, including the Bankruptcy Court, that has not been reversed, vacated or remanded for further action, and: (a) is not on Appeal; or (b) is on Appeal but any Appeal has been decided and the time for any further Appeal has run.

"**Interest**" means and will be construed broadly to include any directly or indirectly held right, title, interest, ownership, title, indicia of ownership, right of possession, or other legal, equitable or possessory interest of any kind, including as defined in the Bankruptcy Code.

"**Law**" means and will be construed broadly to include any statute, code, ordinance, regulation, rule, common law principal, order or other law that is binding upon any Party, as amended from time to time.

"**Lien**" means and will be construed broadly to include any encumbrance, pledge, hypothecation, mortgage, deed of trust, security interest, judgment lien, statutory lien, equitable lien, equitable interest, community property interest, purchase option, right of first refusal, condition, restriction, notice of pending action or other lien of any kind, including as defined in the Bankruptcy Code.

EXHIBIT 1    PAGE 13

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

"**NEM Contracts**" means all unexpired contracts between Debtor and Debtor's customers pursuant to which Debtor has agreed to provide and sell electricity to its customers and receive and purchase energy from its customers, on a net energy metering basis.

"**Notice**" means and will be construed broadly to include any notice, inquiry, request, demand, acknowledgement, approval, consent, acceptance, ratification, determination, admission, waiver, disapproval, refusal, rejection, objection, denial or other communication required, desired or intended pursuant to the Agreement.

"**Notice Receipt Date**" means the date upon which a Notice to a Party is deemed to have been received by the Party pursuant to Section 5.14.

"**Party**" and "**Parties**" are defined in the Preamble.

"**Petition Date**" means May 24, 2021.

"**Preamble**" means the first (i.e., introductory) paragraph of this Agreement.

"**RCB**" is defined in Recital G.

"**RCB Bank Accounts**" is defined in Recital G.

"**RCB Lockbox Account**" means that certain RCB Bank Account ending in 6448.

"**RCB Operating Account**" means that certain RCB Bank Account ending in 9572.

"**Recitals**" is defined in the Preamble.

"**Re-Entry Fees**" means the fees pursuant to the Rule 23 Tariff as set forth in Advice Letter 4541-E submitted by SCE to the CPUC on July 12, 2021 in connection with the involuntary transfer of 113,337 of Debtor's customers whose customer service accounts were switched from Debtor to SCE on June 15, 2021, following Debtor's Notice of Deregistration as a Community Choice Aggregator dated June 10, 2021.

"**Residual Recovery**" means any Re-Entry Fees sought or obtained by SCE from Debtor's former customers pursuant to the Rule 23 Tariff.

"**Rule 23 Tariff**" means the SCE Rule 23 Community Choice Aggregation Tariff.

"**SCE**" is defined in the Preamble.

"**SCE Adversary Proceeding**" is defined in Recital B.

"**SCE Allowed General Unsecured Claim**" is defined in Section 3.5.

"**SCE Claims**" is defined in Recital D.

"**SCE Relief From Stay Motion**" is defined in Recital F.

EXHIBIT 1    PAGE 14

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

"**Servicing Termination Date**" is defined in Section 3.11.

"**Settlement**" means and will be construed broadly to include all aspects of the compromise and settlement of disputes and waiver and release of Claims described in this Agreement.

"**Settlement Payment**" is defined in Section 3.2.

1.2    **Conventions.**  This Agreement incorporates the following conventions:

(a)    The words **"include"**, **"includes"** and **"including"** will be deemed and construed to be immediately followed by the words **"without limitation"**.

(b)    The words **"will"**, **"shall"** and **"must"** refer to a mandatory act or obligation, and not a mere expression of interest or intent, unless the context in which the word is used reasonably prohibits the application of this convention.

(c)    The word **"person"** includes and will be construed broadly to include humans, trusts, estates, receiverships, corporations, limited liability companies, partnerships, joint ventures, agencies, labor unions and federal, state and other governmental entities, authorities and agencies of competent jurisdiction, including legislative, judicial, executive, police, regulatory and taxing authorities, and includes, with respect to any person, the person's successors and assigns.

(d)    The word **"Dollars"** and the symbol **"$"** refer to the lawful currency of the United States of America.

(e)    The phrase **"business day"** means any day other than a Saturday, Sunday or generally recognized national holiday upon which a majority of federally insured banks within the State of California are open for business, and unless otherwise stated, all references to **"days"** will mean calendar days rather than business days, and all references to **"years"** will mean calendar years.

(f)    Words or phrases denoting the singular will include the plural, those denoting the plural will include the singular, and those denoting gender will include all genders, unless the context in which the word or phrase is used reasonably prohibits the application of this convention.

1.3    **Construction.**    This Agreement will be logically construed to govern the Settlement.  Article and Section headings are for organizational convenience and will not be given undue consideration in resolving questions of construction or interpretation. Each Party is deemed to have had equal bargaining strength in the negotiation of this Agreement and equal responsibility for the preparation of this document, such that neither this Agreement, nor any uncertainty or ambiguity herein, will be arbitrarily construed or resolved against any Party pursuant to any rule of construction or Law to the effect that ambiguities in documents are to be construed or resolved against the Party who drafted the document.

**ARTICLE 2**
**BANKRUPTCY COURT APPROVAL**

EXHIBIT 1    PAGE 15

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**2.1**    **Approval Requirement.**  The Settlement and performance of this Agreement are subject to and contingent upon receipt by SCE of an executed certificate of authority using the form contained in Schedule 2.1 hereto, and an order in form and substance reasonably acceptable to SCE (the "**Approval Order**") being entered in the Bankruptcy Case and becoming a Final Order, which Approval Order shall, among other things,:

**(a)**    Approve this Agreement and the Settlement and performance of both;

**(b)**    Authorize the payment by Debtor from Debtor's funds held on deposit in the RCB Lockbox Account of:

**(1)**    The $6,000,000.00 Settlement Payment payable to SCE pursuant to Section 3.2 of this Agreement; and

**(2)**    The cure amounts payable in connection with the assumption by Debtor and assignment to SCE of Debtor's NEM Contracts, which cure amounts are estimated by the Debtor to total between $680,000.00 and $900,000.00 in the aggregate, but may be larger or smaller following notice of assumption and assignment of NEM Contracts pursuant to Section 3.4;

**(c)**    Allocate the $6,000,000.00 Settlement Payment among SCE's Claims as set forth in Section 3.3 for the purposes set forth therein;

**(d)**    Authorize and ratify the termination of servicing by SCE on the terms set forth in Section 3.11 and assignment of Debtor's Accounts Receivable to SCE on the terms set forth in Sections 3.5 and 3.6; and

**(e)**    Allow the SCE Claims as a single general unsecured Claim in the Bankruptcy Case for all purposes in the aggregate amount of $18,690,322.04 on the terms set forth in Section 3.7.

**2.2**    **Approval Motion.**  On or before January 20, 2022, the Debtor will file with the Bankruptcy Court a motion in form and substance reasonably acceptable to SCE ("**Approval Motion**"), seeking approval of the Settlement and this Agreement and entry of the Approval Order in the Bankruptcy Case, and Debtor will diligently and in good faith seek to cause the Approval Order to be entered in the Bankruptcy Case and to become a Final Order.

**2.3**    **Cooperation Regarding Approval Order.**  The Parties will promptly, diligently and in good faith perform all acts reasonably requested by the other Party or required by the Bankruptcy Court to cause the Approval Order to be entered in the Bankruptcy Case and become a Final Order, including prosecuting and obtaining the dismissal of any Appeal with respect to the Approval Order and/or the Agreement, as well as providing any declarations, documents and information reasonably requested by the other Party or required by the Bankruptcy Court in connection therewith, and by appearing at any related hearings before the Bankruptcy Court or Bankruptcy Appellate Panel.  Unless and until the Bankruptcy Court denies the Approval Motion, SCE will refrain from committing, authorizing, permitting, enabling, or assisting with the commission of, any acts in frustration or contravention of this Agreement.

EXHIBIT 1    PAGE 16

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**2.4    Barclays Settlement.**    The Parties acknowledge that: (a) Barclays and SCE assert competing Claims against various assets of Debtor including Debtor's funds held in the RCB Lockbox Account; (b) Barclays and SCE dispute various Claims of the other, including the validity and relative priority of their competing Claims secured by Debtor's funds held in the RCB Lockbox Account; and (c) Debtor is attempting, in good faith, to settle both: (x) all Claims between SCE and Debtor, pursuant to this Agreement, and (y) all Claims between Barclays and Debtor, pursuant to the Barclays Agreement.  A true and accurate copy of the Barclays Agreement was provided to SCE prior to the Execution Date.  Unless agreed to in advance in writing by SCE Debtor will not propose or agree to any amendment or restatement of the Barclays Agreement or any other settlement with Barclays, or file any motion to approve any such settlement, unless the amendment, restatement or other settlement: (a) contains the same material and economic terms as the Barclays Agreement; and (b) does not contain any terms inconsistent with the Barclays Agreement.

**2.5    Payment Instruction.**    On or before the date of the entry of the Approval Order in the Bankruptcy Case, SCE will provide Debtor with written wire transfer instructions, and the Settlement Payment and any other payments pursuant to this Agreement will be payable to SCE in accordance with those instructions.

**ARTICLE 3
SETTLEMENT OF DISPUTES AND RELEASE OF CLAIMS**

**3.1    Termination of Secured SCE Claims.**    The Parties contemplate that all of the payments referenced in Section 2.1(b) will be made with Debtor's funds held in the RCB Bank Accounts.  Barclays and SCE have asserted competing Claims secured by certain of those funds, and pursuant to the Bankruptcy Court's orders, certain of those funds are frozen, subject to further order of the Bankruptcy Court.  Accordingly, the Approval Motion will include a request that the Approval Order authorize Debtor's use of such funds to make payments from the RCB Bank Accounts in accordance with the terms of this Agreement or the Barclays Agreement, SCE hereby consents to such use, and upon SCE's receipt of the Settlement Payment, SCE will be deemed to have released the secured portion of the SCE Claims.

**3.2    Settlement Payment.**    Within two (2) business days following the Effective Date, Debtor will pay or cause to be paid to SCE in accordance with the payment instruction referenced in Section 2.5, from Debtor's funds held on deposit in the RCB Lockbox Account, the cash sum of Six Million Dollars ($6,000,000.00) (the "**Settlement Payment**").

**3.3    Allocation of Settlement Payment.**    The $6,000,000.00 Settlement Payment will be allocated as follows:

**(a)**    Fifty percent (50%) of the Settlement Payment will be allocated to SCE's Claim for Re-Entry Fees pursuant to Claim 21; provided, however, that:

(1)    SCE will use this allocation when proposing the amount of Re-Entry Fees to be approved by CPUC for Residual Recovery from Debtor's former customers, but will abide by the CPUC decision for purposes of the amount

EXHIBIT 1    PAGE 17

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

of Residual Recovery authorized to be recovered from Debtor's former customers; and

(2)    Any decision(s) by CPUC regarding Residual Recovery from Debtor's former customers will not affect this allocation to SCE's Claims in the Bankruptcy Case; and

**(b)**    Fifty percent (50%) of the Settlement Payment will be allocated to SCE's Claims under the CSRP RA Agreement pursuant to Claim 18 and SCE's Claims arising before the Petition Date under the CCA Servicing Agreement and Rule 23 Tariff pursuant to Claim 20, in such proportion as SCE decides.

**3.4    Assumption and Assignment of Net Energy Metering Contracts.**  The Debtor will seek approval from the Bankruptcy Court, upon appropriate notice to NEM Contract counterparties, of the assumption by Debtor and assignment to SCE (**"Assumption Motion"**) of the NEM Contracts.  The notice to counterparties to NEM Contracts and the Assumption Motion shall be in form and substance reasonably acceptable to SCE.  Any proposed order approving the Assumption Motion shall be in form and substance reasonably acceptable to SCE. The Debtor estimates the cure amount to be approximately $850,000.  Debtor shall pay the entire cure amount from the RCB Lockbox Account to SCE as a condition to assignment of the NEM Contracts to SCE, regardless of whether the entire cure amount is larger or smaller than the Debtor's estimate.  Should the Assumption Motion not be approved by the Bankruptcy Court, the remaining portion of this Agreement shall be unaffected and performed, and this Section 3.4 will for all purposes be deemed stricken from this Agreement, ab initio, and in its entirety.

**3.5    Assignment to SCE of Debtor's Accounts Receivable for CAPP Funds.**  The Parties entered into a separate Receivables Assignment Agreement effective as of January 5, 2022 (**"CAPP Assignment"**) assigning approximately $2,362,993 of the Debtor's accounts receivable to SCE for the purpose of facilitating inclusion of those receivables on an application submitted by SCE for CAPP relief with the State of California.  The assignment of those accounts receivable to SCE is part of the consideration paid to SCE as part of the Settlement. SCE will reduce its Claim for Re-Entry Fees by the actual amount of funds received from CAPP related to receivables of former customers of the Debtor.  The Approval Order shall approve the CAPP Assignment and authorize the assignment of the accounts receivable free and clear of any Liens, Claims, encumbrances, or interests of any kind or nature.

**3.6    Assignment to SCE of Debtor's Accounts Receivables, Excluding Accounts Receivable Previously Assigned to SCE.**  Within two (2) business days following the Effective Date, Debtor's accounts receivables that were not previously assigned to SCE pursuant to Section 3.5, will be assigned by the Debtor to SCE (**"AR Assignment"**).  The Parties will cooperate in good faith to ensure all accounts receivable be assigned are assigned in a timely fashion.  The Approval Order shall approve the assignment of the accounts receivable pursuant to the AR Assignment free and clear of any Liens, Claims, encumbrances, or interests of any kind or nature.  SCE and WCE agree that the value of the AR Assignment is equal to the amount ("CAPP Delta"), if any, that SCE receives in funds from CAPP related to receivables of former customers of the Debtor in excess of the amount of such accounts receivable that are eligible under the CAPP program.  SCE

EXHIBIT 1    PAGE 18

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

shall reduce its Claim for Re-Entry Fees by the amount of CAPP Delta actually received by SCE.

**3.7    Allowance of SCE General Unsecured Claim.**  Upon the Effective Date, SCE will have, on account of Claim 18, Claim 19, Claim 20, Claim 21, any Claim for attorneys' fees or costs including any Claim based on substantial contribution pursuant to Bankruptcy Code Section 503(b)(3)(d), and all other Claims of SCE against Debtor not expressly affirmed in this Agreement or arising under this Agreement, an allowed general unsecured claim (the **"SCE Allowed General Unsecured Claim"**) in the amount of $18,690,322.04, payable pro rata based on all allowed general unsecured Claims in the Bankruptcy Case.  Any amounts received by SCE pursuant to <u>Sections 3.5</u> and 3.6 shall reduce the amount of the SCE Allowed General Unsecured Claim by the amount of CAPP funds actually received by SCE related to receivables of former customers of the Debtor. SCE will allocate distributions received on the SCE Allowed General Unsecured Claim pro rata among its unsecured Claims.  SCE shall use the same allocation when proposing the amount of Re-Entry Fees to be approved by CPUC for Residual Recovery from Debtor's former customers, but will abide by the CPUC decision for purposes of the amount of Residual Recovery authorized to be recovered from Debtor's former customers.  Any decision(s) by the CPUC regarding Residual Recovery from Debtor's former customers will not affect the allocation in this Section 3.7 in the Bankruptcy Case.

**3.8    Recovery of Residual Reentry Fees.**  Debtor agrees it will not oppose recovery of Residual Recovery, as calculated and proposed for recovery by SCE, from the Debtor's former customers.

**3.9    Dismissal of the SCE Adversary Proceeding.**  Within two (2) business days of the date of SCE's receipt of the Settlement Payment and AR Assignment, the Debtor will dismiss with prejudice the SCE Adversary Proceeding and any order entered in the SCE Adversary Proceeding shall immediately dissolve as of dismissal.

**3.10    Withdrawal of SCE Relief From Stay Motion.**  Upon SCE's receipt of the Settlement Payment and the AR Assignment, and receipt of any other payments under this Agreement, the SCE Relief From Stay Motion, which was already withdrawn by SCE, shall be withdrawn with prejudice and SCE shall not have any right to seek the same or similar relief with the Bankruptcy Court.

**3.11    Termination of the CCA Service Agreement.**  Upon the Effective Date, the CCA Service Agreement shall be deemed terminated effective October 31, 2021 ("**Servicing Termination Date**"), with the final customer remittance on November 1, 2021.  Servicing fees payable to SCE pursuant to the CCA Service Agreement for services provided by SCE following the Petition Date through the Service Termination Date will be paid in the ordinary course by Debtor from the RCB Operating Account as post-petition expenses. SCE shall retain all customer remittances and CAPP payments received following the Servicing Termination Date.  Debtor shall pay SCE at the same time as the Settlement Payment, any amounts in the RCB Lockbox Account that were remitted by SCE on and after November 2, 2021 and any CAPP funds (including the CAPP Delta if any) received by the Debtor.  The Debtor shall pay SCE any other funds remitted to WCE by SCE through the date of dismissal of the SCE Adversary Proceeding within 5 business days after dismissal of the SCE Adversary Proceeding.  In addition, Debtor shall pay SCE any

EXHIBIT 1    PAGE 19

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

CAPP funds or CAPP Delta subsequently received by Debtor within 5 business days of receipt.

**3.12    Access To Customer Information.**  SCE is authorized to access, copy and store Debtor's customer's information as necessary to implement the Settlement and perform its obligations under this Agreement; provided, however, that SCE will keep confidential, and cause its employees, agents and representatives, to keep confidential, any confidential information regarding Debtor's customers.

**3.13    Plan Support.**  SCE will support a Chapter 9 plan of adjustment or a structured dismissal of the Bankruptcy Case proposed by Debtor that: (a) provides for a distribution to general unsecured creditors of not less than thirty-five percent (35%) of the amount of their allowed general unsecured Claims; and (b) is consistent with this Agreement; provided, however, that (1) in no event will this Section 3.13, anything else contained in this Agreement, or any discussions or negotiations between the Parties regarding the Settlement or this Agreement, be construed to constitute a solicitation by Debtor of SCE's vote on any plan of adjustment or structured dismissal, and (2) if the Bankruptcy Court or any other court of competent jurisdiction determines that this Section 3.13, if determined to be enforceable, would constitute an solicitation of any such plan of adjustment structured dismissal, then this Section 3.13 will for all purposes be deemed stricken from this Agreement, ab initio, and in its entirety.

**3.14    Release of Claims by Debtor.**  Except for the obligations of SCE set forth in this Agreement and Claims resulting from or arising by reason of a Breach or Default of this Agreement or the Approval Order by SCE, each of which will fully survive this release of Claims, following the Effective Date and effective upon the receipt of the Settlement Payment by SCE, Debtor, for and on behalf of Debtor and Debtor's successors and assigns, will forever waive and release, and for all purposes will be deemed to have forever waived and released: (a) all Claims of Debtor against SCE existing as of the Effective Date, with the successors and assigns of SCE also released from such released Claims; and (b) any Claims of Debtor against the present and former principals, shareholders, members, directors, officers, managers, employees, agents, representatives, attorneys and accountants of SCE, existing as of the Effective Date, which result from or arise in connection with the relationships, agreements and dealings between Debtor and SCE, with the successors and assigns of such persons also released from such released Claims; and Debtor will covenant and for all purposes will be deemed to have covenanted to never file, prosecute or participate in the filing or prosecution of any lawsuit, appeal or other action seeking to enforce against any person any such released Claims.

**3.15    Release of Claims by SCE.**  Except for the obligations of Debtor and the Claims and expenses of SCE allowed as set forth in this Agreement and Claims resulting from or arising by reason of a Breach or Default of this Agreement or the Approval Order by Debtor, each of which will full survive this release of Claims, following the Effective Date and effective upon the receipt of the Settlement Payment by SCE, SCE, for and on behalf of SCE and SCE's successors and assigns, will forever waive and release, and for all purposes will be deemed to have forever waived and released: (a) all Claims of SCE against Debtor existing as of the Effective Date, with the successors and assigns of Debtor also released from such released Claims; and (b) any Claims of SCE against the

EXHIBIT 1    PAGE 20

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

present and former principals, shareholders, members, directors, officers, managers, employees, agents, representatives, attorneys and accountants of Debtor, existing as of the Effective Date, which result from or arise in connection with the relationships, agreements and dealings between SCE and Debtor, with the successors and assigns of such persons also released from such released Claims; and SCE will covenant and for all purposes will be deemed to have covenanted to never file, prosecute or participate in the filing or prosecution of any lawsuit, appeal or other action seeking to enforce against any person any such released Claims.

**3.16    California Civil Code Section 1542 Waiver.**  Each Party hereby represents that it read California Civil Code Section 1542 and understands the potential effects of waiving the rights and benefits intended by that provision of the Law, and nonetheless hereby waives all rights and benefits conferred or intended pursuant to that provision of the Law, which states as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.

**ARTICLE 4**
**REPRESENTATIONS, WARRANTIES, DISCLAIMERS,**
**WAIVERS, AND LIMITATIONS ON LIABILITY**

**4.1    Binding Agreement.**  Each Party warrants and represents to the other Party that, except as set forth in Section 2.1, it has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Agreement and to perform all of its obligations under this Agreement, and that neither this Agreement nor the performance by the Party of any obligation under this Agreement will violate any article, by-law, covenant, contract, agreement, restriction or order by which the Party is bound.

**4.2    Advice of Counsel.**  Each Party warrants and represents to the other Party that it acted pursuant to the advice of its own independent legal counsel in connection with the negotiation, preparation and execution of this Agreement, or was advised to obtain such advice, had reasonable time and opportunity to obtain such advice, or declined to obtain such advice.

EXHIBIT 1    PAGE 21

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**4.3    No Undisclosed Inducements.**  Each Party warrants and represents to the other Party that it entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts, circumstances and relevant Law, and that no covenants, promises, representations or assurances, other than those set forth in this Agreement and the Stipulation, were made to induce the Party to enter into this Agreement.

**4.4    No Evidence of Wrongdoing**. Nothing in this Agreement is intended, or will be construed to evidence, infer or suggest any wrongdoing by any Party to this Agreement.

**4.4    No Prior Assignments.**  Each Party warrants and represents to each of the other Parties that, except for the Barclays Lien, the Party has not pledged, transferred or assigned any Claim, any basis for any Claim, or any defense or offset to any Claim, purportedly being settled or released by the Party pursuant to this Agreement.

**4.5    Material Consideration; Truth and Accuracy; and Indemnification.**  The representations and warranties of each Party set forth in this Agreement constitute bargained for material consideration for this Agreement intended by the Party making the representation and warrant to induce the other Party to enter into this Agreement.  Each Party will cause its representations and warranties set forth in this Agreement to be true and accurate in all material respects, at all times relevant to the execution, Bankruptcy Court approval, and performance of this Agreement.

**4.6    Survival.**  The representations, warranties, disclaimers, waivers and limitations (if any) on liability set forth in this Agreement will survive the execution, delivery, approval by the Bankruptcy Court, and performance of this Agreement, and any Breach or Default of this Agreement.

**ARTICLE 5**
**GENERAL TERMS AND PROVISIONS**

**5.1    Integration.**    This Agreement, along with the CAPP Assignment and AR Assignment agreements, sets forth the entire agreement of the Parties regarding the Settlement, and supersedes all prior or contemporaneous discussions, negotiations and agreements among the Parties, oral or written, regarding such matters.

**5.2    Amendment.**  No modification of, deletion from, or addition to this Agreement will be effective unless made in writing and executed by each Party.

**5.3    Further Assurances.**  Each Party will promptly take all actions and execute and deliver all documents reasonably required of such Party to effectuate the Settlement.

**5.4    No Third Party Obligations**.  This Agreement will not confer any rights upon any person not a Party, or obligate any Party to any person not a Party, provided, however, that this provision will not limit the effect of the Approval Order on persons not a Party to this Agreement.

**5.5    Performance.**  Except as otherwise expressly set forth in this Agreement, each Party will bear all of its own costs of performance and its own attorneys' fees and costs incurred in connection with the negotiation and documentation of this Agreement.

EXHIBIT 1    PAGE 22

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**5.6    Time of the Essence.**  Time is of the essence.  Each Party will perform all acts required of it pursuant to this Agreement by the date or within the time period required pursuant to this Agreement; provided, however, that if the date by which or upon which any obligation otherwise must be performed pursuant to this Agreement, or any Notice otherwise must be given pursuant to this Agreement, occurs on a day other than a business day, then the date by which or upon which such obligation must be performed or the Notice must be given is deemed extended until the next business day.

**5.7    Breach.**  A Party will be in breach ("**Breach**") upon: (a) any failure by the Party to make any payment or perform any act required of the Party pursuant to this Agreement by the time the payment or performance is due, unless otherwise agreed to in writing by the Parties; (b) the commission by the Party of any act prohibited by this Agreement; or (c) any failure of any warranty or representation by the Party set forth in this Agreement to be true and correct in all material respects at all times relevant to this Agreement.

**5.8    Default.**  Debtor will be in default ("**Default**") if Debtor fails, for any reason other than a Breach or Default by SCE or the Approval Order not being entered by the Bankruptcy Court in the Bankruptcy Case and becoming a Final Order, to make the Settlement Payment to SCE by the date required in Section 3.2.  Furthermore, a Party will be in Default if a Breach by the Party remains uncured for more than two (2) business days following the Notice Receipt Date of a Notice of the Breach by the other Party, provided, however, that if the Breach cannot be cured by the payment of money and more than two (2) business days are reasonably required to cure the Breach, then there will be no Default by reason of the Breach if the Party in Breach: (a) commences a cure of the Breach within two (2) business days of such Notice Receipt Date; (b) diligently and in good faith prosecutes the cure to completion, and (c) completes the cure within five (5) business days of such Notice Receipt Date.

**5.9    Governing Law, Jurisdiction and Venue.**  This Agreement is made under and will be construed in accordance with and governed by the substantive laws of the State of California, without giving effect to principles of conflicts of law.  The Parties consent to the jurisdiction of the Bankruptcy Court and to venue in Riverside County, California, for the purpose of resolving any controversy relating to this Agreement, and absent a refusal by the Bankruptcy Court to hear and determine the controversy, it will be a material Breach to seek to resolve the controversy or disagreement in any other forum.

**5.10    Severability.**  If any provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the other provisions this Agreement will nonetheless remain enforceable.

**5.11    Waiver.**  The failure by any Party to enforce any provision of this Agreement will not constitute a waiver of the right to enforce the same provision, or any other provision, thereafter.  No waiver of any provision of this Agreement will be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor will any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

**5.12    Enforcement.**  Each Party will have the right to enforce by proceedings at law or in equity the provisions of this Agreement, including the right to prosecute proceedings at law or in equity against any Person who violates or attempts to violate such provisions,

EXHIBIT 1    PAGE 23

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

to enjoin any such Person from doing so, to cause such violation to be remedied, and to recover damages for such violation.

**5.13    Litigation Costs.**  If any Party brings legal proceedings against the other Party to enforce this Agreement or to declare any rights or obligations under this Agreement, then the prevailing Party will recover from the losing Party its costs of suit, including reasonable attorneys' fees, as will be determined by the court in such proceeding.

**5.14    Notices**.  A Notice must be made in writing and delivered to the address indicated below, until Notice of a change of address is given by the recipient Party, after which the Notice will be delivered to the address set forth in the recipient Party's most recent change of address Notice.  Notices by personal service, including by FedEx, will be deemed received upon delivery.  Notices by first class mail, postage prepaid, addressed as required by this Section, will be deemed received three (3) business days following deposit with the United States Post Office.  Rejection of a Notice, refusal to accept a Notice, or inability to deliver a Notice because of a failure to give Notice of a change of address, will constitute delivery.  Notices may be given by email correspondence to the email address indicated below, until Notice of a change of email address is given by the recipient Party, and thereafter, to the recipient Party's most recent change of email address.  Notices given by email will be deemed received upon the date of delivery via electronic transmission.

| | |
|---|---|
| **Debtor:** | Weiland Golden Goodrich LLP |
| | Attention:    David M. Goodrich |
| | 650 Town Center Drive - Suite 650 |
| | Costa Mesa, California 92626 |
| | E-Mail:    dgoodrich@wgllp.com |
| | |
| **SCE:** | Southern California Edison Company |
| | Attention:    Janet Combs |
| | 2244 Walnut Grove Av. |
| | Rosemead, CA 91770 |
| | Email: janet.combs@sce.com |

**with a copy to:**

Munger, Tolles & Olson LLP
Attention:    Seth Goldman
355 South Grand Avenue - Suite 3500
Los Angeles, California 90071-1560
E-Mail:    Seth.Goldman@mto.com

**5.15    Execution.**  This Agreement may be executed in any number of identical counterparts, each of which is an original and all of which together constitute one and the same agreement.  The delivery of an executed counterpart of a signature page to this Agreement by telecopy, electronic facsimile transmission, email transmittal, will be as effective as the physical delivery of an executed counterpart of this Agreement.

EXHIBIT 1    PAGE 24

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**5.16   Inurement.**  This Agreement will inure to the benefit of and be binding upon the Parties and their respective heirs, beneficiaries, successors, assigns, grantees, executors, administrators, and receivers.

[SIGNATURE PAGE(S) ATTACHED]

EXHIBIT 1     PAGE 25

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**THE UNDERSIGNED PARTIES** made, executed, entered into and delivered this Agreement effective as of the Execution Date set forth in the Preamble.

**Debtor:**          Western Community Energy,
                     a California joint powers authority

          By: _____
                     (signature)

                     _____
                     Ted Hoffman

          Its: _____
                     Chairman of the Board

**SCE:**          Southern California Edison Company,
                     a California corporation

          By: _____
                     (signature)

                     _____
                     Steve Powell

          Its: _____
                     President & Chief Executive Officer

EXHIBIT 1    PAGE 26

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

SCHEDULE 2.1

Form of Certificate of Authority

EXHIBIT 1    PAGE 27

DocuSign Envelope ID: F46D2F05-7C07-4C57-8432-8BC5F3AFB5E3

**CERTIFICATE OF THE CHAIRMAN OF THE BOARD OF
WESTERN COMMUNITY ENERGY, A JOINT POWERS AUTHORITY**

The undersigned, Ted Hoffman, hereby certifies that he is the duly appointed and acting chairman of the board of Western Community Energy, a joint powers authority and further certifies as follows:

1. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the resolution that was duly adopted by the board of directors of Western Community Energy, a joint powers authority, on January 18, 2022. Such resolution remains in full force and effect as of the date hereof and have not been amended or rescinded in whole or in part in any respect.

2. Ted Hoffman is the duly elected, qualified, and acting chairman of the board of directors of Western Community Energy, a joint powers authority, and is duly authorized to enter into this Agreement on behalf of Western Community Energy, a joint powers authority. The signature appearing below is a true and correct facsimile signature of said director.

<u>                                        </u>
Ted Hoffman, Chairman of the Board, WCE

**IN WITNESS WHEREOF**, the undersigned has duly executed this certificate in his capacity as Chairman of the Board of Western Community Energy, a joint power authority, as of January 20, 2022.

EXHIBIT 1    PAGE 28

### RESOLUTION NO. 2022-01

### A RESOLUTION OF THE BOARD OF DIRECTORS
### OF WESTERN COMMUNITY ENERGY
### APPROVING A SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
### BETWEEN WESTERN COMMUNITY ENERGY AND
### SOUTHERN CALIFORNIA EDISON RELATING TO THE WCE BANKRUPTCY

**WHEREAS**, Western Community Energy ("WCE") was formed on August 23, 2018, pursuant to the Western Community Energy Joint Powers Agreement ("JPA"); and

**WHEREAS**, WCE filed for bankruptcy on May 24, 2021; and

**WHEREAS**, WCE filed a complaint for declaratory relief and an injunction against SCE initiating Adversary Proceedings No. 6:21-ap-01068-SY; and

**WHEREAS**, SCE filed a motion in the Bankruptcy Case on June 14, 2021, seeking relief from an automatic stay to exercise setoff and recoupment rights securing the SCE Claims along with a proof of claims; and

**WHEREAS**, WCE and SCE desire to enter into settlement agreement and a release of claims.

**NOW, THEREFORE, THE WESTERN COMMUNITY ENERGY BOARD OF DIRECTORS DOES HEREBY RESOLVE, DETERMINE AND ORDER AS FOLLOWS:**

      **Approve the *Settlement Agreement and Release of Claims* between WCE and SCE.**

Ted Hoffman, as Chairman of the Board of Directors for Western Community Energy, a Joint Powers Authority, is authorized to sign the Agreement and Release of Claims between WCE and SCE.

**PASSED AND ADOPTED** by the Board of Directors on January 18, 2022:

_____
Ted Hoffman, Chairperson
Western Community Energy

_____
Dr. Kurt Wilson, Secretary
Western Community Energy

Approved as to form:

_____
Ryan Baron
Western Community Energy Legal Counsel

AYES: __5___      NAYS: __0___      ABSENT: __2___      ABSTAIN: __0___

EXHIBIT 1     PAGE 29

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): <u>Debtor's Motion For Authority To Assume And</u> <u>Assign Nem Contracts Pursuant To Section 365 Of The Bankruptcy Code; Memorandum Of Points And Authorities And</u> <u>Declaration Of Andrew Ruiz In Support Thereof</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>April 21, 2022</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>April 21, 2022</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Western Community Energy
3390 University Avenue, Suite 200
Riverside, CA 92501-3314

(p)SOUTHERN CALIFORNIA EDISON COMPANY
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>April 21, 2022</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
**SERVED BY OVERNIGHT MAIL**
Honorable Scott H. Yun
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 345 / Courtroom 302
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/21/2022 | Gloria Estrada | *Gloria Estrada* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Ryan W Beall    rbeall@lwgfllp.com, vrosales@wgllp.com;kadele@wgllp.com;lbracken@wgllp.com;rbeall@ecf.courtdrive.com
Abram Feuerstein    abram.s.feuerstein@usdoj.gov
Beth Gaschen    bgaschen@wgllp.com,
kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com;gestrada@wgllp.com
Seth Goldman    seth.goldman@mto.com
David M Goodrich    dgoodrich@wgllp.com, kadele@wgllp.com;lbracken@wgllp.com;wggllp@ecf.courtdrive.com;gestrada@wgllp.com
Everett L Green    everett.l.green@usdoj.gov
Anna Gumport    agumport@sidley.com, laefilingnotice@sidley.com;anna-gumport-6608@ecf.pacerpro.com
Chad V Haes    chaes@marshackhays.com,
chaes@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com;kfrederick@ecf.courtdrive.com
Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com
Mark T Jessee    jesseelaw@aol.com, marktjessee@gmail.com
Lindsey E Kress    lkress@lockelord.com, hayli.holmes@lockelord.com
Peter W Lianides    plianides@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
Richard A Marshack    rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com
Ali Matin    ali.matin@usdoj.gov, carolyn.k.howland@usdoj.gov
David L. Neale    dln@lnbyg.com
Valerie Bantner Peo    vbantnerpeo@buchalter.com
Cameron C Ridley    Cameron.Ridley@usdoj.gov
Bradley R Schneider    bradley.schneider@mto.com
Jason D Strabo    jstrabo@mwe.com, cgreer@mwe.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
Joseph M VanLeuven    joevanleuven@dwt.com, katherinehardee@dwt.com;pdxdocket@dwt.com
Marc J Winthrop    mwinthrop@wghlawyers.com, jmartinez@wghlawyers.com
Robert J Wood    robert.wood@rivercitybank.com
Nahal Zarnighian    zarnighiann@ballardspahr.com

**TO BE SERVED BY US MAIL:**

River City Bank
c/o Boutin Jones Inc.
Thomas G. Mouzes
Mark Gorton
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603

ACES
4140 West 99th Street
Carmel, IN 46032-7731

Barclays Bank PLC
Attn: Kelly McDonald
745 Seventh Avenue
New York, NY 10019-6801

California Independent System
Operator Corpo
California ISO, attn: Dan
Shonkwiler, Es
P.O. Box 639014
Folsom, CA 95763-9014

Calpine Energy Solutions, LLC
Attn: W. Steven Bryant, Locke
Lord LLP
600 Congress Avenue, Ste. 2200
Austin, TX 78701-3055

Enersponse, Inc.

Attn: Emily McPhail
2901 West Coast Highway, Suite
200
Newport Beach, CA 92663-4045

Morgan Stanley Capital Group
Attn: Commodities Department
1585 Broadway, 3rd Floor
New York, NY 10036-8293

Nextera Energy Marketing, LLC
Attn: Mark Palanchian
700 Universe Blvd.
North Palm Beach, FL 33408-2657

Exelon Generation Company, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Best Best & Krieger LLP
3390 University Avenue, 5th Floor
Riverside, CA 92501-3369

California Public Utilities
Commission
505 Van Ness Ave.
San Francisco, CA 94102-3298

Constellation
1310 Point Street, 8th Floor
Baltimore, MD 21231-3380

Elk Hills Power, LLC
Valerie Bantner Peo, Esq.
Buchalter PC
55 2nd St., 17th Fl.
San Francisco, CA 94105-3493

Exelon Generation Company, LLC
1310 Point Street
8th Floor
Baltimore, MD 21231-3380

NRG Power Marketing LLC
Attn: Joseph A. Holtman
804 Cernegie Center
Princeton, NJ 08540-6023

OhmConnect, Inc.
Attn: Matt Duesterberg
610 16th Street, Suite M20
Oakland, CA 94612-1282

Pilot Power Group, LLC
8910 University Center Lane, Suite
520
San Diego, CA 92122-1026

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Riverside Division
3420 Twelfth Street,
Riverside, CA 92501-3819

Barclays Bank PLC
Attn: Cassandra Bolz
1301 6th Avenue
New York, NY 10019-6022

California Dept. of Tax and Fee
Administration
Collections Support Bureau, MIC:
55
PO Box 942879
Sacramento, CA 94279-0001

Calpine Energy Solutions
Attn: Josh Brock
401 W A Street, #500
San Diego, CA 92101-7991

EES Consulting
Attn: Gary Saleba
1601 Carmen Drive, Suite 215H
Camarillo, CA 93010-3105

Endersponse, Inc.
Attn: Emily McPhail
2901 West Coast Highway, Suite
200
Newport Beach, CA 92663-4045

Matthew Summers
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3023

NRG Power Marketing LLC
c/o ContractAdmin
804 Carnegie Center
Princeton NJ 08540-6023

OneEnergy, Inc.
Attn: Bill Eddie
2003 Western Avenue, Suite 225
Seattle, WA 98121-2178

PFM Financial Advisors, LLC
601 S. Figueroa Street
Suite 4500
Los Angeles, CA 90017-5703

River City Bank
2485 Natomas Park Drvie
Riverside, CA 95833-2975

Shell Energy North America (USA)
Contract North America
1000 Main Street, Level 12
Houston, TX 77002-6336

The Energry Authority, Inc.
Attn: Daren Anderson
301 W. Bay Street, Suite 2600
Jacksonville, FL 32202-5103

Western Riverside Council of
Governments
3390 University Avenue Suite 200
Riverside, CA 92501-3314

PIP Printing
4093 Market Street
Riverside, CA 92501-3542

River City Bank
c/o Thomas G. Mouzes
Boutin Jones Inc.
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

Pacific Gas and Electric Company
Attn: Ted Yuba
245 Market Street
San Francisco, CA 94105-1702

Pioneer Community Energy
804 Carnegie Ctr.
Princeton, NJ 08540-6023

Public Utilities Commission of the
State of California Public Utilities
Commission
Attention: Aaron Jacobs-Smith
505 Van Ness Avenue
San Francisco, CA 94102-3214

Shell Energy North America (US),
L.P.
c/o Shell Oil Company
Attn: Bankruptcy & Credit
150 N. Dairy Ashford Rd.
Houston, TX 77079-1115

The Creative Bar
Attn: Justine Lawler
38750 Sky Canyon Drive, Suite C
Murrieta, CA 92563-2564

WRCOG
3390 University Ave., Suite 200
Riverside, CA 92501-3314

PowerEx Corp., Attn: Mgr.
Contracts
666 Burrard Street, Suite 1300
Vancouver, BC V6c 2X8
Canada

Powerex Corp., dba in CA as
Powerex Energy
Attn: Manager, Contracts
1300 - 666 Burrard Street
Vancouver BC V6C2X8

TransAlta
110-12 Avenue SW
Calgary, Alberta T2P 2MI
Canada

TransAlta Energy Marketing (U.S.)
Inc.
110 - 12 Avenue SW
Calgary, AB T2R0G7

~~Tullett Prebon Americas Corp.~~
~~32123 Lindero Canyon Road~~
~~Westlake Village, CA 91361-4204~~
MAIL RETURNED 9/2/21

~~Pilot Power Group, Inc.~~
~~Attn: Contract Administration~~
~~8910 University Center Lane, Suite~~
~~San Diego, CA 92122-1026~~
MAIL RETURNED 9/24/21

~~Pilot Power Group~~
~~AttN: Denis Vermette~~
~~8910 University Center Lane~~
~~San Diego, CA 92122-1026~~
MAIL RETURNED 03/10/21

~~Elk Hills Power~~
~~4026 Sky Line Road~~
~~PO Box 460~~
~~Tupman, CA 93276-0460~~
**RETURNED MAIL 7/12/21**

~~BP Energy Company~~
~~Attn: Rob H. Gorski~~
~~201 Helios Way~~
~~Houston, TX 77079-2678~~
MAIL RETURNED 4/19/22

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**